**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NIHON TSUSHIN KABUSHIKI KAISHA d/b/a )
JAPAN COMMUNICATIONS, INC., )
                                )
         Plaintiffs, )
                                )     C.A. No.: 07-619-JJF
         v. )
                                )
DONALD DAVIDSON, et al., )
                                )
         Defendants. )

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION TO STAY OR TRANSFER**

**GREENBERG TRAURIG, LLP**
Donald J. Detweiler
Dennis A. Meloro
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000

**MAYNARD, COOPER & GALE, P.C.**
G. Bartley Loftin, III
Douglas B. Hargett
655 Gallatin Street, S.W.
Huntsville, Alabama 35801
Telephone: (256) 512-0171

Attorneys for the Defendants

Dated: January 9, 2008

## TABLE OF CONTENTS

**PAGE(S)**

I.     PRELIMINARY STATEMENT ........................................................................1

II.    ARGUMENT IN RESPONSE TO JCI'S ANSWERING BRIEF...........................1

    A.    THE "FIRST-FILED" DOCTRINE APPLIES AND NECESSITATES THAT THIS
         DELAWARE ACTION BE DISMISSED, STAYED, OR TRANSFERRED.....................1

    B.    RULES GOVERNING ABSTENTION NECESSITATE THAT THE DELAWARE
         ACTION BE STAYED. .......................................................................3

        1.    The Alabama Action is a "parallel" proceeding. ...............................4

        2.    The factors relevant to federal rules of abstention discussed by JCI in its
            Answering Brief weigh in favor of abstention....................................5

            a.    Presence of *Res* or Property ....................................... 5
            b.    Inconvenience of the Federal Forum ............................. 5
            c.    Avoidance of Piecemeal Litigation................................. 6
            d.    Order in Which Jurisdiction was Obtained...................... 6
            e.    Rule of Decision on the Merits—State or Federal Law....... 7
            f.    Adequacy of the State Court—Alabama Forum................. 7

        3.    Other factors relevant to federal rules of abstention which JCI failed to
            discuss in their Answering Brief weigh in favor of abstention.....................8

            a.    Identity of Issues ...................................................... 8
            b.    Federal Policies Militating in Favor or Against the Stay..... 8
            c.    Important Countervailing Federal Interest......................... 9

    C.    THE DELAWARE ACTION IS DUE TO BE DISMISSED OR TRANSFERRED
         PURSUANT TO 28 U.S.C. § 1404(A) AND CONSIDERATIONS OF *FORUM NON
         CONVENIENS*. .............................................................................9

        1.    The "private factors" weigh in favor of transfer............................9

            a.    JCI's Choice of Forum............................................... 9
            b.    The Delaware Defendants' Choice of Forum ..................... 9
            c.    Whether the Claims Arose Elsewhere ........................... 11

i

          d.     Convenience of the Parties.................................................. 11

          e.     Convenience of the Witnesses ......................................... 12

          f.     Location of Books and Records ....................................... 15

    2.     The "public factors" weigh in favor of transfer. ............................... 16

          a.     Enforceability of the Judgment......................................... 16

          b.     Practical Considerations Regarding the Ease, Speed, and Expense of Trial ........................................................... 16

          c.     Administrative Difficulty Due to Docket Congestion ...................... 17

          d.     Local Interest in Deciding Local Dispute in Home Forum................ 17

          e.     Public Policies of the Two Fora......................................... 18

          f.     The Court's Familiarity with Applicable Law................................. 18

III.    CONCLUSION.......................................................................... 18

# TABLE OF AUTHORITIES

## Cases

AAR Int'l, Inc. v. Nimelias Enters., S.A.,
  250 F.3d 510 (7th Cir. 2001) ......................................................................... 12

Arrow Comm. Laboratories, Inc. v. John Mezzalingua Associates, Inc.,
  2005 U.S. Dist. LEXIS 25004 (D. Del.) ......................................................... 10

Bank of Am. v. S.I.P. Assets, LLC,
  2007 U.S. Dist. LEXIS 67107 (D. Del) ........................................................... 18

Crosley Corp. v. Hazeltine Corp.,
  122 F.2d 925 (3d Cir. 1941) ............................................................................. 1

Erie R.R. Co. v. Tompkins,
  304 U.S. 64 (1938) ........................................................................................... 3

Holland v. Hay,
  840 F.Supp. 1091 (E.D. Va. 1994) ................................................................... 8

Horack v. Minott
  1995 U.S. Dist. LEXIS 7583 (D. Del. 1995) ............................................... 8, 9

Jumara v. State Farm Ins. Co.,
  55 F.3d 873 (3d Cir. 1995) ............................................................................. 10

Lafferty v. Riel,
  495 F.3d 72 (3d Cir. 2007) ............................................................................... 2

McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.,
  263 A.2d 281 (Del. 1970) ................................................................................. 1

Moses H. Cone Hosp. v. Mercury Constr. Corp.,
  460 U.S. 1 (1982) ............................................................................................. 8

Ryan v. Johnson,
  115 F.3d 193 (3d Cir. 1997) ............................................................................. 6

Sea Colony, Inc. v. Alcan Aluminum Corp.,
  653 F.Supp. 1323 (D. Del. 1987) ........................................................... 3, 4, 5, 8

Spring City Corp. v. Am. Bldgs. Co.,
  193 F.3d 165 (3d Cir. 1999) ............................................................................. 6

## STATUTES

28 U.S.C. § 1404(a) ............................................................................................ 9

DEL 86205527v2 1/9/2008

## I.    PRELIMINARY STATEMENT

JCI's Answering Brief provides a great example of the lengths it will go to dodge harmful facts and applicable law contrary to its position.  If fact, JCI completely ignores the specific facts of this case relevant to the first-filed doctrine and fails to properly consider all relevant factors under the rules governing federal abstention and transfer which control the resolution of this matter.  Consequently, based on the arguments contained in the Delaware Defendants' Opening Brief and in this Reply, the Delaware Action is due to be dismissed, stayed, or transferred.

## II.    ARGUMENT IN RESPONSE TO JCI'S ANSWERING BRIEF

### A.    THE "FIRST-FILED" DOCTRINE APPLIES AND NECESSITATES THAT THIS DELAWARE ACTION BE DISMISSED, STAYED, OR TRANSFERRED.

JCI quickly glazes over the Delaware Defendants' argument that the Delaware Action is due to be dismissed, stayed, or transferred based on the first-filed doctrine.  Regardless of the distinctions between the first-filed doctrines articulated by the Third Circuit Court of Appeals in Crosley Corp. v. Hazeltine Corp., 122 F.2d 925 (3d Cir. 1941) and the Delaware Supreme Court in McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co., 263 A.2d 281 (Del. 1970), the purpose of the first-filed doctrines is the same—to have a single determination of a controversy involving the same subject matter in order to conserve judicial resources, avoid duplicative litigation, and avoid conflicting decisions.  Crosley, 122 F.2d at 930; McWane, 263 A.2d at 283.  Each of these interests will be served by applying the first-filed doctrine to dismiss, stay, or transfer the Delaware Action.

Even assuming, *arguendo*, that Crosley and its progeny would prevent the application of the first-filed doctrine in the instant case due to the fact that the Alabama Action is not pending in federal court, this does not prevent the application of the first-filed doctrine in the present

case.  ***The instant case presents the Court with a <u>unique situation</u> in which the parties contractually agreed that Delaware State law, not federal law, applies to any dispute arising out of the POS***.  Section 18 of the POS expressly states the parties' agreement as follows:

> **Section 18.  <u>Governing Law; Consent to Jurisdiction and Venue; Waiver of Jury Trial</u>.  *This Agreement <u>shall</u> be governed by and construed in accordance with the <u>laws of the State of Delaware</u>, <u>without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of Delaware to be applied</u>.***

(<u>POS</u> at § 18) (emphasis added).  JCI does not challenge or even address the fact that the POS mandates that "the laws of the State of Delaware" govern the construction and resolution of any dispute which may arise related to the POS.  In fact, JCI goes into great detail in other parts of its Answering Brief to show the Court that the laws of the State of Delaware apply, stating two different times that "there is no dispute that Delaware law controls this dispute."  (<u>Answering Brief</u> at p. 24).  JCI goes even further citing legal authority in support of its proposition that the substantive law of the State of Delaware applies.  (<u>Id</u>. at p. 13-14).  For JCI to challenge the fact that Delaware State law controls all aspects of the resolution of this matter would effectively amount to a challenge to the validity of Section 18 of the POS itself — an argument JCI does not make.  Essentially, JCI is trying to "have its cake and eat it too" by requesting the Court to apply Delaware State law to arguments that support its position but not to other arguments which are harmful to its position.  This inconsistency should not be allowed.

Notably, even if the parties had not contractually agreed that the laws of the State of Delaware applied to disputes related to the POS, JCI cannot dispute that the Court exercises jurisdiction over this action based solely on the complete diversity of the parties.  (<u>See</u> <u>JCI's Complaint</u> at ¶ 2).  It goes without saying that substantive State law applies in diversity actions, not federal statutory or common law.  <u>Lafferty v. Riel</u>, 495 F.3d 72, 76 (3d Cir. 2007) ("a federal court must apply the substantive laws of its forum state in diversity actions"); <u>see also</u> <u>Erie R.R.</u>

Co. v. Tompkins, 304 U.S. 64 (1938) (federal courts do not have the authority to make up general federal common law when hearing state law claims under diversity jurisdiction).

Accordingly, applying the first-filed doctrine articulated under Delaware State law, as established by the Delaware Supreme Court in McWane, rather than the first-filed doctrine of the Third Circuit Court of Appeals established in Crosley, will undoubtedly result in the Delaware Action being dismissed, stayed, or transferred.  JCI acknowledges this fact based on its failure to respond to the Delaware Defendants' McWane analysis.  (Opening Brief at § IV.A).

### B.    RULES GOVERNING ABSTENTION NECESSITATE THAT THE DELAWARE ACTION BE STAYED.

Not surprisingly, JCI's Answering Brief completely ignores the holding and makes no reference to the decision of this Court in Sea Colony, Inc. v. Alcan Aluminum Corp., 653 F.Supp. 1323 (D. Del. 1987).  JCI's oversight was, no doubt, intentional — hoping to steer the Court's attention away from this decision, which closely resembles the facts and addresses the same issues presently before the Court.  In Sea Colony, the Court made clear that "the power to stay or dismiss federal proceedings pending the resolution of a State court action rests within the sound discretion of the trial court."  653 F.Supp at 1326.  "This discretion stems from the District Court's inherent power to control its docket."  Id.  Thus, while "exceptional circumstances" must exist to justify applying the rules of abstention, the Court is given broad discretion in reaching its determination.  Id.  JCI's argument, if adopted, would effectively nullify the rules governing abstention and make it impossible for this Court to ever apply these rules to dismiss or stay an action before this Court, the subject matter of which is also pending before another court.

For the reasons discussed below and in the Delaware Defendants' Opening Brief, the rules governing federal abstention apply and should result in the dismissal or stay of this Delaware Action.

3

1.     **The Alabama Action is a "parallel" proceeding.**

In its Answering Brief, JCI makes a feeble attempt to establish the proposition that the Delaware and Alabama Actions are not parallel proceedings.  In order for two actions pending before different courts to be deemed parallel, "[t]his does not mean that the proceedings must be identical, but rather ***substantially similar***."  Sea Colony, 653 F.Supp. at 1326 (emphasis added). In order to be found substantially similar, the parties named in the actions need not be identical. Id. at 1325.  As described in detail in **Exhibit "D"** to the Delaware Defendants' Opening Brief, the allegations and claims asserted in the Delaware and Alabama Actions far exceed the requirement of substantial similarity, as the two actions are virtually identical.

JCI also maintains that it asserted its Counterclaim in the Alabama Action "provisionally."  This contention is a mere façade.  JCI has not contested personal jurisdiction in the Alabama Action, but rather has attempted to reserve the right to do so.  Any attempt JCI may make to challenge personal jurisdiction in the Alabama Action would be disingenuous at best. JCI undisputedly reached out to and solicited the officers, directors, and shareholders of Arxceo to sell it a majority interest in the company to JCI.  Further, JCI negotiated with the officers, directors, and shareholders of Arxceo and ultimately executed the POS and acquired a majority interest in the company.  These events transpired in Madison County, Alabama.  In addition, JCI, as the majority shareholder of Arxceo, controls and appoints individuals to sit on Arxceo's Board of Directors.  Meetings of Arxceo's Board of Directors have always and continue to be routinely held in Madison County, Alabama, and Sanda—the President and CEO of JCI—and other of JCI's officers regularly conduct business in Madison County, Alabama, either by telephone, e-mail, and/or physical meetings.  Considering these undisputed facts, JCI has clearly subjected itself to the personal jurisdiction of the court presiding over the Alabama Action, solidifying that the Delaware and Alabama Actions are parallel proceedings.

  **2.**  **The factors relevant to the federal rules of abstention discussed by**
      **JCI in its Answering Brief weigh in favor of abstention.**

  As a preliminary matter, JCI failed to address the complete list of factors to be considered by the Court in reaching its determination regarding abstention. Again, JCI's failure to include or even acknowledge facts and law harmful to its position is not surprising, as the factors JCI omitted weigh heavily in favor of abstention and significantly undermine JCI's argument. See Sea Colony, 653 F.Supp. at 1329. As discussed in response to JCI's Answering Brief, these and the other factors JCI omitted strongly support abstention.

    **a.**  **Presence of *Res* or Property**

  JCI's contention that there is no dispute over "property rights" in the Delaware and Alabama Actions directly contradicts established facts. Separate and apart from the assets, books and records, and property of Arxceo, all of which are located in Madison County, Alabama, in its Complaint and Answering Brief, JCI—by its own admission—identifies and acknowledges that certain products and technology of Arxceo are the subject matter of the Delaware and Alabama Actions as well. (See Complaint at pp. 10-15; Answering Brief at p. 18). The parties' property rights and ownership interests in these products and technologies will certainly hinge upon the resolution of the Delaware and Alabama Actions. Consequently, the fact that these products and technologies were developed by Arxceo and are currently located in Madison County, Alabama is highly relevant and should weigh in favor or abstention.

    **b.**  **Inconvenience of the Federal Forum**

  The Delaware Defendants described in detail in their Motion to Dismiss the severe inconvenience that would be placed on them if they are forced to defend themselves in this Delaware forum. (Opening Brief at §§ III and IV.B.1). Based on the fact that only one of the almost 50 Delaware Defendants has a remote, extremely limited connection with the State of

Delaware, City Light Capital, LLC, the venue and inconvenience of forum portions of Section 18 of the POS should be deemed invalid. (See Affidavit of Marc Weill ("Weill Affidavit") at ¶¶ 1-4).[1] The enforcement of these portions of Section 18 would undoubtedly "result in litigation in a jurisdiction [Delaware] so seriously inconvenient as to be unreasonable," as established in the Delaware Defendants' Opening Brief.

### c.    Avoidance of Piecemeal Litigation

JCI relies on the holdings in Ryan v. Johnson, 115 F.3d 193 (3d Cir. 1997) and Spring City Corp. v. Am. Bldgs. Co., 193 F.3d 165 (3d Cir. 1999) to support its argument that piecemeal litigation will not result if this Court allows the Delaware and Alabama Actions to proceed at the same time in different forums. This argument is illogical. JCI does not contest that the Delaware and Alabama Actions are virtually identical mirror images of each other, involving the same subject matter, facts, allegations, and claims. (See **Exhibit "D"** to Opening Brief). Common sense dictates that allowing two actions as similar as the Delaware and Alabama Actions to proceed at the same time in different forums will necessarily result in piecemeal litigation.

### d.    Order in Which Jurisdiction was Obtained

JCI goes to great lengths arguing that the order in which jurisdiction was obtained weighs in its favor; however, this argument falls flat. JCI cannot change the fact that the Alabama Action was filed over a month prior to the Delaware Action and that substantial discovery is ongoing in the Alabama Action. In fact, JCI and the other Alabama Defendants have already submitted responses to the Alabama Plaintiffs' First Request for Production of Documents and First Interrogatories. Moreover, the depositions of certain of the Alabama Defendants have

---

[1] A true and correct copy of the Weill Affidavit is attached hereto as **Exhibit "A"** and incorporated herein by reference.

already been noticed and will be taken pursuant to the agreement of the parties.  In order to accommodate counsel for JCI and the Alabama Plaintiffs, these depositions were postponed until after the holiday season.  Thus, even beyond the fact that the Alabama Action is undeniably the first-filed action, discovery has "significantly progressed" in the Alabama Action, particularly considering that absolutely no discovery has been commenced in this Delaware Action. Consequently, the fact that jurisdiction was first obtained in the Alabama Action necessarily weighs in favor of abstention.

### e.    Rule of Decision on the Merits—State or Federal Law

As JCI would have it, this factor of abstention should not be considered.  There is no dispute that Delaware State law applies in this Delaware Action.  Because neither federal statutory nor common law applies, it necessarily follows that this factor should be weighed in favor of abstention.

### f.    Adequacy of the State Court—Alabama Forum

As previously stated, there is no question that JCI is subject to the personal jurisdiction of the Alabama court in the Alabama Action.  Thus, this red herring provides no support for JCI's position that the Alabama forum is inadequate.  Moreover, the adequacy of the Alabama State court forum must be measured by whether it can "adequately protect plaintiff's rights." Horack 1995 U.S. Dist. LEXIS 7583, *28 (D. Del. 1995) (citing Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1982) and Holland v. Hay, 840 F.Supp. 1091, 1101 (E.D. Va. 1994)).  JCI does not dispute that the Alabama State court can adequately protect its rights or that the Alabama State court is inadequate.  As such, this factor should weigh in favor of abstention.

     **3.**     **Other factors relevant to federal rules of abstention which JCI failed to discuss in their Answering Brief weigh in favor of abstention.**

As previously stated, JCI failed to articulate or discuss the full set of factors the Court should consider in making a determination on abstention. This oversight reflects JCI's misunderstanding and misinterpretation of the applicable facts and law at issue. In making its determination, the Court should consider the following additional factors discussed below, each of which weigh in favor of abstention:

     **a.**     **Identity of Issues**

JCI simply ignores the fact that the similarity and identity of the issues involved in the Delaware and Alabama Actions is a key factor in reaching a determination related to abstention. See Sea Colony, 653 F.Supp at 1329. JCI's oversight was not unintentional. As discussed in the Delaware Defendants' Opening Brief, the issues, allegations, and claims in the Complaint filed by JCI in the Delaware Action and the Counterclaim it filed in the Alabama Action are virtually identical, mirror images. (See **Exhibit "D"** to Opening Brief). Accordingly, this factor must weigh heavily in favor of abstention.

     **b.**     **Federal Policies Militating in Favor or Against the Stay**

An analysis of whether federal policies militate in favor of abstention turns on whether the same would promote: (1) judicial economy; and (2) comity between state and federal courts. Sea Colony, 653 F.Supp. at 1329; Horack v. Minott, 1995 U.S. Dist. LEXIS 7583 at *28-29. It is obvious that preventing two courts from conducting duplicative work related to the same subject matter will conserve judicial resources. Sea Colony, 653 F.Supp. at 1329. Staying this Delaware Action in favor of allowing the Alabama Action to proceed would also promote comity in the judicial system, specifically between Delaware and Alabama courts, by allowing the

Alabama Action to proceed and refusing to permit JCI's attempt to evade the Alabama court's

jurisdiction by forum shopping. Thus, the above-referenced federal policies support abstention.

### c.        **Important Countervailing Federal Interest**

As discussed in the Delaware Defendants' Opening Brief, there do not appear to be any

important countervailing federal interests. As such, this factor must weigh in favor of abstention.

Horack v. Minott, 1995 U.S. Dist. LEXIS 7583, at *29 (D. Del. 1995).

### C.        THE DELAWARE ACTION IS DUE TO BE DISMISSED OR TRANSFERRED PURSUANT TO 28 U.S.C. § 1404(A) AND CONSIDERATIONS OF *FORUM NON CONVENIENS.*

As discussed in the Delaware Defendants' Opening Brief and below, the "private" and

"public" factors considered in determining whether or not to transfer the Delaware Action to the

District Court for the Northern District of Alabama weigh in favor of transfer.

### 1.        The "private factors" weigh in favor of transfer.

### a.        JCI's Choice of Forum[2]

### b.        The Delaware Defendants' Choice of Forum

Repeatedly throughout its Answering Brief, JCI attempts to mislead the Court to believe

that the Delaware Defendants have irrevocably consented to jurisdiction in Delaware under any

and all circumstances. By doing so, JCI completely disregards the non-mandatory, permissive

choice of forum language in the POS. Section 18 of the POS specifically states:

> ANY PROCEEDING AGAINST THE PARTIES RELATING IN ANY WAY
> TO THIS AGREEMENT *MAY* BE BROUGHT AND ENFORCED IN THE
> COURTS OF THE STATE OF DELAWARE OR THE UNITED STATES
> DISTRICT COURT FOR THE DISTRICT OF DELAWARE. . . .

The POS does not mandate that a lawsuit relating to the POS be brought in Delaware—a point

JCI does not dispute. If the parties had sought to require that a lawsuit related to the POS be

---

[2]     The first two private factors are discussed together due to the similar reasoning as to why each of these
factors weigh in favor of transfer. Essentially, JCI's blatant attempt to forum shop should not be condoned, and the
Alabama Plaintiffs should not be deprived of their original choice of forum in Alabama.

brought in Delaware, the POS could have easily read that any proceeding related to the POS "must" or "shall" be brought in Delaware.  That said, the Alabama Plaintiffs filed their lawsuit in Alabama State court first, more than a month prior to JCI's reactionary attempt to forum shop and bring suit in this Court by filing the Delaware Action.  Thus, as JCI states in its Answering Brief, the Court "should place considerable weight on . . . [the Alabama Defendants'] original choice of forum" in Alabama and little, if any, weight should be given to JCI's attempt to forum shop by filing suit in Delaware.  <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873 (3d Cir. 1995).  Hence, both of these factors weigh in favor of transfer.

Moreover, the Court in <u>Arrow Comm. Laboratories, Inc. v. John Mezzalingua Assocs., Inc.</u>, 2005 U.S. Dist. LEXIS 25004, at *9-10 (D. Del.) dealt with a situation very similar to the instant case.  Finding in favor of transfer in <u>Arrow</u>, the Court agreed with the movant's argument in support of transfer based on the fact that:

> all of the movant's witnesses reside in [Alabama], all the documents and records related to the accused product [technology] are in [Alabama], and the subject matter of the lawsuit has a significant local interest in [Alabama].  In contrast, evidence suggests that the District of Delaware has no connection to the subject matter of [JCI's] lawsuit except that defendant is incorporated there.

For the same reasons as those stated in <u>Arrow</u> and as discussed in the Delaware Defendants' Opening Brief and further discussed below, JCI's attempt to forum shop by prosecuting its claims in this jurisdiction should not be permitted.  Rather, this Court should transfer this Delaware Action to the District Court for the Northern District of Alabama for the benefit of and to relieve the burden on the parties of witnesses; based on the ease of access to documents and records; and based on the local interest in resolving this lawsuit in Alabama.

DEL 86205527v2 1/9/2008

### c.    Whether the Claims Arose Elsewhere

Based on JCI's own admission in its Answering Brief, this factor must weigh in favor of transfer. JCI expressly states that it "does not dispute that the claims it has asserted here did not arise in Delaware." (Answering Brief at p. 18). The Delaware Defendants do not contend that every single fact alleged by the Alabama Plaintiffs or by JCI in the Alabama Action or by JCI in this Delaware Action occurred exclusively within Madison County, Alabama. However, considering that the overwhelming majority of the facts alleged and claims asserted in these actions occurred in Madison County, Alabama, and ***none*** occurred in Delaware, this factor must weigh heavily in favor of transfer. Notably, JCI does not and cannot dispute that JCI's representatives, including its President and CEO—Sanda—physically came to Madison County, Alabama, to discuss and negotiate the terms under which JCI would acquire a majority interest in Arxceo; that the POS was executed in Madison County, Alabama; that JCI has in the past and continues to have constant contact with Arxceo's officers and employees working in Madison County, Alabama, before and after the execution of the POS and made misrepresentations that are the subject matter of the Delaware and Alabama Actions; that meetings of Arxceo's Board of Directors occur in Madison County, Alabama; and that JCI controls the appointment of two members of Arxceo's Board of Directors. As such, it is easily shown that an overwhelming majority of the claims giving rise to the Delaware and Alabama Actions occurred in Alabama, which strongly supports transfer.

### d.    Convenience of the Parties

For the reasons set forth in its Opening Brief and subsection I.B.2.b., supra, the Delaware Defendants have shown that it would be "so seriously inconvenient as to be unreasonable" to require them to defend themselves against JCI's baseless allegations in this forum. JCI makes reference to the non-binding decision of AAR Int'l, Inc. v. Nimelias Enters., S.A., 250 F.3d 510

(7th Cir. 2001) to support its position that the Delaware Defendants should not be allowed to argue that this forum is inconvenient.  (<u>Answering Brief</u> at pp. 19-21).  Even if this case were binding authority, its facts can clearly be distinguished from those in the instant action.  Here, JCI has named almost 50 defendants in the Delaware Action, virtually all of which were little more than passive investors in Arxceo and the overwhelming majority of which reside in Huntsville, Madison County, Alabama.  When coupled with the fact that the POS does not require a lawsuit arising out of it be brought in Delaware and the subject matter of the dispute between the parties was first-filed in Alabama state court, it is clear that the convenience of the parties is highly relevant and should be considered by the Court.  Notably, JCI does not argue that Delaware would not be an inconvenient forum for the Delaware Defendants or that the District Court for the Northern District of Alabama would be any less inconvenient for JCI than this forum.  Clearly, both forums—Delaware or Alabama— are equally inconvenient for JCI—a Japanese corporation which has no offices and conducts no business in Delaware.  Accordingly, this factor weighs in favor of transfer.

<strong>e.</strong>      <strong><u>Convenience of the Witnesses</u></strong>

Allowing this action to proceed in Delaware will be substantially and unreasonably inconvenient for numerous non-party witnesses, each of whom will be necessary witnesses in the Delaware Action.  JCI maintains that it is completely oblivious as to the identities of these non-party witnesses and the inconvenience that will be caused to these witnesses by litigating this matter in Delaware.  This is untrue, and is yet another attempt by JCI to hide facts and information harmful to its position from the Court, as it is well-aware of the names of the non-party witnesses and inconvenience that will be caused by litigating this matter in Delaware.  The individuals listed below are a number of the non-parties that will be necessary witnesses in this

12

lawsuit and who will provide the following testimony relevant to the parties' dispute in the

Delaware and Alabama Actions:

(1) **David Freytag ("Freytag").** Freytag resides in *Huntsville, Madison County, Alabama*. He remains employed by Arxceo. Freytag initially served as Arxceo's Director of Channel Sales before becoming Arxceo's Vice-President of Product Integration. He was extensively involved in developing the Personal IPS technology and participated in many product development conversations with JCI. He has personal knowledge of the unreasonable demands JCI placed on Arxceo to build technology for JCI for use in the Japanese market. Freytag was privy to JCI's repeated demands to integrate Arxceo's technology into JCI's products. Additionally, he was one of Arxceo's first employees and helped test the corporation's technology.

(2) **Dave Bryan ("Bryan").** Bryan resides in *Huntsville, Madison County, Alabama*. He was the Chief Financial Officer of Arxceo and had many conversations with JCI and its subsidiaries regarding Arxceo's accounting processes, forecasting, budgeting, funding, and other operational aspects of the corporation. He will testify regarding the entire financial forecasting process and funding commitments made by JCI related to the 2007-2008 budget, whereby JCI committed to provide funding to Arxceo for development projects. He was also present during many of Arxceo's Board of Director meetings.

(3) **Steve Plonka ("Plonka").** Plonka resides in *Huntsville, Madison County, Alabama*. He was a consultant to Arxceo before JCI's acquisition of a majority interest in the corporation until August 2007. Plonka met with Sanda and Winn on several occasions, and he was present when Sanda came to Huntsville, Madison County, Alabama, and outlined the overall strategy of acquiring Arxceo, committed to strengthen its position in the United States, promised additional development and integration resources for Arxceo, and proposed a bundled security solution for JCI's network customers.

(4) **Jackie Smith-Cashion ("Cashion").** Cashion resides in Fayetteville, Tennessee (approximately 30 miles from *Huntsville, Madison County, Alabama*) and has worked in and traveled to Huntsville to work for many years. She was employed as Arxceo's Director of Software Development and was intimately involved in building the Personal IPS technology for JCI. Cashion will testify as to JCI's lack of knowledge, training, and understanding of Arxceo's technology. She will testify concerning the repeated demands JCI made of Arxceo to develop technology and get it to market—as JCI's revenues and stock price were declining, and it needed a new product to infuse into the market.

(5) **Joan Lyman ("Lyman").** Lyman resides in *Atlanta, Georgia*. She was a consultant to Arxceo at the time JCI acquired a majority interest in Arxceo. She had discussions with Sanda and Winn and was intimately involved in discussions between JCI and Arxceo—acting as a liaison/mediator during the negotiations. She will testify concerning the misrepresentations JCI made to Arxceo related to technology integration commitments by BellSouth which JCI stated would generate substantial revenues and income for Arxceo. Lyman will also testify concerning the overall security strategy JCI promised to adopt in the United States, JCI's technology integration demands, and the acceptance of Arxceo's technology in the marketplace.

(6) **Greg Grant ("Grant").** Grant resides in *Atlanta, Georgia*. He was the Vice-President of Sales for Arxceo. He met with of Arxceo's resellers, distributors, and customers regarding the purchase and/or use of Arxceo's technology. Grant will testify concerning, among other things, the quality of Arxceo's technology and the strong reviews Arxceo's technology received.

(7) **Nick Owen ("Owen").** Owen resides in *Atlanta, Georgia*. He is the President and Chief Executive Officer of WIKID, Inc. ("WIKID"). He will testify regarding the security strategy that Sanda and Winn presented to him as the key to developing JCI's technology network in the United States, and JCI's offer to purchase WIKID at the same time it acquired a majority interest in Arxceo as part of its strategy to expand its business in the United States.

(8) **Henry Oat ("Oat").** Oat resides in *Atlanta, Georgia*. He is employed by CSCT and was involved in selling Arxceo's technology. He had discussions with JCI and Arxceo related to the integration of Arxceo's technology. Oat will confirm that the businesses that tested and used Arxceo's technology were very pleased, and verified that the technology worked well. He will also confirm JCI's promised overall strategy to add development and integration resources for Arxceo, which would have allowed Arxceo to focus on the development of its core technology projects.

(9) **Mark Zwecker ("Zwecker").** Zwecker resides in *Atlanta, Georgia*. He is the Chief Financial Officer of CSCT. He will testify regarding conversations he had with Sanda and Winn related to the structure and decision making process of JCI and Arxceo, and the companies' general business operations. Zwecker was involved in the budget preparation for Arxceo and has personal knowledge of JCI's unfulfilled commitment to fund Arxceo's development and integration projects.

The above-referenced witnesses will be critical to the resolution of the subject matter of this Delaware Action. Notably, none of these witnesses are parties to this Delaware Action and none are employees of any party. Continuing this litigation in Delaware would be substantially

14

inconvenient based solely upon geographic and travel considerations alone.  Each of these witnesses would have to schedule flights to Delaware, reserve hotel rooms, and take off time from their jobs to participate in this litigation.  Because there is no way to determine precisely when these witnesses will be called to testify, it would be virtually impossible for these witnesses to be readily available to testify and attend trial on short notice due to the fact that scheduling a flight, reserving a hotel room, and taking time off from their current jobs would require advance notice and planning.

Conversely, common sense dictates that transferring this Delaware Action to the District Court for the Northern District of Alabama would result in a substantially more convenient forum for these witnesses.  The witnesses from the Huntsville, Madison County, Alabama area and the Atlanta, Georgia witnesses are within *driving distance* of the Alabama court—Atlanta being within approximately 3 hours driving distance.  Moreover, if transferred, these witnesses would be afforded the opportunity to better schedule to attend proceedings, could much easier attend trial on short notice so as to lessen the impact that attending trial would have on their current jobs, and the costs associated with travel and lodging would be much less expensive.

### f.    <u>Location of Books and Records</u>

JCI concedes in its Answering Brief that Arxceo's books and records are located in Alabama and will be necessary to the resolution of this action.  (<u>Answering Brief</u> at p. 22).  However, there is no guarantee that Arxceo's books and records can or will be available in this Delaware Action, as JCI failed to name Arxceo as a defendant.  Therefore, in order to obtain the records of Arxceo, a subpoena must be issued and may be challenged by Arxceo—which is conveniently represented by the same legal counsel as JCI.  Accordingly, even if the books and records of Arxceo can ultimately be obtained in this Delaware Action, the process of producing these documents will be more time consuming, more costly, and may ultimately result in the

15

production of fewer relevant documents. This being the case, this factor weighs in favor of transfer.

### 2.    The "public factors" weigh in favor of transfer.

#### a.    Enforceability of the Judgment

A judgment entered by the District Court for the Northern District of Alabama would be equally enforceable as a judgment entered by this Court, as JCI has indisputably subjected itself to the jurisdiction of Alabama courts through its past and continued contacts with the State of Alabama. (See supra § II.B.1). Moreover, parties that are essential to the entry of a judgment and that may be named as judgment debtors at the conclusion of the Alabama Action, including Arxceo, CSCT, CCT, Sanda, and Winn, are already named defendants in the Alabama Action. Conversely, JCI failed to include these individuals and entities as parties in the Delaware Action based on the fact that doing so would destroy diversity jurisdiction. Therefore, a judgment can be more readily entered and enforced against all necessary parties in the Alabama Action, necessitating that this factor weigh in favor of transfer.

#### b.    Practical Considerations Regarding the Ease, Speed, and Expense of Trial

It goes without saying that having a single trial and resolution of two lawsuits which are mirror images will be much easier, speedier, and less expensive than allowing these two parallel actions to continue at the same time in two separate forums. In addition, as discussed herein, the expenses that will be incurred by the parties and witnesses by having to attend and participate in this litigation in Delaware rather than Alabama should weigh strongly in favor of transferring this Delaware Action to the District Court for the Northern District of Alabama. Moreover, JCI—a Japanese corporation that does not have an office or conduct business in Delaware—will

16

not incur any additional expenses as a result of this Delaware Action being transferred, a point which JCI does not dispute.

### c.    Administrative Difficulty Due to Docket Congestion

The Delaware Defendants do not believe that this Court or the District Court for the Northern District of Alabama would be unable to preside over this matter due to docket congestion. As such, this factor does not weigh in support of or against transfer.

### d.    Local Interest in Deciding Local Dispute in Home Forum

JCI argues in vain that the subject matter of the Delaware Action is not a dispute local to Madison County, Alabama. Yet, JCI cannot change the following facts which demonstrate that there is an overriding local interest in resolving this dispute in a local Alabama forum: (1) Arxceo was founded in Huntsville, Madison County, Alabama by residents of Huntsville, Madison County, Alabama; (2) Arxceo is headquartered in Huntsville, Madison County, Alabama and conducts its business operations from and in this location; (3) the overwhelming majority of investors in Arxceo reside in the Huntsville, Madison County, Alabama, area; (4) the meetings of Arxceo's Board of Directors have taken place in Huntsville, Madison County, Alabama, either in-person, by telephone, or through electronic means; (5) the POS, through which JCI acquired a majority interest in Arxceo, was executed in Huntsville, Madison County, Alabama; (6) all of Arxceo's assets, books, records, and property are located in Huntsville, Madison County, Alabama; and (7) virtually all of Arxceo's former and current employees are either from the Huntsville, Madison County, Alabama, area or within a short driving distance of the same. Considering the foregoing, JCI's argument that this is not a dispute local to Alabama that should be decided in a local Alabama forum is disingenuous at best.

DEL 86205527v2 1/9/2008

### e.     <u>Public Policies of the Two Fora</u>

In cases involving a request for transfer, Delaware courts have a strong policy in favor of transfer when the lawsuits are substantially similar.  <u>Bank of Am. v. S.I.P. Assets, LLC</u>, 2007 U.S. Dist. LEXIS 67107, *4-9 (D. Del).  In fact, in <u>Bank of America</u>, the District Court for the District of Delaware held that "given the similarities between the issues underlying the [Alabama] Action and those underlying the present [Delaware] action, allowing both cases to proceed concurrently would be both inconvenient to the parties and an inefficient use of judicial resources. . . . Given the substantial overlap among the parties and issues involved, the interests of justice and judicial administration, as well as . . . practical considerations", transferring the Delaware Action was warranted.  <u>Id.</u> at *7, 9.  Accordingly, Delaware's public policies weigh in favor of transfer.

### f.     <u>The Court's Familiarity with Applicable Law</u>

JCI agrees that the subject matter of this dispute involves "garden-variety state law issues," not novel or complex issues that only a Delaware court should be left to decide.  (<u>Answering Brief</u> at pp. 11-12).  Thus, based on JCI's own admission, the District Court for the Northern District of Alabama is more than capable of deciding the run-of-the-mill state law issues involved in the Delaware Action.

## III.     <u>CONCLUSION</u>

For the foregoing reasons, the Delaware Defendants respectfully request this Court to dismiss, stay, or transfer the Delaware Action.

Dated: January 9, 2008

Respectfully submitted,

**GREENBERG TRAURIG, LLP**


/s/ Dennis A. Meloro
Donald J. Detweiler (No. 3087)
Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
detweilerd@gtlaw.com
melorod@gtlaw.com

-and-

**MAYNARD, COOPER & GALE, P.C.**
G. Bartley Loftin, III
Douglas B. Hargett
655 Gallatin Street, S.W.
Huntsville, Alabama 35801
Telephone: (256) 512-0171

Attorneys for the Defendants

<u>**CERTIFICATE OF SERVICE**</u>

      Undersigned counsel hereby certifies that service of this document has been made upon

the following via electronic delivery and in the manner indicated:

VIA HAND DELIVERY:
Thomas C. Grimm
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, Delaware 19801
E-mail: tgrimm@mnat.com


VIA FIRST CLASS MAIL:
Jay D. Bennett
Paul J. Kaplan
Jonathan B. Davis
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
E-mail: Jay.Bennett@alston.com
        Jonathan.Davis@alston.com
        Paul.Kaplan@alston.com

                            /s/ Dennis A. Meloro
                            Dennis A. Meloro (No. 4435)

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NIHON TSUSHIN KABUSHIKI KAISHA d/b/a<br>JAPAN COMMUNICATIONS, INC.,   ) | |
| ) | |
| Plaintiffs,   ) | C.A. No.: 07-619-JJF |
| v.   ) | |
| DONALD DAVIDSON, et al.,   ) | |
| Defendants.   ) | |

**STATE OF NEW YORK** )
                     :

**COUNTY OF NEW YORK** )

### AFFIDAVIT OF MARC WEILL

Before me, the undersigned Notary Public, personally appeared Marc Weill, who, after being duly sworn, states as follows:

1.     My name is Marc Weill. I am over the age of twenty-one years, and I am a resident of the State of Connecticut.

2.     I am executing this affidavit on behalf of City Light Capital, LLC ("City Light") in my representative capacity as City Light's Chairman and Chief Executive Officer.

3.     City Light is a Delaware limited liability company. However, City Light's principal place of business is located in the State of Connecticut.

4.     City Light does not actively conduct or engage in any business in the State of Delaware apart from its registration as a Delaware limited liability company.

Further affiant saith not.

### [SIGNATURE PAGE TO FOLLOW.]

_Marc Weill_

Marc Weill, Chairman and Chief Executive Officer
of City Light Capital, LLC

**SWORN TO and SUBSCRIBED** before me this ___7th___ day of December, 2007.

_____
Notary Public

**[SEAL]**                                    My Commission Expires: _May 22, 2011_



ROBERTA ARNONE
Notary Public - State of New York
No. 02AR5044142
Qualified in New York County
My Commission Expires May 22, 2011