# Greenberg
# Traurig

June 25, 2008

**VIA E-FILING**

The Honorable Joseph J. Farnan, Jr.
United States Federal District Court Judge
844 North King Street
Wilmington, Delaware 19801

Re:    *Nihon Tsushin Kabushiki Kaisha d/b/a Japan Communications, Inc.*
        *v. Donald Davidson, et al.;* **In the United States District Court for the**
        **District of Delaware; C.A. No.: 07-619-JJF**

Dear Judge Farnan:

       I am writing to provide the Court with notice that Nihon Tsushin Kabushiki Kaisha d/b/a Japan Communications, Inc. ("JCI") and Frank Seiji Sanda ("Sanda") have been served with process, by Japanese certified mail and pursuant to the Hague Convention of November 15, 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention"), in the lawsuit pending against them in the following Alabama state court action: *RNR Ventures, LLC, et al. v. Nihon Tsushin Kabushiki Kaisha d/b/a Japan Communications, Inc.*, in the Circuit Court of Madison County, Alabama; Civil Action No.: CV-07-1345-LHL (the "Alabama Lawsuit"). Service of process was perfected on both JCI and Sanda by Japanese certified mail on December 18, 2007. JCI and Sanda were also served pursuant to the Hague Convention on February 26 and 29, 2008, respectively.

       I have attached a file-stamped copy of the Notice of Service of JCI and Sanda that was filed in the Alabama Lawsuit on May 29, 2008 for your reference.

Very truly yours,

Dennis A. Meloro (Bar No. 4435)

Enclosure (1)

cc:    Thomas C. Grimm, Esq.
       Jay D. Bennett, Esq.
       Paul J. Kaplan, Esq.
       Jonathan B. Davis, Esq.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

www.gtlaw.com

Greenberg Traurig, LLP | Attorneys at Law | The Nemours Building | 1007 North Orange Street | Suite 1200 | Wilmington, DE 19801
Tel 302.661.7000 | Fax 302.661.7360

(Arxceo-JCI) Letter to Judge Farnan (H0019780-2)

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | |
|---|---|
| RNR VENTURES, L.L.C., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO.: CV-07-1345-LHL |
| NIHON TSUSHIN KABUSHIKI | ) |
| KAISHA d/b/a JAPAN | ) |
| COMMUNICATIONS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

### NOTICE OF SERVICE OF PROCESS ON DEFENDANTS
### NIHON TSUSHIN KABUSHIKI KAISHA D/B/A JAPAN
### COMMUNICATIONS, INC. AND FRANK SEIJI SANDA

COMES NOW, Plaintiffs RNR VENTURES, L.L.C. ("RNR"), ANGUS ADAIR

WOLFGANG, INC. ("AAW"), DONALD J. DAVIDSON ("Davidson"), and J.

CHANDLER HALL ("Hall," together with RNR, AAW, and Davidson, the "Common

Stockholders"), pursuant to Rule 4.4 of the Alabama Rules of Civil Procedure, and give

the Court notice that service of process has been perfected on Defendants TSUSHIN

KABUSHIKI KAISHA d/b/a JAPAN COMMUNICATIONS, INC. ("JCI") and FRANK

SEIJI SANDA ("Sanda," together with JCI, the "Defendants"). In support hereof, the

Common Stockholders state as follows:

1.    On August 29, 2007, the Common Stockholders filed their Original

Complaint against JCI.

2.    On December 6, 2007, the Common Stockholders filed their First

Amended Complaint, and the Madison Circuit Court Clerk issued two (2) separate Alias

Summons – Civil (the "Summons") for service on Defendants. True and correct copies

of the Summons and First Amended Complaint are attached hereto as **Exhibit "A"** and

COPY

H0017872

incorporated herein by reference.

3.     In conjunction with the Summons and First Amended Complaint, the Common Stockholders completed two (2) separate Model Forms USM-94 – Request for Service Abroad of Judicial or Extrajudicial Documents (the "Hauge Model Forms"), pursuant to the Hauge Convention of November 15, 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention"), for service on Defendants.  True and correct copies of the Hague Model Forms directed to Defendants are attached hereto as **Exhibit "B"** and incorporated herein by reference.

4.     The Common Stockholders then had the Summons and First Amended Complaint translated into Japanese and delivered the English and Japanese versions of these documents, together with the Hague Model Forms, to the Japanese Minister of Foreign Affairs ("JMFA") for service on Defendants in accordance with the Hague Convention.  True and correct copies of the Japanese translations of the Summons and First Amended Complaint as served on Defendants are attached hereto as **Exhibit "C"** and incorporated herein by reference.

**I.     SERVICE ON DEFENDANTS BY JAPANESE CERTIFIED MAIL**

5.     At the same time the Summons, Complaint, and Hague Model Forms were delivered to the JMFA, Defendants were served with these documents by Japanese certified mail.  Service was perfected on both Defendants by Japanese certified mail on December 18, 2007.  True and correct copies of the English translated and Japanese versions of the Return Receipts of Certified Mail showing service on Defendants are attached hereto as **Exhibit "D"** and incorporated herein by reference.

## II.    SERVICE ON DEFENDANTS UNDER THE HAGUE CONVENTION

6.    Moreover, by letter dated April 25, 2008, from the Consulate General of Japan ("CGJ"), undersigned counsel was notified that JCI was served with the Summons, First Amended Complaint, and Hague Model Form in accordance with the Hague Convention on February 26, 2008. True and correct copies of the letter dated April 25, 2008, together with the Notification of Service by Mail, in both its English translated and Japanese versions, showing service on JCI in accordance with the Hague Convention are attached hereto as **Exhibit "E"** and incorporated herein by reference.

7.    By letter dated April 30, 2008, from the CGJ, undersigned counsel was notified that Sanda was served with the Summons, First Amended Complaint, and Hague Model Form in accordance with the Hague Convention on February 29, 2008. True and correct copies of the letter dated April 30, 2008, together with the Notification of Service by Mail, in both its English translated and Japanese versions, showing service on Sanda in accordance with the Hague Convention are attached hereto as **Exhibit "F"** and incorporated herein by reference.

WHEREFORE, PREMISES CONSIDERED, the Common Stockholders respectfully request the Court to declare Defendants to have been properly served with process by certified mail on December 18, 2007; JCI to have been properly served with process under the Hague Convention on February 26, 2008; Sanda to have been properly served with process under the Hague Convention on February 29, 2008; and enter any additional or other relief it deems just and appropriate.

Respectfully submitted this 29th day of May, 2008.

/s/ Douglas B. Hargett
G. Bartley Loftin, III (LOF009)
Douglas B. Hargett (HAR278)

**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street, S.W.
Huntsville, Alabama 35801
(256) 512-0171 (Telephone)
(256) 512-0119 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on the parties listed below by

mailing a copy by U.S. mail, on this 29th day of May, 2008, addressed as follows:

Robert C. Gammons
STEPHENS, MILLIRONS, HARRISON & GAMMONS, P.C.
P.O. Box 307
Huntsville, Alabama 35804

/s/ Douglas B. Hargett
Of Counsel

# Exhibit "A"

JCI Summons, Sanda Summons and First Amended Complaint

ORIGINAL

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev. 6/88 | SUMMONS<br>ALIAS<br>-CIVIL- | Case Number<br>CV-07-1345 |
|---|---|---|

IN THE   CIRCUIT                                    COURT OF MADISON                                    COUNTY

Plaintiff RNR VENTURES, L.L.C., et.al.          v. Defendant JAPAN COMMUNICATIONS, INC., et al.

D001

NOTICE TO   Nihon Tsushin Kabushiki Kaisha d/b/a Japan Communications, Inc., Attention: Frank Seiji Sanda

6-25-3 Minami-ohi, Shinagawa-ku, Tokyo 140-0013 JAPAN

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT.  A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY   Douglas B. Hargett c/o Maynard Cooper & Gale, P.C.                              WHOSE

ADDRESS IS  655 Gallatin Street, Huntsville, Alabama (USA) 35801

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN _____30_____ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☑  Service will be perfected on the Defendant through accepted international means.

☐  Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _12-6-07_                    _____        By ___mlm___
                                 Clerk/Register

☐  Certified Mail is hereby requested

                                 _D. B. Hett_
                                 Plaintiff's/Attorney's Signature

RETURN OF SERVICE

☐  Return receipt of certified mail received in this office on _____
                                                              (Date)

☐  I certify that I personally delivered a copy of the Summons and Complaint to _____
    _____ in _____ County,
    Alabama on _____
                     (Date)

Date _____          Server's Signature _____

Address of Server _____   Type of Process Server _____

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev. 6/88 | **ORIGINAL**<br>ALIAS<br>**SUMMONS**<br>**-CIVIL-** | Case Number<br>CV-07-1345 |
|---|---|---|

IN THE  CIRCUIT _____                    COURT OF  MADISON _____        **COUNTY**

Plaintiff  RNR VENTURES, L.L.C., et.al. ____        v. Defendant  JAPAN COMMUNICATIONS, INC., et al.

NOTICE TO   ~~JOOY~~  Frank Seiji Sanda, 4-5-12 Takanawa, Minato-ku, Tokyo 108-0074 JAPAN

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION
TO PROTECT YOUR RIGHTS.  YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN
ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT.  A
COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR
PLAINTIFF'S ATTORNEY  Douglas B. Hargett c/o Maynard Cooper & Gale, P.C. _____ WHOSE

ADDRESS IS  655 Gallatin Street, Huntsville, Alabama (USA) 35801 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ____30____ DAYS AFTER THIS SUMMONS AND COMPLAINT
WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER
THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED** by the Alabama Rules of Civil Procedure:
☐  You are hereby commanded to serve this summons and a copy of the complaint in this action
    upon the defendant.
☑  Service will be perfected on the Defendant through accepted international means.
☐  Service by certified mail of this summons is initiated upon the written request of:
    _____ pursuant to the Alabama Rules of Civil Procedure.

Date ___12-6-07___          _____          By ___mcm___
                            Clerk/Register

☐  Certified Mail is hereby requested          _____
                                               Plaintiff's/Attorney's Signature

RETURN OF SERVICE

☐  Return receipt of certified mail received in this office on _____.
                                                                      (Date)
☐  I certify that I personally delivered a copy of the Summons and Complaint to _____
    _____ in _____ County,
    Alabama on _____.
                      (Date)

Date _____          Server's Signature _____

Address of Server _____          Type of Process Server _____

*LHL*

Ⓒ

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

RNR VENTURES, L.L.C., individually and on behalf of )
all other shareholders of Arxceo Corporation; )
  )
ANGUS ADAIR WOLFGANG, INC., individually and on )
behalf of all other shareholders of Arxceo Corporation; )
  )
DONALD J. DAVIDSON, individually and on behalf of )
all other shareholders of Arxceo Corporation; and )
  )
J. CHANDLER HALL, individually and on behalf of )
all other shareholders of Arxceo Corporation; )
  )    CIVIL ACTION NUMBER
          Plaintiffs, )
  )    CV-07-1345
  )
v. )
  )
NIHON TSUSHIN KABUSHIKI KAISHA d/b/a )
JAPAN COMMUNICATIONS, INC.; )
  )
COMMUNICATIONS SECURITY AND )
COMPLIANCE TECHNOLOGIES, INC.; )
  )
COMPUTER AND COMMUNICATION )
TECHNOLOGIES, INC.; )
  )
FRANK SEIJI SANDA, individually and as a member of )
the Board of Directors of Arxceo Corporation; )
  )
J. MARC WINN, individually and as a member of the )
Board of Directors of Arxceo Corporation; and )
  )
ARXCEO CORPORATION; )
  )
          Defendants. )

*FILED IN OFFICE*
*2007 DEC -6 P 1:50*
*JANE SMITH*
*CIRCUIT CLERK*
*CIRCUIT COURT DIVISION*
*MADISON COUNTY, ALABAMA*

## FIRST AMENDED COMPLAINT

     RNR Ventures, L.L.C. ("RNR"), Angus Adair Wolfgang, Inc. ("AAW"), Donald J.

Davidson ("Davidson"), and J. Chandler Hall ("Hall," collectively with RNR, AAW, and

Davidson, the "Common Stockholders") state their First Amended Complaint (the "Complaint")

against Nihon Tsushin Kabushiki Kaisha d/b/a Japan Communications, Inc. ("JCI"),

Communications Security and Compliance Technologies, Inc. ("CSCT"), Computer and Communication Technologies, Inc. ("CCT," collectively with JCI and CSCT, the "JCI Group"), Frank Sanda ("Sanda"), Marc Winn ("Winn"), and Arxceo Corporation ("Arxceo") as follows:

## JURISDICTION AND VENUE

1.     This Court has exclusive original jurisdiction over this civil action pursuant to Alabama Code § 12-11-30 because the matter in controversy exceeds $10,000, exclusive of interest and costs.

2.     The JCI Group, Sanda, Winn, and Arxceo are subject to the personal jurisdiction of this Court because these entities and/or individuals conduct business in Alabama and/or have otherwise availed themselves to the jurisdiction of this Court through their contacts in and with Alabama.

3.     Venue is proper in this Court pursuant to Alabama Code §§ 6-3-2 and 6-3-7.

## PARTIES

4.     Defendant JCI is a Japanese-based company incorporated on or about May 24, 1996, and headquartered in Tokyo, Japan.  JCI is the parent corporation of several wholly owned subsidiaries and/or affiliate companies, including: CSCT, CCT, Arxceo, and Arxceo Japan, Inc. ("Arxceo Japan").  *JCI is the majority shareholder of Arxceo*, owning 1,349,125 shares of its Series C Preferred Stock and having a 58% ownership interest in Arxceo.

5.     Defendant CSCT is a Delaware corporation with its principal place of business located in Atlanta, Georgia.  CSCT is a wholly owned subsidiary of JCI.

6.     Defendant CCT is a Delaware corporation with its principal place of business located in Englewood, Colorado.  CCT is a wholly owned subsidiary of JCI.

2

7.     Defendant Sanda is an individual over the age of 19 years old and, upon information and belief, is a citizen of the State of New York. Sanda is the President and Chief Executive Officer of JCI and a member of Arxceo's Board of Directors.

8.     Defendant Winn is an individual over the age of 19 years old and, upon information and belief, is a citizen of the State of Georgia. Winn is the President and Chief Executive Officer of CSCT, a member of the Management Committee of JCI, and a member of Arxceo's Board of Directors.

9.     Defendant Arxceo is a Delaware corporation with its principal place of business in Huntsville, Alabama. Arxceo is named as a defendant in this action based on the derivative nature of the claims the Common Stockholders have asserted in this action. JCI owns a 58% majority interest in Arxceo, and the Common Stockholders (as well as other unnamed owners of Arxceo Common Stock) have a 42% ownership interest in Arxceo.

10.    Plaintiff RNR is an Alabama limited liability company with its principal place of business located in Huntsville, Alabama. RNR is a minority shareholder of Arxceo, owning 220,000 shares of Arxceo Common Stock.

11.    Plaintiff AAW is an Alabama corporation with its principal place of business in Huntsville, Alabama. AAW is a minority shareholder of Arxceo, owning 402,120 shares of Arxceo Common Stock.

12.    Plaintiff Davidson is an individual over the age of 19 years old and a citizen of the State of Alabama. Davidson is the President and Chief Executive Officer of Arxceo and a member of Arxceo's Board of Directors. Davidson is a minority shareholder of Arxceo, owning 250,000 shares of Arxceo Common Stock.

H0009005.1

13.    Plaintiff Hall is an individual over the age of 19 years old and a citizen of the State of Alabama.  Hall is a minority shareholder of Arxceo, owning 53,616 shares of Arxceo Common Stock.

## FUTILITY OF DEMAND

14.    The Common Stockholders have not made a demand on Arxceo, Arxceo's officers, Arxceo's Board of Directors, or any other representative of Arxceo.  As discussed below and throughout this Complaint, the Common Stockholders have not done so because making such demand would in all respects have been futile.

15.    Arxceo's Board of Directors is comprised of three members: Sanda, Winn, and Davidson.  Neither Sanda nor Winn have or can act objectively or "independently," within the meaning of applicable law, as they are both intimately involved with the JCI Group.

16.    Sanda is the President and Chief Executive Officer of JCI, and Winn is the President and Chief Executive Officer of CSCT and a member of the Management Committee of JCI.  Acting in these capacities, Sanda and Winn have continually and exclusively sought to further the interests of the JCI Group to the exclusion and detriment of Arxceo and the Common Stockholders.

17.    Further, Sanda and Winn represent a two-thirds majority of Arxceo's Board of Directors, thereby allowing Sanda and Winn to exercise complete control of Arxceo and take actions contrary to Arxceo and the Common Stockholders' best interests without being held accountable for their acts and/or omissions.

18.    Davidson has repeatedly requested Sanda and Winn to discuss and vote on the material issues discussed in this Complaint.  Specifically, during Arxceo's June, 2007, and November, 21, 2006, board meetings Sanda and Winn rejected Davidson's requests to discuss

4

H0009005.1

and abstained from voting on the restructurization of the POS (defined herein) and Earn-Out Schedule (defined herein). Sanda and Winn also failed and/or refused to approve the minutes of Arxceo's board meeting held during June, 2007, and refused to discuss and vote on other financial issues critical to Arxceo and the Common Stockholders, namely the demands the JCI Group, Sanda, and Winn placed on Arxceo related to the integration and/or embedding process and the funding required by Arxceo to meet these demands. Furthermore, Davidson has had numerous telephone conversations and exchanged multiple e-mails with Sanda, Winn, and other members of the JCI Group related to these issues since the execution of the POS.

19.    Davidson has taken numerous measures to bring the severity of these issues to the attention of Sanda and Winn. Specifically, Davidson raised these issues during the November 21, 2006, Arxceo board meeting. Davidson also traveled to Tokyo, Japan, to meet with Sanda for a pre-scheduled meeting to discuss these issues during April, 2007. However, upon Davidson's arrival in Tokyo, Japan, Sanda failed and/or refused to meet with Davidson. Moreover, during Arxceo's board meeting held during June, 2007, Davidson raised these issues for discussion and vote and emphasized that the timely resolution of these issues were critical to the financial well-being of Arxceo. Sanda and Winn refused to engage in any discussion or vote on these issues and directed Davidson to resolve these issues on his own. Neither Davidson nor the other Common Stockholders have received a response from Sanda or Winn and no action has been taken to resolve these issues. As a direct result, Arxceo and the Common Stockholders have suffered and will continue to suffer substantial damages as a result of Sanda and Winn's acts and/or omissions.

20.    Based on these allegations and others set forth in detail below in this Complaint, it is clear that Sanda and Winn have breached the fiduciary duties owed to and perpetrated fraud upon Arxceo and the Common Shareholders. For these reasons, Sanda and Winn could not have properly considered a demand to bring this lawsuit, therefore, establishing that the same would have been futile.

## FACTUAL INVESTIGATION

21.    The Common Stockholders have exhausted all means to investigate and substantiate the factual allegations set forth in this Complaint.

22.    Davidson, in his capacity as a member of Arxceo's Board of Directors, has reviewed Arxceo's books and records and brought the issues discussed in this Complaint to the attention of Sanda and Winn on a repeated basis through discussions during board meetings, e-mails, and telephone conversations.

23.    The remaining Common Stockholders have not been afforded access to review the books and records of Arxceo, as JCI, Sanda, and Winn have precluded the same based on their refusal to allow Arxceo to hold a shareholder meeting to discuss the financial condition of Arxceo and to otherwise give board approval of the disclosure of Arxceo's books and records to the Common Shareholders. This has prevented the Common Shareholders from determining the precise revenues and income generated by Arxceo and precluded the issues discussed in this Complaint from being timely and properly resolved.

24.    In their capacities as employees and/or consultants of Arxceo, Hall and David A. Izatt ("Izatt"), President of AAW, have been privy to monthly status meetings during which an overview of Arxceo's financial condition has been provided, including updates on Arxceo's revenues and income. Chandler and Izatt have also been updated on other issues related to

H0009005.1

Arxceo, including, but not limited to, the resources and funding Arxceo needs to meet the integration and/or embedding demands made upon it by the JCI Group, Sanda, and Winn.

25.    Charles F. Lofty ("Lofty"), Managing Member of RNR, has not been privy to the monthly meetings related to the financial status of Arxceo and has not otherwise been afforded the opportunity to review Arxceo's books and records. However, through his discussions with other Common Shareholders, Lofty has become aware of the magnitude of the issues and problems caused by the JCI Group, Sanda, and Winn, which are discussed in this Complaint.

26.    Based on these and other circumstances set forth in the Complaint, the Common Stockholders determined that it was in the best interest of Arxceo to bring this action to redress the harm caused to Arxceo and the Common Stockholders by the JCI Group's, Sanda's, and Winn's actions and/or omissions.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### The Initial Negotiations of the Parties and Representations Made by the JCI Group, Sanda, and Winn to Arxceo and the Common Stockholders

27.    The JCI Group provides mobile data and voice communications services for both businesses and individuals through the development and operation of mobile network products and technology.

28.    Arxceo develops products and technology used to secure communications networks and make these networks less vulnerable to attacks.

29.    On or around April, 2005, the Common Stockholders were contacted by representatives and/or associates of the JCI Group, including Sanda, Winn, and Jeff White, a former executive of both BellSouth Corp. ("BellSouth") and CSCT ("White," together with Sanda, Winn, and other representatives of the JCI Group, the "JCI Representatives"), to discuss the expansion of the JCI Group's network communications business in the United States.

30.    During discussions with the Common Shareholders, the JCI Representatives expressed their interest in Arxceo and represented and emphasized that Arxceo would be a valuable asset to the JCI Group; that the JCI Group wanted to grow its own security products and technology, as well as Arxceo's; and that the JCI Group was resolute to launch and/or expand its communications network business in the United States.

31.    The JCI Representatives assured the Common Stockholders that the JCI Group was committed to building and expanding its security solutions and offerings in the United States, thereby creating a unique mobile communications network product.

32.    In November, 2006, Arxceo and JCI agreed to the conditions expressed in a Term Sheet related to JCI's acquisition of Arxceo. During the following months, Arxceo and the JCI Group continued to discuss the terms of this acquisition.

33.    During December, 2006, the JCI Representatives represented to the Common Stockholders that BellSouth and its two primary suppliers, Westell Technologies, Inc. ("Westell") and Netopia, Inc., a corporation recently acquired by Motorola, Inc. ("Netopia"), had *committed* to include Arxceo's technology as a requirement for its vendors and assured Arxceo that the demand for and revenues and income generated by Arxceo's products would be substantial because of these guaranteed commitments.

34.    During January, 2006, the JCI Representatives also represented to the Common Stockholders that BellSouth was re-negotiating its contract with its vendors for DSL modems and Gateway business products, and these vendors would be *required* to integrate and/or embed Arxceo's technology into their products for BellSouth.

H0009005.1

35.     Throughout continued discussions during January and February, 2006, the JCI Representatives emphasized that the integration and/or embedding requirements and commitments would generate substantial revenues and income for the Common Stockholders over a short duration.

36.     During this same time period, the JCI Representatives represented to the Common Stockholders that the JCI Group would take all necessary actions to further the integration and/or embedding process.

37.     The JCI Representatives further represented that Arxceo would be provided with technology development funding resources to enable the Common Stockholders to meet and exceed the demands of integrating its products with BellSouth.

38.     The JCI Representatives assured Arxceo and the Common Stockholders that the JCI Group would hire and fund the support of any additional software developers needed to meet the demands related to the integration and/or embedding process.

THE PARTIES EXECUTE THE PURCHASE OF SECURITIES AGREEMENT

39.     Relying on the representations made by JCI, on or about March 2, 2006, the shareholders of Arxceo, which included shareholders of Common Stock and Series A and B Preferred Stock, entered into a Purchase of Securities Agreement with JCI (the "POS").

40.     At or around the time the parties executed the POS, JCI restructured Arxceo's Board of Directors to include the following three members: Davidson, Sanda, and Winn. Prior to this restructure, Arxceo's Board of Directors was made up of four members: Davidson, Lofty, Samuel McManus, and Richmond A. Wolf.

41.     Pursuant to the POS, JCI agreed to purchase all the outstanding shares of Arxceo over the course of three separate closings.

42.    At the First Closing, which occurred at or around the time the parties executed the POS, JCI agreed to purchase a percentage of Arxceo's Common Stock and Series A and B Preferred Stock and to convert all remaining Series A and B Preferred Stock to Arxceo Common Stock.

43.    JCI paid a total price of $5 million for the Arxceo stock it purchased at the First Closing, itemized as follows: (a) $3 million to purchase a portion of the Common Stock and Series A and B Preferred Stock (bearing in mind that all remaining Series A and B Preferred Stock converted to Arxceo Common Stock); and (b) $2 million for the newly created Series C Preferred Stock, which went directly to Arxceo's operating capital and served the purpose of giving JCI a 58% majority ownership interest in Arxceo.

44.    The Second and Third Closings relate specifically to the remaining Arxceo stock owned by the Common Stockholders. The Second Closing occurred on April 30, 2007, and the Third Closing will transpire on April 30, 2008.

45.    At the Second and Third Closings, JCI agreed to pay the Common Stockholders a per-share purchase price for their remaining stock of Arxceo based on a mathematical calculation which considers Arxceo's actual and targeted Gross Revenue and Net Operating Income (the "Earn-Out Schedule"). A description of the Earn-Out Schedule provisions are set forth in detail in Section 1(c) and (e), Section 2(b) and (c), and Annex I of the POS.

46.    In short, the amount the Common Stockholders would receive from JCI for their remaining shares in Arxceo depended directly upon Arxceo generating high Gross Revenues and Net Operating Income and meeting and/or surpassing certain financial targets over a very short duration.

H0009005.1

47.     If Arxceo does not meet or exceed the threshold percentages of Gross Revenues and Net Operating Income specified in the POS and Earn-Out Schedule over this short duration, JCI has the option to require the Common Shareholders to sell a substantial portion of their remaining shares in Arxceo for pennies on the dollar and effectively force the Common Stockholders out of Arxceo.

THE COMMON STOCKHOLDERS LEARN OF MISREPRESENTATIONS AND/OR SUPPRESSIONS

48.     Almost immediately after the parties executed the POS, on or around April, 2006, the JCI Representatives and current and former employees of the JCI Group, informed the Common Stockholders that many of the representations made by the JCI Group related to Arxceo prior to the execution of the POS were incorrect and were made to convince Arxceo's management and shareholders of guaranteed revenues and income.

49.     Contrary to the JCI Group's representations, BellSouth *never committed or required* Westell, Netopia, or any of its other suppliers, vendors, re-sellers, and/or distributors to integrate and/or embed Arxceo's technology into their products.

50.     In fact, directly opposite to the representations made by the JCI Representatives, the JCI Group intended to require its own vendors, re-sellers, and/or distributors to integrate and/or embed Arxceo's products and technology for its own advantage and to the detriment of Arxceo.

51.     Instead of growing Arxceo's sales, revenues, and income, the JCI Group intended to use Arxceo as its workhorse software development group and leverage its technology for the benefit of the JCI Group and Arxceo Japan.

H0009005.1

52.   After discussing these revelations with the JCI Group, the JCI Representatives re-
assured the Common Stockholders that it was committed to building and expanding the
securities technology capabilities of the JCI Group and Arxceo in the United States market.

53.   In May, 2006, White resigned from CSCT over his frustration with the JCI Group
making empty promises and commitments to the Common Shareholders and because the JCI
Group had changed directions and reneged on many of the prior representations it made to the
Common Stockholders, including, but not limited to, representations of its commitment to grow
and expand the United States market.

54.   Throughout the following months, the JCI Group demanded Arxceo to begin
integrating and/or embedding its technology into the JCI Group's products.

55.   At this time, the Common Stockholders informed the JCI Group that this would
significantly strain Arxceo's development resources and preclude Arxceo from generating short
term revenues and income.   However, the JCI Group insisted that Arxceo complete the
integration process and do so on an expedited basis.

56.   In July and August, 2006, the JCI Group made additional demands of Arxceo
related to the integration and/or embedding process by presenting Arxceo with an increased
number of development projects, the completion of which required Arxceo to exert more money
and resources than it had as its disposal.

57.   These integration projects had no commitments for development funding from the
JCI Group, and the revenue projections for these projects were all based on the generation of
revenues and income over a lengthy duration with no short-term revenue or income objectives.

58.   In or around August, 2006, the JCI Group formed Arxceo Japan to represent and
sell products and technology Arxceo developed for the JCI Group.

H0009005.1

59.    Substantial amounts of Arxceo's resources were used to develop products and technology for Arxceo Japan.  However, the revenues and income generated from these sales were distributed to the JCI Group, which necessarily limited and reduced Arxceo's revenues and income.

60.    In September, 2006, the Common Stockholders again expressed their concern to the remaining JCI Representatives regarding the JCI Group's repeated demands that Arxceo focus solely on the JCI Group's integration projects without appropriate funding; that Arxceo did not have the necessary resources to handle the workload the JCI Group continued to demand; and that the overall business direction JCI was now forcing Arxceo to take contradicted the representations made by the JCI Representatives prior to the POS.

61.    The Common Stockholders further expressed their concern that Arxceo was being used to develop products and technology to generate revenue and income for the JCI Group over the long-term, primarily in the Japanese market, at the expense and to the detriment of Arxceo and the Common Stockholders.

62.    The JCI Group, Sanda, and Winn's actions prevented the Common Stockholders from meeting the revenue and income targets set forth in the Earn-Out Schedule of the POS.

63.    The Common Stockholders expressed these concerns to the remaining JCI Representatives prior to and during an Arxceo board meeting held during November, 2006.

64.    Arxceo's board members discussed presenting JCI with a proposal to align the objectives of Arxceo and the JCI Group.  This proposal was presented to Arxceo's board members on November 21, 2006, and the JCI Representatives on or about November 30, 2006.

65.    From December, 2006, through March, 2007, the Common Stockholders and remaining JCI Representatives discussed restructuring the Earn-Out Schedule.

13

H0009005.1

66.     During March, 2007, the Common Stockholders and JCI reached a tentative agreement related to the restructured Earn-Out Schedule, which was reflected on a Term Sheet.

67.     On or around April, 2007, the remaining JCI Representatives informed the Common Stockholders that JCI did not intend to restructure the Earn-Out Schedule of the POS according to the Term Sheet or otherwise.

68.     Because the JCI Group refused to provide Arxceo with funding to develop the technology and products it demanded for the integration process, Arxceo was forced to accept multiple loans from JCI totaling more than $600,000 to enable it to continue its business operations.

69.     During May, 2007, the JCI Representatives informed the Common Stockholders that Arxceo was no longer strategic to the JCI Group; that the JCI Group intended to focus on its core communications network business; that the JCI Group did not intend to provide funding to Arxceo for development or integration; and that JCI did not intend to restructure the Earn-Out Schedule of the POS.

70.     During a June, 2007, Arxceo board meeting, Sanda and Winn recused themselves from any discussion or vote on issues related to the funding of Arxceo and the Earn-Out Schedule restructure and directed Davidson to resolve these issues on his own. In addition, Sanda and Winn refused to approve the minutes of the June, 2007, board meeting during which the above-described issues were discussed.

## COUNTS OF THE COMMON STOCKHOLDERS INDIVIDUALLY

### COUNT I – OPPRESSION/SQUEEZE OUT

**(Defendants JCI, Sanda, and Winn)**

71.    The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 70 of the Complaint, as if set forth herein in its entirety.

72.    JCI, as the majority shareholder of Arxceo, and Sanda and Winn, as members of Arxceo's Board of Directors, owed fiduciary duties to the Common Stockholders.

73.    Specifically, JCI, Sanda, and Winn owed fiduciary duties which required them not to commit misfeasance or malfeasance, as well as other fiduciary duties and responsibilities imposed upon shareholders and directors of a corporation in accordance with applicable law, including, but not limited to, duties of good faith, loyalty, and care.

74.    JCI, Sanda, and Winn breached their fiduciary duties to the Common Stockholders and committed misfeasance and/or malfeasance by acting and/or failing to act as described in paragraphs 25 through 70, *supra*. Some of these actions and/or omissions include, but are not limited to: (a) misrepresenting their intent to support, grow, and expand the JCI Group's security offerings and solutions and network communications business in the United States; (b) misrepresenting that BellSouth, Westell, and Netopia had committed and were required to integrate Arxceo's technology and products; (c) assuring that the demand for and revenues and income to be generated by BellSouth, Westell, and Netopia's requirement and commitment would be substantial; (d) misrepresenting that BellSouth would require its vendors for DSL modems and Gateway business products to embed Arxceo's technology and products; (e) misrepresenting that they would take all necessary action to further the integration and/or embedding process; (f) misrepresenting and failing to provide Arxceo with development funding

15

resources to enable it to meet and exceed the demands of the integration and/or embedding process; (g) misrepresenting that they would hire and fund the support of additional software developers to meet the demands of the integration process; (h) misrepresenting and/or suppressing material facts to induce Arxceo and the Common Shareholders to enter into the POS; (i) misrepresenting and/or suppressing material facts to induce the Common Shareholders to accept the Earn-Out Schedule; (j) demanding Arxceo to integrate and/or embed its technology and products in the products of the JCI Group and Arxceo Japan to detriment of Arxceo and the Common Shareholders; (k) setting long-term projections for revenues and income without any short-term objectives to generate revenues and income for Arxceo and the Common Stockholders; (l) diverting Arxceo's corporate opportunities, assets, revenues, and income and wasting Arxceo and the Common Shareholders' corporate assets and resources to benefit the JCI Group and Arxceo Japan; (m) misrepresenting and changing the overall business direction of the JCI Group and Arxceo; (n) precluding Arxceo and the Common Stockholders from meeting certain Gross Revenue and Net Operating Income targets set out in the POS and Earn-Out Schedule; (o) failing and/or refusing to discuss and/or vote on the restructure of the POS and Earn-Out Schedule, the funding of Arxceo, and other issues critical to Arxceo and the Common Shareholders; (p) forcing Arxceo to accept over $600,000 in loan to continue the operation of its business; and (q) indicating that Arxceo was no longer strategic to the JCI Group.

75.    As a result of JCI, Sanda, and Winn's actions and/or inactions, as well as their continued oppression of the Common Stockholders interests as minority shareholders, the Common Stockholders have suffered and will continue to suffer substantial financial harm.

16

76.    JCI, Sanda, and Winn's breaches of their fiduciary duties are so extreme that Sanda and Winn should not be allowed to maintain any position with Arxceo which would include fiscal or fiduciary responsibilities, including serving on Arxceo's Board of Directors.

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against JCI, Sanda, and Winn in an amount to be determined by the trier of fact for compensatory and punitive damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate. In addition, the Common Stockholders request the Court to remove Sanda and Winn from their positions members of Arxceo's Board of Directors, and preclude Sanda and Winn from exercising any control, oversight, or authority over Arxceo.

### COUNT II – PROMISSORY FRAUD/FRAUDULENT INDUCEMENT

### (Defendants the JCI Group, Sanda, and Winn)

77.    The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 76 of the Complaint, as if set forth herein in its entirety.

78.    The JCI Group, Sanda, and Winn intentionally, recklessly, negligently and/or innocently misrepresented certain material facts to the Common Stockholders prior to and at the time the Common Stockholders entered into the POS, including, but not limited to, the acts described in paragraphs 25 through 70, *supra*, some of which include: (a) misrepresenting the JCI Group's intent to support, grow, and expand their security offerings and solutions and network communications business in the United States, particularly over the short-term; (b) misrepresenting that BellSouth, Westell, and Netopia had committed and were required to integrate and/or embed Arxceo's technology and products; (c) assuring that the demand for and revenues and income generated by BellSouth, Westell, Netopia's requirement and commitment

17

would be substantial; (d) misrepresenting that BellSouth would require its vendors for DSL modems and Gateway business products to integrate and/or embed Arxceo's technology and products; (e) misrepresenting that they would take all necessary action to further the integration and/or embedding process; (f) misrepresenting that Arxceo would be provided with development funding resources to enable it to meet and exceed the demands of the integration and/or embedding process; (g) misrepresenting that they would hire and fund the support of additional software developers to meet the demands of the integration and/or embedding process; and (h) misrepresenting that they would use their good faith, best efforts to meet and exceed the Gross Revenue and Net Operating Income targets set out in the POS Earn-Out Schedule.

79.    The Common Stockholders reasonably relied on the above-described material misrepresentations to its detriment by, among other things: (a) entering into the POS; (b) accepting the Gross Revenue and Net Operating Income targets set out in the POS Earn-Out Schedule; (c) allowing Sanda and Winn to be appointed to Arxceo's Board of Directors; (d) investing time, money, and resources for the development and funding of technology and products for the JCI Group; and (e) otherwise electing to pursue a business relationship with the JCI Group.

80.    At the time the JCI Group, Sanda, and Winn made the misrepresentations to the Common Stockholders, they intended not to perform as promised and intended to deceive the Common Stockholders.

81.    As a result of the aforementioned material misrepresentations, the Common Stockholders have suffered and will continue to suffer substantial financial harm.

18

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against the JCI Group, Sanda, and Winn in an amount to be determined by the trier of fact for compensatory and punitive damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate.

## COUNT III – FRAUDULENT MISREPRESENTATION

### (Defendants the JCI Group, Sanda, and Winn)

82.     The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 81 of the Complaint, as if set forth herein in its entirety.

83.     The JCI Group, Sanda, and Winn intentionally, recklessly, negligently, and/or innocently misrepresented certain material facts to the Common Stockholders during their business relationship from April, 2005, through the present date, as described in paragraphs 25 through 70, *supra*, by misrepresenting, including but not limited to: (a) that they would support, grow, and expand JCI's security offerings and solutions and JCI's network communications business in the United States; (b) that BellSouth, Westell, and Netopia had committed and were required to integrate and/or embed Arxceo's technology and products; (c) that the demand for and revenues and income that would be generated by BellSouth, Westell, and Netopia's requirement and commitment would be substantial; (d) that BellSouth would require its vendors for DSL modems and Gateway business products to integrate and/or embed Arxceo's technology and products; (e) that they would take all necessary actions to further the integration and/or embedding process; (f) that Arxceo would be provided with development funding resources to enable it to meet and exceed the demands of the integration and/or embedding process; (g) that they would hire and fund the support of additional software developers to meet the demands of the integration process; (h) that they would use their good faith, best efforts to meet and exceed

the Gross Revenue and Net Operating Income targets set out in the Earn-Out Schedule of the POS; (i) that Arxceo would not be immediately required to integrate and/or embed its technology and products in the products of the JCI Group without additional funding and resources; (j) that they had short-term objectives to generate revenues and income for Arxceo and the Common Stockholders; (k) that they would not divert Arxceo's corporate opportunities, revenues, and income or waste Arxceo's assets and resources to benefit themselves and/or Arxceo Japan; (l) that the POS and Earn-Out Schedule would be restructured to align with the changed business direction of the JCI Group; (m) that they would discuss and/or vote on the restructure of the POS and Earn-Out Schedule, the funding of Arxceo, and other issues critical to Arxceo and the Common Shareholders; and (n) that Arxceo was strategic to the JCI Group.

84.    The Common Stockholders reasonably relied on the above-described material misrepresentations to their detriment by: (a) entering into the POS; (b) accepting the Gross Revenue and Net Operating Income targets set out in the POS Earn-Out Schedule; (c) allowing Sanda and Winn to be appointed to Arxceo's Board of Directors; (d) investing time, money, and resources for the development and funding of technology and products for the JCI Group; (e) accepting over $600,000 in loans from the JCI Group; and (f) otherwise electing to pursue a business relationship with the JCI Group.

85.    As a result of the aforementioned material misrepresentations, the Common Stockholders have suffered and will continue to suffer substantial financial harm.

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against the JCI Group, Sanda, and Winn in an amount to be determined by the trier of fact for compensatory and punitive damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate.

## COUNT IV – FRAUDULENT SUPPRESSION

### (Defendants the JCI Group, Sanda, and Winn)

86.    The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 85 of the Complaint, as if set forth herein in its entirety.

87.    The JCI Group, Sanda, and Winn owed a duty to the Common Stockholders to disclose certain material information concerning the Common Stockholders during their business relationship from April, 2005, through the present date. Said material information included, but was not limited to, the acts described in paragraphs 25 through 70, *supra*. Some of the suppressed facts include: (a) that they did not intend to support, grow, and expand JCI's security offerings and solutions and JCI's network communications business in the United States over a short duration; (b) that BellSouth, Westell, and Netopia did not commit and were not required to integrate and/or embed Arxceo's technology and products; (c) that the demand for and revenues and income to be generated by BellSouth, Westell, and Netopia's requirement and commitment would not be substantial; (d) that BellSouth did not require its vendors for DSL modems and Gateway business products to integrate and/or embed Arxceo's technology and products; (e) that they would not take all necessary actions to further the integration and/or embedding process; (f) that Arxceo would not be provided with development funding resources to enable it to meet and exceed the demands of the integration and/or embedding process; (g) that they would not hire and fund the support of additional software developers to meet the demands of the integration process; (h) that they would not use their good faith, best efforts to meet and exceed the Gross Revenue and Net Operating Income targets set out in the Earn-Out Schedule of the POS; (i) that they would demand Arxceo to integrate and/or embed its technology and products in the products of the JCI Group to detriment of Arxceo and the Common Shareholders; (j) that they

21

H0009005.1

did not have short-term objectives to generate revenues and income for Arxceo and the Common Stockholders; (k) that they intended to divert Arxceo's corporate opportunities, revenues, and income and waste Arxceo's corporate assets and resources to benefit the JCI Group and Arxceo Japan; (l) that the POS and Earn-Out Schedule would not be restructured to align with the changed business direction of the JCI Group; (m) that they would not discuss and/or vote on the restructure of the POS and Earn-Out Schedule, the funding of Arxceo, and other issues critical to Arxceo and the Common Shareholders; and (n) that Arxceo was not strategic to the JCI Group.

88.    The JCI Group, Sanda, and Winn had knowledge of these material facts and intentionally, recklessly, negligently, and/or innocently concealed or failed to disclose them to the Common Stockholders.

89.    The JCI Group, Sanda, and Winn's concealment or failure to disclose said material facts induced the Common Stockholders to take and/or refrain from taking action. Among other things, these suppressions caused the Common Stockholders to: (a) enter into the POS; (b) accept the Gross Revenue and Net Operating Income targets set out in the POS Earn-Out Schedule; (c) allow Sanda and Winn to be appointed to Arxceo's Board of Directors; (d) invest time, money, and resources for the development and funding of technology and products for the JCI Group; (e) accept over $600,000 in loans from the JCI Group; and (f) otherwise elect to pursue a business relationship with the JCI Group.

90.    The Common Stockholders have suffered substantial monetary damages as a result of the JCI Group, Sanda, and Winn's failure to disclose the above-described material facts.

H0009005.1

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against the JCI Group, Sanda, and Winn in an amount to be determined by the trier of fact for compensatory and punitive damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate.

## COUNT V – BREACH OF FIDUCIARY DUTY

### (Defendants JCI, Sanda, and Winn)

91.    The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 90 of the Complaint, as if set forth herein in its entirety.

92.    JCI, as the majority shareholder of Arxceo, and Sanda and Winn, as members of Arxceo's Board of Directors, owed fiduciary duties to the Common Stockholders.

93.    Specifically, JCI, Sanda, and Winn owed fiduciary duties which required them not to commit misfeasance or malfeasance, as well as other fiduciary duties and responsibilities imposed upon shareholders and directors of a corporation in accordance with applicable law, including, but not limited to, duties of good faith, loyalty, and care.

94.    JCI, Sanda, and Winn have breached their fiduciary duties and committed misfeasance and/or malfeasance by, among other things: acts described in paragraphs 25 through 68, *supra*, some of which include: (a) misrepresenting material facts related to and failing to support, grow, and expand the JCI Group's security offerings and solutions and network communications business in the United States; (b) misrepresenting that BellSouth, Westell, and Netopia had committed and were required to integrate and/or embed Arxceo's technology and products; (c) assuring that the demand for and revenues and income to be generated by BellSouth, Westell, Netopia's requirement and commitment would be substantial; (d) misrepresenting that BellSouth would require its vendors for DSL modems and Gateway

business products to embed Arxceo's technology and products; (e) misrepresenting that they would take all necessary action to further the integration and/or embedding process; (f) misrepresenting and failing to provide Arxceo with development funding resources to enable it to meet and exceed the demands of the integration and/or embedding process; (g) misrepresenting that they would hire and fund the support of additional software developers to meet the demands of the integration and/or embedding process; (h) misrepresenting and/or suppressing material facts to induce Arxceo and the Common Shareholders to enter into the POS; (i) misrepresenting and/or suppressing material facts to induce the Common Shareholders to accept the Earn-Out Schedule; (j) demanding Arxceo to integrate and/or embed its technology and products in the products of the JCI Group to detriment of Arxceo and the Common Shareholders; (k) setting long-term projections for revenues and income without any short-term objectives to generate revenues and income for Arxceo; (l) diverting Arxceo's corporate opportunities, revenues, and income and wasting Arxceo's corporate assets and resources to benefit the JCI Group and Arxceo Japan; (m) misrepresenting and changing the overall business direction of the JCI Group and Arxceo; (n) precluding Arxceo and the Common Stockholders from meeting certain revenue and income targets set out in the POS and Earn-Out Schedule; (o) failing and/or refusing to discuss and/or vote on the restructure of the POS and Earn-Out Schedule, the funding of Arxceo, and other issues critical to Arxceo and the Common Shareholders; (p) forcing Arxceo to accept over $600,000 in loan to continue the operation of its business; and (q) indicating that Arxceo was no longer strategic to the JCI Group.

95.    As a result of JCI, Sanda, and Winn's actions and/or inactions, the Common Stockholders have suffered and will continue to suffer substantial financial harm.

96.    JCI, Sanda, and Winn's breaches of their fiduciary duties are so extreme that Sanda and Winn should not be allowed to maintain any position with Arxceo which would include fiscal or fiduciary responsibilities, including serving on Arxceo's Board of Directors.

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against the JCI Group, Sanda, and Winn in an amount to be determined by the trier of fact for compensatory and punitive damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate. In addition, the Common Stockholders request the Court to remove Sanda and Winn from their positions members of Arxceo's Board of Directors, and preclude Sanda and Winn from exercising any control, oversight, or authority over Arxceo.

## COUNT VI – BREACH OF CONTRACT

### (Defendant JCI)

97.    The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 96 of the Complaint, as if set forth herein in its entirety.

98.    Pursuant to the POS, JCI agreed to pay the Common Stockholders in accordance with the terms of the POS and Earn-Out Schedule.

99.    JCI breached the POS by, among other things, failing to use its good faith, best efforts to generate Gross Revenues and Net Operating Income during the term of the Earn-Out Schedule set forth in the POS.

100.    The Common Stockholders fully performed their obligations under the POS and has suffered substantial financial damages as a result of JCI's breaches.

H0009005.1

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against JCI in an amount to be determined by the trier of fact for compensatory damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate.

## DERIVATIVE COUNTS

## COUNT VII – PROMISSORY FRAUD/FRAUDULENT INDUCEMENT

### (Defendants the JCI Group, Sanda, Winn, and Arxceo)

101.    The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 100 of the Complaint, as if set forth herein in its entirety.

102.    The JCI Group, Sanda, and Winn intentionally, recklessly, negligently and/or innocently misrepresented certain material facts to the Common Stockholders prior to and at the time the Common Stockholders entered into the POS, including, but not limited to, the acts described in paragraphs 25 through 70, *supra*, some of which include: (a) misrepresenting the JCI Group's intent to support, grow, and expand their security offerings and solutions and network communications business in the United States, particularly over the short-term; (b) misrepresenting that BellSouth, Westell, and Netopia had committed and were required to integrate and/or embed Arxceo's technology and products; (c) assuring that the demand for and revenues and income generated by BellSouth, Westell, Netopia's requirement and commitment would be substantial; (d) misrepresenting that BellSouth would require its vendors for DSL modems and Gateway business products to integrate and/or embed Arxceo's technology and products; (e) misrepresenting that they would take all necessary action to further the integration and/or embedding process; (f) misrepresenting that Arxceo would be provided with development funding resources to enable it to meet and exceed the demands of the integration and/or

26

H0009005.1

embedding process; (g) misrepresenting that they would hire and fund the support of additional software developers to meet the demands of the integration and/or embedding process; and (h) misrepresenting that they would use their good faith, best efforts to meet and exceed the Gross Revenue and Net Operating Income targets set out in the POS Earn-Out Schedule.

103.    The Common Stockholders reasonably relied on the above-described material misrepresentations to its detriment by, among other things: (a) entering into the POS; (b) accepting the Gross Revenue and Net Operating Income targets set out in the POS Earn-Out Schedule; (c) allowing Sanda and Winn to be appointed to Arxceo's Board of Directors; (d) investing time, money, and resources for the development and funding of technology and products for the JCI Group; and (e) otherwise electing to pursue a business relationship with the JCI Group.

104.    At the time the JCI Group, Sanda, and Winn made the misrepresentations to the Common Stockholders, they intended not to perform as promised and intended to deceive the Common Stockholders.

105.    As a result of the aforementioned material misrepresentations, the Common Stockholders have suffered and will continue to suffer substantial financial harm.

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against the JCI Group, Sanda, Winn, and Arxceo in an amount to be determined by the trier of fact for compensatory and punitive damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate.

H0009005.1

## COUNT VIII – FRAUDULENT MISREPRESENTATION

### (Defendants the JCI Group, Sanda, Winn, and Arxceo)

106.    The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 105 of the Complaint, as if set forth herein in its entirety.

107.    The JCI Group, Sanda, and Winn intentionally, recklessly, negligently, and/or innocently misrepresented certain material facts to the Common Stockholders during their business relationship from April, 2005, through the present date, as described in paragraphs 25 through 70, *supra*, by misrepresenting, including but not limited to: (a) that they would support, grow, and expand JCI's security offerings and solutions and JCI's network communications business in the United States; (b) that BellSouth, Westell, and Netopia had committed and were required to integrate and/or embed Arxceo's technology and products; (c) that the demand for and revenues and income that would be generated by BellSouth, Westell, and Netopia's requirement and commitment would be substantial; (d) that BellSouth would require its vendors for DSL modems and Gateway business products to integrate and/or embed Arxceo's technology and products; (e) that they would take all necessary actions to further the integration and/or embedding process; (f) that Arxceo would be provided with development funding resources to enable it to meet and exceed the demands of the integration and/or embedding process; (g) that they would hire and fund the support of additional software developers to meet the demands of the integration process; (h) that they would use their good faith, best efforts to meet and exceed the Gross Revenue and Net Operating Income targets set out in the Earn-Out Schedule of the POS; (i) that Arxceo would not be immediately required to integrate and/or embed its technology and products in the products of the JCI Group without additional funding and resources; (j) that they had short-term objectives to generate revenues and income for Arxceo and the Common

28

Stockholders; (k) that they would not divert Arxceo's corporate opportunities, revenues, and income or waste Arxceo's assets and resources to benefit themselves and/or Arxceo Japan; (l) that the POS and Earn-Out Schedule would be restructured to align with the changed business direction of the JCI Group; (m) that they would discuss and/or vote on the restructure of the POS and Earn-Out Schedule, the funding of Arxceo, and other issues critical to Arxceo and the Common Shareholders; and (n) that Arxceo was strategic to the JCI Group.

108.   The Common Stockholders reasonably relied on the above-described material misrepresentations to their detriment by: (a) entering into the POS; (b) accepting the Gross Revenue and Net Operating Income targets set out in the POS Earn-Out Schedule; (c) allowing Sanda and Winn to be appointed to Arxceo's Board of Directors; (d) investing time, money, and resources for the development and funding of technology and products for the JCI Group; (e) accepting over $600,000 in loans from the JCI Group; and (f) otherwise electing to pursue a business relationship with the JCI Group.

109.   As a result of the aforementioned material misrepresentations, the Common Stockholders have suffered and will continue to suffer substantial financial harm.

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against the JCI Group, Sanda, Winn, and Arxceo in an amount to be determined by the trier of fact for compensatory and punitive damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate.

29

H0009005.1

## COUNT IX – FRAUDULENT SUPPRESSION

### (Defendants the JCI Group, Sanda, Winn, and Arxceo)

110.    The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 109 of the Complaint, as if set forth herein in its entirety.

111.    The JCI Group, Sanda, and Winn owed a duty to the Common Stockholders to disclose certain material information concerning the Common Stockholders during their business relationship from April, 2005, through the present date. Said material information included, but was not limited to, the acts described in paragraphs 25 through 70, *supra*. Some of the suppressed facts include: (a) that they did not intend to support, grow, and expand JCI's security offerings and solutions and JCI's network communications business in the United States over a short duration; (b) that BellSouth, Westell, and Netopia did not commit and were not required to integrate and/or embed Arxceo's technology and products; (c) that the demand for and revenues and income to be generated by BellSouth, Westell, and Netopia's requirement and commitment would not be substantial; (d) that BellSouth did not require its vendors for DSL modems and Gateway business products to integrate and/or embed Arxceo's technology and products; (e) that they would not take all necessary actions to further the integration and/or embedding process; (f) that Arxceo would not be provided with development funding resources to enable it to meet and exceed the demands of the integration and/or embedding process; (g) that they would not hire and fund the support of additional software developers to meet the demands of the integration process; (h) that they would not use their good faith, best efforts to meet and exceed the Gross Revenue and Net Operating Income targets set out in the Earn-Out Schedule of the POS; (i) that they would demand Arxceo to integrate and/or embed its technology and products in the products of the JCI Group to detriment of Arxceo and the Common Shareholders; (j) that they

30

did not have short-term objectives to generate revenues and income for Arxceo and the Common Stockholders; (k) that they intended to divert Arxceo's corporate opportunities, revenues, and income and waste Arxceo's corporate assets and resources to benefit the JCI Group and Arxceo Japan; (l) that the POS and Earn-Out Schedule would not be restructured to align with the changed business direction of the JCI Group; (m) that they would not discuss and/or vote on the restructure of the POS and Earn-Out Schedule, the funding of Arxceo, and other issues critical to Arxceo and the Common Shareholders; and (n) that Arxceo was not strategic to the JCI Group.

112.    The JCI Group, Sanda, and Winn had knowledge of these material facts and intentionally, recklessly, negligently, and/or innocently concealed or failed to disclose them to the Common Stockholders.

113.    The JCI Group, Sanda, and Winn's concealment or failure to disclose said material facts induced the Common Stockholders to take and/or refrain from taking action. Among other things, these suppressions caused the Common Stockholders to: (a) enter into the POS; (b) accept the Gross Revenue and Net Operating Income targets set out in the POS Earn-Out Schedule; (c) allow Sanda and Winn to be appointed to Arxceo's Board of Directors; (d) invest time, money, and resources for the development and funding of technology and products for the JCI Group; (e) accept over $600,000 in loans from the JCI Group; and (f) otherwise elect to pursue a business relationship with the JCI Group.

114.    The Common Stockholders have suffered substantial monetary damages as a result of the JCI Group, Sanda, and Winn's failure to disclose the above-described material facts.

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against the JCI Group, Sanda, Winn, and Arxceo in an amount to be determined by the trier of fact for compensatory and punitive damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate.

## COUNT X – BREACH OF FIDUCIARY DUTY

### (Defendants JCI, Sanda, Winn, and Arxceo)

115.    The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 114 of the Complaint, as if set forth herein in its entirety.

116.    JCI, as the majority shareholder of Arxceo, and Sanda and Winn, as members of Arxceo's Board of Directors, owed fiduciary duties to the Common Stockholders.

117.    Specifically, JCI, Sanda, and Winn owed fiduciary duties which required them not to commit misfeasance or malfeasance, as well as other fiduciary duties and responsibilities imposed upon shareholders and directors of a corporation in accordance with applicable law, including, but not limited to, duties of good faith, loyalty, and care.

118.    JCI, Sanda, and Winn have breached their fiduciary duties and committed misfeasance and/or malfeasance by, among other things: acts described in paragraphs 25 through 68, *supra*, some of which include: (a) misrepresenting material facts related to and failing to support, grow, and expand the JCI Group's security offerings and solutions and network communications business in the United States; (b) misrepresenting that BellSouth, Westell, and Netopia had committed and were required to integrate and/or embed Arxceo's technology and products; (c) assuring that the demand for and revenues and income to be generated by BellSouth, Westell, Netopia's requirement and commitment would be substantial; (d)

misrepresenting that BellSouth would require its vendors for DSL modems and Gateway business products to embed Arxceo's technology and products; (e) misrepresenting that they would take all necessary action to further the integration and/or embedding process; (f) misrepresenting and failing to provide Arxceo with development funding resources to enable it to meet and exceed the demands of the integration and/or embedding process; (g) misrepresenting that they would hire and fund the support of additional software developers to meet the demands of the integration and/or embedding process; (h) misrepresenting and/or suppressing material facts to induce Arxceo and the Common Shareholders to enter into the POS; (i) misrepresenting and/or suppressing material facts to induce the Common Shareholders to accept the Earn-Out Schedule; (j) demanding Arxceo to integrate and/or embed its technology and products in the products of the JCI Group to detriment of Arxceo and the Common Shareholders; (k) setting long-term projections for revenues and income without any short-term objectives to generate revenues and income for Arxceo; (l) diverting Arxceo's corporate opportunities, revenues, and income and wasting Arxceo's corporate assets and resources to benefit the JCI Group and Arxceo Japan; (m) misrepresenting and changing the overall business direction of the JCI Group and Arxceo; (n) precluding Arxceo and the Common Stockholders from meeting certain revenue and income targets set out in the POS and Earn-Out Schedule; (o) failing and/or refusing to discuss and/or vote on the restructure of the POS and Earn-Out Schedule, the funding of Arxceo, and other issues critical to Arxceo and the Common Shareholders; (p) forcing Arxceo to accept over $600,000 in loan to continue the operation of its business; and (q) indicating that Arxceo was no longer strategic to the JCI Group.

119.    As a result of JCI, Sanda, and Winn's actions and/or inactions, the Common Stockholders have suffered and will continue to suffer substantial financial harm.

H0009005.1

120.   JCI, Sanda, and Winn's breaches of their fiduciary duties are so extreme that Sanda and Winn should not be allowed to maintain any position with Arxceo which would include fiscal or fiduciary responsibilities, including serving on Arxceo's Board of Directors.

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against the JCI Group, Sanda, Winn, and Arxceo in an amount to be determined by the trier of fact for compensatory and punitive damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate.  In addition, the Common Stockholders request the Court to remove Sanda and Winn from their positions members of Arxceo's Board of Directors, and preclude Sanda and Winn from exercising any control, oversight, or authority over Arxceo.

## COUNT XI – BREACH OF CONTRACT

### (Defendants JCI and Arxceo)

121.   The Common Stockholders adopt and incorporate by reference the allegations set forth in paragraphs 1 through 120 of the Complaint, as if set forth herein in its entirety.

122.   Pursuant to the POS, JCI agreed to pay the Common Stockholders in accordance with the terms of the POS and Earn-Out Schedule.

123.   JCI breached the POS by, among other things, failing to use its good faith, best efforts to generate Gross Revenues and Net Operating Income during the term of the Earn-Out Schedule set forth in the POS.

124.   The Common Stockholders fully performed their obligations under the POS and has suffered substantial financial damages as a result of JCI's breaches.

H0009005.1

For the foregoing reasons, the Common Stockholders respectfully request the Court to enter a judgment in their favor and against JCI and Arxceo in an amount to be determined by the trier of fact for compensatory damages, interest, costs, expenses, a reasonable attorneys' fee, and any other amount the trier of fact deems appropriate.

---

### JURY DEMAND

The Common Stockholders hereby demand a trial by struck jury as to all claims asserted in this Complaint and which may be asserted in any subsequent amendment, excluding their individual claim for breach of contract against JCI and their derivative claim for breach of contract against JCI and Arxceo.

---

Respectfully submitted this 6th day of December, 2007.

G. Barney Loftin, III (LOF009)

Douglas B. Hargett (HAR278)

**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street, S.W.
Huntsville, Alabama 35801
(256) 512-0171 (Telephone)
(256) 512-0119 (Facsimile)

W. Percy Badham, III (BAD002)

Will A. Smith (SMI284)

**MAYNARD, COOPER & GALE P.C.**
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203
(205) 254-1000 (Telephone)
(205) 254-1999 (Facsimile)

H0009005.1

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on the parties listed below through the Alacourt/Alafile filing system and by mailing a copy by U.S. mail, on this 6th day of December, 2007, addressed as follows:

Robert C. Gammons
STEPHENS, MILLIRONS, HARRISON & GAMMONS, P.C.
P.O. Box 307
Huntsville, Alabama 35804

Of Counsel

## SERVICE WILL BE PERFECTED UPON THE FOLLOWING DEFENDANTS:

**Nihon Tsushin Kabushiki Kaisha d/b/a Japan Communications, Inc.**
Attention: Frank Seiji Sanda
6-25-3 Minami-ohi, Shinagawa-ku
Tokyo 140-0013 JAPAN

**Frank Seiji Sanda**
4-5-12 Takanawa, Minato-ku
Tokyo 108-0074 JAPAN

**Computer and Communication Technologies, Inc.**
Attention: The Corporation Trust Company – Registered Agent
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

H0009005.1

## VERIFICATION

Charles F. Lofty, Managing Member of RNR Ventures, L.L.C., being first duly sworn, deposes and says that he has read the foregoing Complaint and knows the contents thereof; that the same is true to the best of his knowledge except those matters and things based upon information and belief and as to those matters and things, he believes the same to be true.

This the _5_ day of _DECEMBER_ , 2007.

_Charles F. Lofty_

Sworn and subscribed before me this the _5_ day of _DECEMBER_ 2007.

_[signature]_

Notary Public

My Commission Expires My Commission Expires 04-25-2011

[NOTARY SEAL]

37

H0009005.1

## VERIFICATION

David A. Izatt, President of Angus Adair Wolfgang, Inc., being first duly sworn, deposes and says that he has read the foregoing Complaint and knows the contents thereof; that the same is true to the best of his knowledge except those matters and things based upon information and belief and as to those matters and things, he believes the same to be true.

This the _29_ day of _November_, 2007.

_D. A. Izatt_
President of Angus Adair Wolfgang Inc.

Sworn and subscribed before me this the _29_ day of _November_, 2007.

_Gail Deey_
Notary Public
**[NOTARY SEAL]**    My Commission Expires:_____

38

H0009005.1

## VERIFICATION

Donald J. Davidson, being first duly sworn, deposes and says that he has read the foregoing Complaint and knows the contents thereof; that the same is true to the best of his knowledge except those matters and things based upon information and belief and as to those matters and things, he believes the same to be true.

This the _29_ day of _NOVEMBER_, 2007.

_[signature]_

Sworn and subscribed before me this the _29th_ day of _November_, 2007.

_[signature]_
Notary Public
My Commission Expires: _May 16, 2011_

**[NOTARY SEAL]**

39

## VERIFICATION

J. Chandler Hall, being first duly sworn, deposes and says that he has read the foregoing **Complaint** and knows the contents thereof; that the same is true to the best of his knowledge except those matters and things based upon information and belief and as to those matters and things, he believes the same to be true.

This the 30 day of November , 2007.

*J. Chandler Hall*

Sworn and subscribed before me this the 30 day of November, 2007.

*Gail Perry*
Notary Public
My Commission Expires: _____

**[NOTARY SEAL]**

H0009005.1

# Exhibit "B"
## Hague Model Forms



U.S. Department of Justice
United States Marshals Service

# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou*
*extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant *Identité et adresse du requérant* | Address of receiving authority *Adresse de l'autorité destinataire* |
|---|---|
| Douglas B. Hargett, Licensed Attorney Maynard, Cooper, & Gale, P.C. 655 Gallatin Street, S.W. Huntsville, Alabama (USA) 35801 | The Minister of Foreign Affairs 2-2-1 Kasumigaseki, Chyoda-ku 100-8919 Tokyo, JAPAN |

The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity
with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)
*Le requérant soussigné a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous*
*énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au*
*destinataire, à savoir:*
*(identité et adresse)*

Nihon Tsushin Kabushiki Kaisha d/b/a Japan Communications, Inc.,
Attention: Frank Seiji Sanda, 6-25-3 Minami-ohi, Shinagawa-ku, 140-0013 Tokyo, JAPAN

[X] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
*a) selon les formes légales (article 5 alinéa premier, lettre e).*

[ ] (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
*b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

[ ] (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
*c) le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes
with a certificate as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec*
*l'attestation figurant au verso.*

List of documents
*Enumération des pièces*

First Amended Complaint

Alias Summons - Civil

Done at Huntsville, Alabama, the 5th. day of Decemb
*Fait à* _____, *le* _____ 2007

Signature and/or stamp
*Signature et/ou cachet*



*Delete if inappropriate
*Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)

19 12.25

## CERTIFICATE
*ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1) que la demande a été exécutée*
-- the (date) - *le (date)* _____
-- at (place, street, number) - *à (localité, rue, numéro)* _____

-- in one of the following methods authorized by article 5:
-- *dans une des formes suivantes prévues à l'article 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
*a) selon les formes légales (article 5, alinéa premier, lettre a)*

☐ (b) in accordance with the following particular method:
*b) selon la forme particulière suivante:* _____

☐ (c) by delivery to the addressee, who accepted it voluntarily.*
*c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

- (identity and description of person)
- *(identité et qualité de la personne)*
_____

- relationship to the addressee family, business or other
- *liens de parenté de subordination ou autres avec le destinataire de l'acte:*
_____

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*
Documents returned:
*Pièces renvoyées*
_____
_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*
_____

Done at _____ , the _____
*Fait à* , *le*

Signature and/or stamp
*Signature et/ou cachet*

## SUMMARY OF THE DOCUMENT TO BE SERVED
### ÉLÉMENTS ESSENTIELS DE L'ACTE

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa quatre)*

**Name and address of the requesting authority:**
*Nom et adresse de l'autorité requérante:*
Douglas B. Hargett, Licensed Attorney, Maynard, Cooper & Gale, P.C. 655 Gallatin Street, S.W. Huntsville, Alabama (USA) 35801

**Particulars of the parties:**
*Identité des parties:*
The addressee is a Japanese corporation that conducts business in and owns several subsidiary corporations in the United States of America. The requesting authority represents the parties that filed the lawsuit against the addressee.

### JUDICIAL DOCUMENT
### ACTE JUDICIA IRE

**Nature and purpose of the document:**
*Nature et objet de l'acte:*
The First Amended Complaint and Alias Summons – Civil are judicial documents required to be served upon the addressee for the purpose of commencing a civil lawsuit against the addressee in the Circuit Court of Madison County, Alabama (USA). A default judgment may be entered against the addressee if no answer or responsive is submitted.

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
The proceedings are civil legal proceedings in nature and are commenced for purpose of recovering damages from the addressee related to and arising out of a stock purchase agreement involving Arxceo Corporation. The amount in dispute exceeds $10 million.

**Date and place for entering appearance:**
The addressee must enter an appearance and file an answer or response before the Circuit Court of Madison County, Alabama (USA), Honorable Judge Loyd H. Little, Jr., 100 North Side Square, Huntsville, Alabama (USA) 35801, within 30 days after receiving the Alias Summons – Civil and First Amended Complaint.

**Court which has given judgment**:**
No judgment has been given. However, this civil legal proceeding is pending before the Circuit Court of Madison County, Alabama (USA).

**Date of judgment**:**
No judgment has been given at the present time.

**Time limits stated in the document**:**
The addressee must enter an appearance and file an answer or response with the Circuit Court of Madison County, Alabama (USA) within 30 days after receiving service of the Alias Summons – Civil and First Amended Complaint.

### EXTRAJUDICIAL DOCUMENT
### ACTE EXTRAJUDICIAIRE

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

_____

**Time limits stated in the document:**
*Indication des délais figurant dans l'acte:*

_____



U.S. Department of Justice
United States Marshals Service

# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou*
*extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant*<br><br>Douglas B. Hargett, Licensed Attorney<br>Maynard, Cooper, & Gale, P.C.<br>655 Gallatin Street, S.W.<br>Huntsville, Alabama (USA) 35801 | Address of receiving authority<br>*Adresse de l'autorité destinataire*<br><br>The Minister of Foreign Affairs<br>2-2-1 Kasumigaseki, Chyoda-ku<br>Tokyo 100-8919, JAPAN |
|---|---|

The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity
with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)
*Le requérant soussigné a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous*
*énumérés, en le priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au*
*destinataire, à savoir:*
(identité et adresse)

Frank Seiji Sanda, 4-5-12 Takanawa, Minato-ku, Tokyo 108-0074, JAPAN

☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
*a) selon les formes légales (article 5 alinéa premier, lettre a).*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
*b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
*c) le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes
with a certificate as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec*
*l'attestation figurant au verso.*

List of documents
*Enumération des pièces*

First Amended Complaint
Alias Summons - Civil

Done at Huntsville, Alabama, the 5th. day of Decembe
*Fait à* _____, *le* _____ 2007

Signature and/or stamp
*Signature et/ou cachet*

Douglas B Hargett

*Delete if inappropriate
*Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)




## CERTIFICATE
### *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention.*

1) that the document has been served *
1) *que la demande a été exécutée*
    -- the (date) -- *le (date)* _____
    -- at (place, street, number) - *à (localité, rue, numéro)* _____

    -- in one of the following methods authorized by article 5:
    -- *dans une des formes suivantes prévues à l'article 5:*

      ☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
         *a) selon les formes légales (article 5, alinéa premier, lettre a)*

      ☐ (b) in accordance with the following particular method:
         *b) selon la forme particulière suivante:* _____

      ☐ (c) by delivery to the addressee, who accepted it voluntarily.*
         *c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

    - (identity and description of person)
    - *(identité et qualité de la personne)*
    _____

    - relationship to the addressee family, business or other
    - *liens de parenté de subordination ou autres avec le destinataire de l'acte:*
    _____

2) that the document has not been served, by reason of the following facts*:
2) *que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse
the expenses detailed in the attached statement*
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais
dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*
Documents returned:
*Pièces renvoyées:*

_____
_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

_____

Done at _____ , the _____
*Fait à* _____ , *le* _____

Signature and/or stamp
*Signature et/ou cachet*

## SUMMARY OF THE DOCUMENT TO BE SERVED
### ÉLÉMENTS ESSENTIELS DE L'ACTE

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa quatre)*

**Name and address of the requesting authority:**
*Nom et adresse de l'autorité requérante:*
Douglas B. Hargett, Licensed Attorney, Maynard, Cooper & Gale, P.C. 655 Gallatin Street, S.W. Huntsville, Alabama (USA) 35801

**Particulars of the parties:**
The addressee is a Japanese citizen that serves as an officer of Nihon Tsushin Kabushiki Kaisha d/b/a Japan Communications, Inc., which is a Japanese corporation that conducts business in and owns several subsidiary corporations in the United States of America. The requesting authority represents the parties that filed the lawsuit against the addressee.

### JUDICIAL DOCUMENT
### ACTE JUDICIA IRE

**Nature and purpose of the document:**
*Nature et objet de l'acte:*
The First Amended Complaint and Alias Summons – Civil are judicial documents required to be served upon the addressee for the purpose of commencing a civil lawsuit against the addressee in the Circuit Court of Madison County, Alabama (USA). A default judgment may be entered against the addressee if no answer or responsive is submitted.

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
The proceedings are civil legal proceedings in nature and are commenced for purpose of recovering damages from the addressee related to and arising out of a stock purchase agreement involving Arxceo Corporation. The amount in dispute exceeds $10 million.

**Date and place for entering appearance:**
The addressee must enter an appearance and file an answer or response before the Circuit Court of Madison County, Alabama (USA), Honorable Judge Loyd H. Little, Jr., 100 North Side Square, Huntsville, Alabama (USA) 35801, within 30 days after receiving the Alias Summons – Civil and First Amended Complaint.

**Court which has given judgment**:**
No judgment has been given. However, this civil legal proceeding is pending before the Circuit Court of Madison County, Alabama (USA).

**Date of judgment**:**
No judgment has been given at the present time.

**Time limits stated in the document**:**
The addressee must enter an appearance and file an answer or response with the Circuit Court of Madison County, Alabama (USA) within 30 days after receiving service of the Alias Summons – Civil and First Amended Complaint.

### EXTRAJUDICIAL DOCUMENT
### ACTE EXTRAJUDICIAIRE

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

_____

**Time limits stated in the document:**
*Indication des délais figurant dans l'acte:*

_____

Exhibit "C"

JCI Summons in Japanese

| アラバマ州<br>統一司法システム<br>書式 C−34<br>Rev. 6/88 | 召喚状<br>―民事― | 事件番号<br>CV-07-1345 |
|---|---|---|

マジソン郡　巡回裁判所

原告　ＲＮＲベンチャーズ・エルエルシー　外

対

被告　日本通信株式会社　外

通知先：140-0013 日本国東京都品川区南大井 6-25-3

ジャパンコミュニケーションズの名称で事業を行っている日本通信株式会社

三田フランク聖二宛

本召喚状に添付されている訴状は、重要なものであり、貴殿の権利を守るためには、迅速な行動をとらなければならない。貴殿、または貴殿の法定代理人は、書面による回答書の原本を提出することを命じられており、本裁判所に提出された訴えで述べられているそれぞれの主張を認容し、あるいは否認することになる。回答書の写しは、貴殿、または貴殿の法定代理人によって、原告、または原告の法定代理人に郵送するか、直接送達しなければならない。なお、原告の法廷代理人は、メイナード・クーパー・アンド・ゲイル専門家法人気付　ダグラス・Ｂ・ハーゲットであり、住所は、35801、米国アラバマ州ハンツヴィルギャラティンストリート 355 である。

本召喚状と訴状が、貴殿の元に送達されてから 30 日以内に、回答書を郵送するか、送達しなければならない。さもなければ、貴殿に対して、本訴で要求されている金銭、またはその他のものを求める欠席裁判が行われる可能性がある。

州長官あるいは、アラバマ州民事訴訟法によって任命された者に対して：

☐　本召喚状と上記被告に対する本訴訟の訴状の写しを送達することを求められている

☑　被告への送達は、認容された国際的な手段によって行われる。

☐　本召喚状の配達証明による送達は、アラバマ州の民事訴訟法に従って、書面による要請で行われる。

<u>2007 年 12 月 6 日</u>　　　<u>ジェーン・スミス（署名）</u>　　　<u>MLM による</u>

書記官／登録

☐　配達証明が要請されている。

<u>ダグラス・Ｂ・ハーゲット（署名）</u>

原告代理人署名

送達状の返還先

☐<u>　　　（日付）　　　</u>に、当事務所で受領した、配達証明郵便の受領書が返却された。

☐　召喚状と訴状を、＿＿＿（日付）＿＿＿に、アラバマ州＿＿＿＿＿＿郡＿＿＿＿＿に、直接送達を行ったことを証明します。

（日付）＿＿＿＿＿＿＿＿＿＿　　　送達者署名＿＿＿＿＿＿＿＿＿＿＿

送達者住所＿＿＿＿＿＿＿＿＿　　　送達者の種類＿＿＿＿＿＿＿＿＿＿

Sanda Summons in Japanese

| アラバマ州<br>統一司法システム<br>書式　C−34<br>Rev. 6/88 | 召喚状<br>—民事— | 事件番号<br>CV-07-1345 |
|---|---|---|

マジソン郡　巡回裁判所

原告　RNRベンチャーズ・エルエルシー　外
対
被告　日本通信株式会社　外

通知先：〒108-0074　日本国東京都港区高輪 4-5-12　三田フランク聖二宛

本召喚状に添付されている訴状は、重要なものであり、貴殿の権利を守るためには、迅速な行動をとらなければならない。貴殿、または貴殿の法定代理人は、書面による回答書の原本を提出することを命じられており、本裁判所に提出された訴状で述べられているそれぞれの主張を認容し、あるいは否認することになる。回答書の写しは、貴殿、または貴殿の法定代理人によって、原告、または原告の法定代理人に郵送するか、直接送達しなければならない。なお、原告の法定代理人は、メイナード・クーパー・アンド・ゲイル専門家法人気付　ダグラス・B・ハーゲットであり、住所は、35801、米国アラバマ州ハンツヴィルギャラティンストリート 355 である。

本召喚状と訴状が、貴殿の元に送達されてから 30 日以内に、回答書を郵送するか、送達しなければならない。さもなければ、貴殿に対して、本訴状で要求されている金銭、またはその他のものを求める欠席裁判が行われる可能性がある。

州長官あるいは、アラバマ州民事訴訟法によって任命された者に対して：
☐　本召喚状と上記被告に対する本訴訟の訴状の写しを送達することを求められている
☑　被告への送達は、認容された国際的な手段によって行われる。
☐　本召喚状の配達証明による送達は、アラバマ州の民事訴訟法に従って、書面による要請で行われる。

<u>2007 年 12 月 6 日</u>　　　　<u>ジェーン・スミス（署名）</u>　　　<u>MLM による</u>
　　　　　　　　　　　　　　書記官／登録

☐　配達証明が要請されている。

　　　　　　　　　　　　　　　　　　<u>ダグラス・B・ハーゲット（署名）</u>
　　　　　　　　　　　　　　　　　　　　原告代理人署名

送達状の返還先
☐ <u>　　　　（日付）　　　　</u>に、当事務所で受領した、配達証明郵便の受領書が返却された。

☐　召喚状と訴状を、<u>　　　（日付）　　</u>に、アラバマ州<u>　　　　　</u>郡<u>　　　　　</u>に、

直接送達を行ったことを証明します。

（日付）＿＿＿＿＿＿＿＿＿＿　　　送達者署名＿＿＿＿＿＿＿＿＿＿＿


送達者住所＿＿＿＿＿＿＿＿＿＿　　　送達者の種類＿＿＿＿＿＿＿＿＿

First Amended Complaint in Japanese

アラバマ州マジソン郡巡回裁判所における民事訴訟番号

**CV-07-1345**

原告、すなわち

RNR ベンチャーズ・エルエルシー、それ自体として、及びその他すべてのアレクセオ・コーポレーションの株主を代表する RNR ベンチャーズエルエルシー ；

アンガス・アデアー・ウォルフギャング・インク、それ自体として、及びその他すべてのアレクセオ・コーポレーションの株主を代表するアンガス・アデアー・ウォルフギャング・インク ；

ドナルド・デビッドソン、自ら、及びの他すべてのアレクセオ・コーポレーションの株主を代表するドナルド・デビッドソン ；

および

ジェイ・チャンドラー・ホール、自ら、及びその他すべてのアレクセオ・コーポレーションの株主を代表するドナルド・デビッドソン ；

対

被告、すなわち

ジャパン・コミュニケーションズ・インクという名称で事業を行っている日本通信株式会社；

コミュニケーションズ・セキュリティー・アンド・コンプライアンス・テクノロジー・インク；

コンピューター・アンド・コミュニケーション・テクノロジーズ・インク；

三田フランク聖二は、個人およびアレクセオ・コーポレーションの取締役会のメンバーとして；

ジェイ　マーク　ウィンは、個人およびアレクセオ・コーポレーションの取締役会のメンバーとして；

および

アレクセオ・コーポレーション

H0009005.1

RNR・ベンチャーズ・エルエルシー（以下，「RNR」という），アンガス・アデアー・ウォルフギャング・インク（以下，「AAW」という），ドナルド・デビッドソン（以下，「デビッドソン」という）およびジェイ・チャンドラー・ホール（以下，「ホール」という）を総称した「普通株主」は，ジャパン・コミュニケーションズ・インクという名称で事業を行っている日本通信株式会社（以下，「JCI」という），コミュニケーションズ・セキュリティー・アンド・コンプライアンス・テクノロジー・インク（以下，「CSCT」という），コミュニケーション・テクノロジーズ・インク（以下，「CCT」という）を総称した「JCIグループ」，三田フランク聖二（以下，「三田」という），マーク　ウィン（以下，「ウィン」という）およびアレクセオ・コーポレーションに対して、以下の通り、最初の修正された訴え（以下、「訴状」という）を提起する。

## 裁判管轄地および法廷地

1. 本民事訴訟事件は，利息と費用を除き 10,000 ドルを超過するため，本法廷が，アラバマ州法 12 条 11 項 30 号に従い，独占的第一審管轄権を持つ。

2. JCI グループ，三田，Winn かつ アレクセオ・コーポレーションは，本法廷の対人管轄権に従う。なぜならば，当該団体かつ／または個人は，アラバマ州で事業を行っており，かつ／または，事業を行っていなくても，アラバマ州内での折衝かつアラバマ州との折衝を通じて，本法廷の管轄権を利用しているからである。

3．アラバマ州法6条3項2号および6条3項7号に従い，法廷地は，本法廷が適切である。

## 当事者

4．被告JCIは，1996年5月24日、またはその前後に創業した日本に拠点を置く企業であり，本社は日本国東京にある。JCIは，CSCT，CCT，アレクセオ・コーポレーションおよびアレクセオ・ジャパン・インク（以下，「アレクセオ・ジャパンという」）をはじめとするいくつかの全額出資子会社かつ／または関連会社の親会社である。JCIは，アレクセオ・コーポレーションの多数株主であり，シリーズC優先株1,349,125株を所有し，アレクセオ・コーポレーションの事業所有権の58%を有する。

5．被告CSCTは，ジョージア州アトランタに主要な事業拠点を置くデラウェア州の企業である。CSCTは，JCIの全額出資子会社である。

6．被告CCTは，コロラド州イングルウッドに主要な事業拠点を置くデラウェア州の企業である。CCTは，JCIの全額出資子会社である。

H0009005.1

７．被告三田は，19歳以上の個人であり，知れたる情報によれば，ニューヨーク州の市民である。三田は，JCIの社長兼最高経営責任者であり，アレクセオ・コーポレーションの取締役会のメンバーである。

８．被告ウィンは，19歳以上の個人であり，知れたる情報によれば，ジョージア州の市民である。ウィンは，CSCTの社長兼最高経営責任者であり，JCIの経営委員会のメンバーであり，およびアレクセオ・コーポレーションの取締役会のメンバーである。

９．被告アレクセオ・コーポレーションは，アラバマ州ハンツヴィルに主たる事業拠点を置くデラウェア州の企業である。アレクセオ・コーポレーションは，普通株主が，本訴訟において主張する本請求の派生的本質に基づき，本訴訟において，被告として名指しされている。JCIは，アレクセオ・コーポレーションの58％の過半数持分を所有し，普通株主（およびその他のアレクセオ・コーポレーションの無記名普通株主）は，アレクセオ・コーポレーションの42％の事業所有権を有する。

10．原告RNRは，アラバマ州ハンツヴィルに主たる事業拠点を置く有限責任会社である。RNRは，アレクセオ・コーポレーションの少数株主であり，アレクセオ・コーポレーションの普通株220,000株を所有する。

H0009005.1

11. 原告 AAW は，アラバマ州ハンツヴィルに主たる事業拠点を置くアラバマ州の会社である。AAW は，アレクセオ・コーポレーションの少数株主であり，アレクセオ・コーポレーションの普通株 402,120 株を所有する。

12. 原告デビッドソンは，19 歳以上の個人であり，アラバマ州の市民である。デビッドソンは，アレクセオ・コーポレーションの社長兼最高経営責任者であり，アレクセオ・コーポレーションの取締役会のメンバーである。デビッドソンは，アレクセオ・コーポレーションの少数株主であり，アレクセオ・コーポレーションの普通株 250,000 株を所有する。

13. 原告ホールは，19 歳以上の個人であり，アラバマ州の市民である。ホールは，アレクセオ・コーポレーションの少数株主であり，アレクセオ・コーポレーションの普通株 53,616 株を所有する。

## 請求の無益性

14. 普通株主は，アレクセオ・コーポレーション，アレクセオ・コーポレーション幹部，アレクセオ・コーポレーション取締役会，あるいはいかなるアレクセオ・コーポレーションの代表者に対しても要求を申し立てていない。本訴状の以下および全体を通して述べているように，普通株主は要求を申し立てていない。なぜならば，そのような要求を申し立てることは，あらゆる面において，不毛であるからである。

H0009005.1

15．アレクセオ・コーポレーションの取締役会は，三田，ウィンおよびデビッドソンの３名から構成されている。三田およびウィン両名は，JCIグループに深く関与しているが，両名とも，準拠法の意義の範囲内では，客観的にあるいは単独で行動することはなく，あるいはできない。

16．三田は，JCIの社長兼最高経営責任者であり，ウィンは，CSCTの社長兼最高経営責任者であり，JCIの経営委員会のメンバーである。このような立場にのっとり行動し，三田とウィンは，アレクセオ・コーポレーションと普通株主を排除し，損害を与え，JCIのさらなる利益を継続的かつ排他的に求めた。

17．さらに，三田とウィンは，アレクセオ・コーポレーション取締役会の３分の２の過半数を占めており，それゆえに，三田とWinnは，自らの作為かつ／または不作為の責任を問われることなく，アレクセオ・コーポレーションに対して完全なる支配力を行使し，アレクセオ・コーポレーションと普通株主の最大の利益に反する行動を取ることができるのである。

18．デビッドソンは，三田とウィンに対して，本訴状で述べられている重大事項について議論し，議決することを繰り返し求めてきた。特に，2007年6月と2006年11月21日のアレクセオ・コーポレーションの取締役会で，三田とウィンは，（本訴状で定義される）有価証券購入合意の見直しと（本訴状で定義される）株式買取スケジュールにつ

いて議論を求めるデビッドソンの要求を却下し，それに関する議決を棄権した。また，三田とウィンは，2007年6月に開催されたアレクセオ・コーポレーションの取締役会の議事録を承認することを怠りかつ／あるいは拒否した。そして，アレクセオ・コーポレーションと普通株主にとって重要なその他の財政上の事案を討議し，議決することを拒否。その財政上の事案とは，つまり，統合かつ／または搭載工程に関して，JCIグループ，三田，ウィンが，アレクセオ・コーポレーションに対して突きつけた要求であり，アレクセオ・コーポレーションが，それらの統合かつ／または搭載工程の要求を満たすために必要な財政支援のことである。さらに，デビッドソンは，有価証券購入合意の履行に関して，三田，ウィンならびにJCIグループのその他のメンバーと何度も電話やメールでやり取りを交わした。

19．デビッドソンは，これらの事案の重大さを，三田とウィンに知らしめるために多くの手段を講じた。とりわけ，デビッドソンは，2006年11月21日のアレクセオ・コーポレーションの取締役会期中に問題提起した。また，デビッドソンは，2007年4月の間に，これらの事案を話し合うための事前にスケジュールが決められていた会議で，三田と会うために東京を訪問した。けれども，デビッドソンの日本国　東京訪問したときに，三田はデビッドソンと面会せずかつ／または会うことを拒否した。さらに，2007年6月に開かれたアレクセオ・コーポレーションの取締役会で，これらの事案を討議し，議決するよう問題提起し，これらの事案の時宜を得た解決策は，アレクセオ・コーポレーションの財政面の健全性にとって非常に重要であることを強調した。三田とウィンは，この事案に関するあらゆる討議または議決に関与することを拒否，デビッドソンに対し

て，これらの問題は自分で解決するように指示した。デビッドソンもその他の普通株主

も三田，ウィンから回答は受けっておらず，これらの事案を解決するための手立ては何

ら打たれなかった。その直接的な結果として，アレクセオ・コーポレーションと普通株

主は，三田とウィンの作為かつ／または不作為から生じた相当の損害を被り，これかも

引き続き被ることになるであろう。

20．これらの主張および本訴状の以下で詳しく述べられるその他の主張に基づき，三田

とウィンが，アレクセオ・コーポレーションおよび普通株主に対する信認義務を破り，

詐欺行為を働いたのは明白である。以上のような理由から，三田とウィンは，本訴訟を

提起する要求を適切に検討したことはなかっただろうし，したがって，それと同じこと

を立証することは無意味なことである。

**事実的調査**

21．普通株主は，本訴状の以下で述べる事実的主張を調査し，実証するためのあらゆる

方策を尽した。

22．デビッドソンは，アレクセオ・コーポレーションの取締役会のメンバーという立場

で，アレクセオ・コーポレーションの会計帳簿や記録を調査し，取締役会の間に行われ

た討議，メール，電話での会話を通じて，繰り返し，本訴状で述べられている事案につ

いて，三田とウィンの注意を喚起した。

H0009005.1

23. 残りの普通株主は，アレクセオ・コーポレーションの会計帳簿や記録を調査するための十分な手段がなかった。なぜならば，JCI，三田およびウィンは，アレクセオ・コーポレーションが，同社の財務状況を討議するための株主総会を開催することを認めず，それ以外にも，普通株主に対して，アレクセオ・コーポレーションの会計帳簿や記録を開示する承認を取締役に与えることを拒んだからである。このため，アレクセオ・コーポレーションがもたらす売上と収益を普通株主が決定することは妨害され，本訴状で述べられている事案をタイミングよく，適切に解決することが妨害された。

24. アレクセオ・コーポレーションの従業員かつ／またはコンサルタントの立場から，ホールとAAWの社長を務めるデビッド・A・イザット（以下「イザット」という）は，アレクセオ・コーポレーションの売上と収益の最新情報を含むアレクセオ・コーポレーションの財政状況の概要が提示される月次の現状会議に関与していた。チャンドラーとイザットは，アレクセオ・コーポレーションが関係するその他の事案についても最新情報の報告を受けていた。そこに含まれるのは（ただし必ずしもこれらに限定されない），JCIグループ，三田およびウィンが下した，統合しかつ／または搭載するという要求を満たすためにアレクセオ・コーポレーションが必要とする人的資源と資金に関するものである。

25. RNRの経営メンバーであるチャールズ・F・ロフティ（以下，「ロフティ」という）は，アレクセオ・コーポレーションの財務状況に関する月次会合には関与していなかったし，それ以外にも，アレクセオ・コーポレーションの会計帳簿と記録を確認する

機会を与えられていなかった。けれども，その他の普通株主との討議を通じて，ロフティは，本訴状で述べられる，JCI グループ，三田およびウィンが引き起こした事案や問題の深刻さには気が付いていた。

26．本訴状で述べられるこれらの状況に基づき，普通株主は，JCI グループ，三田およびウィンの作為かつ／または不作為によって，アレクセオ・コーポレーションと普通株主にもたらされた損害を補償することを求める本訴訟を提起することは，アレクセオ・コーポレーションの最大の利益になると決断した。

<u>すべての請求事由に共通する事実的主張</u>

**JCI グループ，三田およびウィンとアレクセオ・コーポレーションおよび普通株主によって構成する当事者および代表者の最初の交渉**

27．JCI グループは，モバイルネットワーク製品と技術の開発と運用を通じて，ビジネス向けかつ個人を対象とするモバイルデータ，ボイスコミュニケーションサービスを提供している。

28．アレクセオ・コーポレーションは，コミュニケーションネットワークの安全性を確保するための製品と技術を開発し，それらのネットワークが，攻撃を受けにくくするための製品や技術を開発している。

11

29. 2005 年 4 月前後に，普通株主は，三田，ウィンをはじめとする JCI グループの代用かつ／または共同出資者，ベルサウス・コーポレーション（以下，「ベルサウス」という）と CSCT の旧幹部のジェフ・ホワイトから連絡を受けた。その目的は，JCI グループのアメリカにおけるネットワークコミュニケーションビジネスの拡大について話し合うためであった。なお，ジェフ・ホワイト（以下，「ホワイト」という）と三田，ウィン，その他 JCI グループの代表は，以下「JCI 代表」という。

30. 普通株主との論議の間，JCI 代表は，アレクセオ・コーポレーションへの関心を示し，アレクセオ・コーポレーションは，JCI グループにとって価値のある資産であることを説明し，強調した。つまり，JCI グループは，自社およびアレクセオ・コーポレーションのセキュリティー製品と技術を開発したいと考えており，JCI グループは，アメリカでコミュニケーションネットワークビジネスを立ち上げかつ／または拡大することを決定したことを説明し，強調したのだった。

31. JCI 代表は，普通株主に対して，JCI グループは，アメリカでセキュリティ，ソリューションを築き，拡大し，提供し，その結果として，独自のモバイルコミュニケーションネットワークを作る決意があることを確約した。

32. 2006 年 11 月に，アレクセオ・コーポレーションと JCI は，JCI によるアレクセオ・コーポレーションの買収に関する条件規定書に示されている条件に合意した。その

H0009005.1

後数カ月の間，アレクセオ・コーポレーションと JCI グループは，買収の条件について，引き続き討議した。

33．2006 年 12 月の間に，JCI 代表は，普通株主に対して，ベルサウスと同社の主要取引先である 2 社，ウェステル・テクノロジーズ（以下，「ウェステル」という）とネットピア・インク（以下，「ネットピア」という。同社は，最近モトローラに買収された企業である）が，製造供給元からの要求によって，アレクセオ・コーポレーションの技術を盛り込む約束をしたと提示した。また，アレクセオ・コーポレーションの製品に対する需要および製品がもたらす売上と収益は，保証つきの約束があるため，相当なものになることをアレクセオ・コーポレーションに確約した。

34．2006 年 1 月の間に，JCI 代表は，ベルサウスは，DSL モデムとゲートウェイ のビジネス向け商品の製造供給元と契約を再交渉しており，これらの製造供給元は，ベルサウス向けの製品に，アレクセオ・コーポレーションの技術を統合しかつ／または搭載することを求められている，と普通株主に説明した。

35．2006 年の 1 月と 2 月の継続討議の間を通し，JCI 代表は，統合かつ／または搭載の要求と約束は，短期間に，普通株主に相当の売上と収益をもたらすことを強調した。

36．同じ時期に，JCI 代表は，普通株主に対して，JCI グループは，さらに統合かつ／または搭載の工程を進めるために，あらゆる必要な手段を取ることを説明した。

37．JCI代表は，さらに，アレクセオ・コーポレーションに，技術開発の資金財源が提供することを説明した。それによって，普通株主は，アレクセオ・コーポレーションの製品をベルサウスに統合する要求を満たしかつそれ以上の要求をかなえることができるのである。

38．JCI代表は，アレクセオ・コーポレーションと普通株主に対して，JCIグループは，統合かつ／または搭載工程に関する要求を満たすために必要とされるソフトウェア開発者を追加的に雇い入れ，また資金を提供することを約束した。

## 当事者は，有価証券購入合意を実行する

39．JCIからの説明を信頼して，2006年3月2日またはその前後に，普通株主とシリーズA，B優先株主を含むアレクセオ・コーポレーションの株主は，JCIとの有価証券購入合意（以下，「POS」という）を締結した。

40．同時にまたはそれと前後して，当事者は，POSを実行した。JCIは，以下の3名，三田，デビッドソンおよびウィンを含むアレクセオ・コーポレーションの取締役会の再編成を行った。この再編成の前には，アレクセオ・コーポレーションの取締役会は，デビッドソン，ロフティ，サミュエル・マクマナスおよびリッチモンド・A・ウルフの4名からなっていた。

14

41．POSに従い，JCIは，３回の個別の転換期日を通じて，アレクセオ・コーポレーションのすべての発行済株式の購入することに合意した。

42．当事者がPOSを実施した時，あるいはその前後に行われた第1回目の転換期日において，JCIは，アレクセオ・コーポレーションの普通株とシリーズＡ，Ｂ優先株の１％を購入し，残りのシリーズＡ，Ｂ優先株をアレクセオ・コーポレーションの普通株に転換することに合意した。

43．JCIは，第1回目の転換期日で購入したアレクセオ・コーポレーション株に総額500万ドルを支払った。内訳は以下のとおりである。（a）普通株とシリーズＡ，Ｂ優先株の購入に300万ドル（シリーズＡ，優先株の残りすべては，アレクセオ・コーポレーションの普通株に転換されたことを念頭に置く）（b）シリーズＣ優先株の新規設定のために200万ドル。これは，直接アレクセオ・コーポレーションの運転資金に回り，JCIにアレクセオ・コーポレーションの58％の多数事業所有権を提供するという目的のためのものであった。

44．第2，3回の転換期日は，普通株主が所有する残りのアレクセオ・コーポレーションの株と大きく関係する。第2回転換期日は，2007年4月30日に行われ，第3回転換期日は，2008年4月30日に行われる予定である。

H0009005.1

45．第2，3回の転換期日で，JCIは，普通株主に対して，アレクセオ・コーポレーションの残りの株の1株当たりの価格は，アレクセオ・コーポレーションの実際かつ目標とする総収入と営業純益（以下，「株式買取スケジュール」という）を考慮した数学的計算に基づいて支払うことに合意した。株式買取スケジュール条項の詳細は，POS別紙1のIのセクション1(c)，(e)とセクション 2(b)，(c)および別紙Iで述べられている。

46．簡単に言うと，普通株主がアレクセオ・コーポレーションの残りの株と交換に，JCIから得る額は，アレクセオ・コーポレーションがもたらす高い総収入と営業純利益，短期間で特定の財務的目標を満たしかつ／または超えるかといったことで直接決まることになった。

47．アレクセオ・コーポレーションが，短期間でPOSと株式買取スケジュールで定められた総収入と営業純利益の最低限の利益を満たさなかった場合，または超えなかった場合には，JCIには，普通株主に対して，アレクセオ・コーポレーションの残りの株の相当部分を，格安で売却ことを求め，効果的に普通株主をアレクセオ・コーポレーションから追い出す選択肢を持つことになる。

### 普通株主が不実表示かつ／または証拠隠滅を知る

48．当事者が2006年4月またはその前後にPOSを実行した直後，JCI代表，JCIグループの現従業員ならびに旧従業員は，普通株主に，POSの実施前にJCIグループが行った

アレクセオ・コーポレーションに関する説明の多くは，不正確なものであり，アレクセオ・コーポレーションの幹部と株主に保証付きの売上と収益を納得させるためになされたものであると告げた。

49．JCI グループの説明とは異なり，ベルサウスは，ウェステル，ネットピア，あらゆる供給業者，製造供給元，再販業者かつ／または代理店に対して，アレクセオ・コーポレーションの技術を，上記企業の製品に統合しかつ／または搭載すること約束したり，求めたことは 1 度もなかった。

50．実際，JCI 代表が行った説明とは、まったく正反対に，JCI グループは，同社の供給業者，製造供給元，再販業者かつ／または代理店に対して，自分たちの有利に働くように，かつアレクセオ・コーポレーションに不利に働くように，アレクセオ・コーポレーションの製品と技術を統合しかつ／または搭載することを求めるつもりだった。

51．アレクセオ・コーポレーションの販売，売上，収益を伸ばすのではなく，JCI グループは，アレクセオ・コーポレーションを馬車馬のように働くソフトウェア開発グループとして利用し，JCI グループとアレクセオ・ジャパンの利益のために，その技術を活用する意図があった。

52．JCI グループに関するこれらの事実が明らかになったことを討議した後，JCI 代表は，普通株主に，アメリカ市場において，JCI グループとアレクセオ・コーポレーショ

ンのセキュリティ技術の機能を作り出し，拡大させることに力を入れるつもりであることを改めて約束した。

53. 2006 年 5 月に，ホワイトは JCI グループが，普通株主に対して空約束，口先だけの確約をしていることに不満を募らせ CSCT から退職した。というのも，JCI グループが，方針を変え，JCI グループが，普通株主に対して行ったアメリカ市場で成長し拡大するという約束の説明を含む（それだけに限らない）従前の多くの説明に背いたからであった。

54. その後の数カ月間を通して，JCI グループは，アレクセオ・コーポレーションの技術を JCI グループの製品に統合しかつ／または搭載し始めるようアレクセオ・コーポレーションに要求した。

55. その時，普通株主は，JCI グループに対して，このことは，アレクセオ・コーポレーションの開発費に大きな負担をかけることになり，アレクセオ・コーポレーションが短期間の売上と収益をもたらすことの妨げになると報告した。けれども，JCI グループは，アレクセオ・コーポレーションが，統合工程を完了し，かつそれを迅速に行うよう主張した。

56. 2006 年 7 月と 8 月に，JCI グループは，アレクセオ・コーポレーションに多くの開発計画を提示することによって，統合かつ／または搭載工程に関連する追加的要求を行

った。その達成には，アレクセオ・コーポレーションが，自己負担で，当時持っていた以上の資金と人的資源を投じる必要であった。

57．これらの統合計画には，JCI グループからの開発ための財政的援助の約束はなく，これらの計画の収益予測は，短期間の収益または所得目標がなく，長期間にわたる売上と収益をもたらすことに基づいていた。

58．2006 年の 8 月またはその前後に，JCI グループは，アレクセオ・コーポレーションが JCI グループのために開発した技術と製品を代理し，販売するため，アレクセオ・ジャパンを設立した。

59．アレクセオ・コーポレーションの資産の相当な額が，アレクセオ・ジャパン向けの製品，技術の開発に使われた。けれども，これらの販売によってもたらされた売上と収益は，常にアレクセオ・コーポレーションの売上と収益に歯止めをかけ，押し下げていた JCI グループに分け与えられた。

60．2006 年の 9 月，普通株主は，再び，残りの JCI 代表に対して，適切な資金援助なく，アレクセオ・コーポレーションが，JCI グループの統合計画にのみ集中するよう JCI グループが何度も要求していることに対して懸念を示した。つまり，アレクセオ・コーポレーションには，JCI グループが引き続き要求する仕事量をこなすために必要な人材が

ないこと，JCIがアレクセオ・コーポレーションクスに強制している全体的な事業の方向性は，POS前に，JCI代表が行った説明と矛盾していたからである。

61. 普通株主は，アレクセオ・コーポレーションが，同社と普通株主の犠牲の上に，長期間，主に日本市場において，JCIグループのための売上と収益を生む出す製品と技術を開発するために利用されていることに，さらに懸念を示した。

62. JCIグループ，三田，ウィンの行動によって，普通株主は，POSの株式買取スケジュールに記されている売上，収益目標を達成することを妨げられた。

63. 普通株主は，2006年11月中に開かれたアレクセオ・コーポレーションの取締役会の前および取締役会の間に，残りのJCI代表にこれらの懸念を説明した。

64. アレクセオ・コーポレーションの取締役は，アレクセオ・コーポレーションとJCIグループの目標に沿うような提案をJCIに提示することを議論した。この提案は，2006年11月21日に，アレクセオ・コーポレーションの取締役に対して，2006年11月30日またはその前後に，JCI代表に対して提示された。

65. 2006年の12月から2007年の3月まで，普通株主と残りのJCI代表は，株式買取スケジュールを再検討するよう議論した。

H0009005.1

66．2007 年 3 月の間に，普通株主と JCI は，再検討後の株式買取スケジュールに関する暫定的合意に達した，この合意は条件規定書にも反映された。

67．2007 年の 4 月または，その前後に，残りの JCI 代表は，普通株主に対して，JCI は，条件規定書ないしはそれ以外の規定書に従って，POS の株式買取スケジュールを見直す意図はないことを伝えた。

68．JCI グループは，同社が要求する統合工程のための技術と製品を開発するための資金をアレクセオ・コーポレーションに提供することを拒んだだめに，アレクセオ・コーポレーションは，事業活動を継続させるため，JCI から総額 600,000 ドルを超える多重の融資を受けることを余儀なくされた。

69．2007 年 5 月の間に，JCI 代表は，普通株主に対して，以下のことを報告した。それは，アレクセオ・コーポレーションは JCI グループにとってもはや戦略上重要なものではなく，JCI グループは中核となるコミュニケーションネットワークビジネスに集中するつもりであり，JCI グループは，アレクセオ・コーポレーションに開発または統合のための資金を提供するつもりはなく，JCI は，POS の株式買取スケジュールの見直しを行う意図はないということだった。

70．2007 年 6 月の間，三田とウィンは，アレクセオ・コーポレーションの資金援助や株式買取スケジュールの見直しについての問題を議論したり，議決することから一切手

を引き，デビッドソンに自分でこれらの問題を解決するように指示した。さらに，三田とウィンは，上記で述べられた事案が討議された 2007 年 6 月の取締役会の議事録を承認することを拒否した。

**普通株主の個々の請求事由**

**請求事由 1 － 抑圧と追い出し**

**（被告　JCI，三田，ウィン）**

71. 普通株主は，本訴状パラグラフ 1 から 70 に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

72. JCI は，アレクセオ・コーポレーションの多数株主として，三田とウィンは，アレクセオ・コーポレーションの取締役会のメンバーとして，普通株主に対して信認義務を負っていた。

73. とりわけ，JCI，三田，ウィンは，不法行為あるいは違法行為をしないこと求めている信認義務を負っており，誠実義務，忠実義務，注意義務を含む（ただしそれだけに限らない）準拠法に従って，株主，会社の取締役に課せられたその他の信認義務，責任を負っていた。

74. JCI，三田，ウィンは，普通株主に対して負っている信認義務を破り，上記パラグラフ 25 から 70 に記載されている作為かつ／または不作為によって，不正行為かつ／ま

たは不法行為を犯した。これらの作為かつ／または不作為としては，以下が挙げられるが，ただし，それだけに限らない。（a）JCIグループが，アメリカで，セキュリティ，ソリューション，ネットワークコミュニケーションビジネスを支援し，成長させ，拡大させるという意思について不実表示を行ったこと、（b）ベルサウス、ウェステル、ネットピアは，アレクセオ・コーポレーションの技術と製品を統合する約束をし，それを求められていたという不実表示を行ったこと、（c）ベルサウス，ウェステル，ネットピアからもたらされるであろう需要，売上，収益は相当なものになると確約したこと、（d）ベルサウスが，DSLモデムとゲートウェイのビジネス商品の製造供給元に，アレクセオ・コーポレーションの技術と製品を搭載するように求めたと，不実表示を行ったこと、（e）統合かつ／または搭載工程のために，あらゆる手段を講じているという不実表示を行ったこと、（f）アレクセオ・コーポレーションが，統合かつ／または搭載工程の要求を満たし，要求以上のことをすることを可能にするための開発資金援助をすると，誤った情報を伝え，かつそれを怠ったこと、（g）統合工程の要求を満たすために追加のソフトウェア開発者を雇用し，財政支援するという不実表示を行ったこと、（h）アレクセオ・コーポレーションと普通株主が，POSを締結するよう誘導するための重要な事実に関して不実表示を行い，かつ／または隠したこと、（i）普通株主が，株式買取スケジュールを受け入れるよう誘導するための重要な事実に関して不実表示を行い，かつ／または隠したこと、（j）アレクセオ・コーポレーションと普通株主が不利益を被る形で，アレクセオ・コーポレーションに対して，JCIグループとアレクセオ・ジャパンの製品に，アレクセオ・コーポレーションの技術と製品を統合しかつ/または統合するよう要求したこと。（k）アレクセオ・コーポレーションと普通株主に売

上と収益をもたらすような短期的な予測をせずに，長期の売上と収益の予測を設定した

こと、(l) アレクセオ・コーポレーションの会社の機会，資産，売上，収益を流用し，

JCI グループとアレクセオ・ジャパンの利益のために，アレクセオ・コーポレーション

と普通株主の会社の資産と資金を費消したこと、(m) JCI グループとアレクセオ・コ

ーポレーションの全体的な事業の方向性に関して不実表示を行い，変更したこと、

(n) アレクセオ・コーポレーションと普通株主が，POS と株式買取スケジュールで定

められた総収入と営業純利益目標を達成することを妨げたこと、(o) POS と株式買取

スケジュールの見直し，アレクセオ・コーポレーションの資金援助，アレクセオ・コー

ポレーションと普通株主にとって重要なその他の事案を，議論せず、かつ/または議決

せず，かつ／または拒否したこと、(p) アレクセオ・コーポレーションが事業を継続

するために，同社に 600,000 ドル以上の融資を受けることを強要したこと、(q) アレ

クセオ・コーポレーションは JCI グループにとって，もはや戦略上重要でないことを示

したこと。


75. JCI,三田，ウィンの作為かつ／または不作為，および，少数株主として，普通株主

の利益に継続して抑圧を加えていった結果，普通株主は，相当の財政的な打撃を被り，

これからも被り続けるであろう。


76. JCI,三田，ウィンの財政的または信認責任を含む信認義務違反は，度を超したもの

であり，三田とウィンは，アレクセオ・コーポレーションの取締役を含むアレクセオ・

コーポレーションのあらゆる地位にとどまることを許さるべきではない。以上の理由か

ら，普通株主は，普通株主を支持して，かつ JCI，三田，ウィンに不利に働くように，事実認定を行うものが適切とみなす補償的・懲罰的損害賠償，利子，費用，経費，妥当な弁護士費用を求め，事実認定を行うものよって定められる裁判を，裁判所が登録することを謹んで要請する。加えて，普通株主は，三田とウィンをアレクセオ・コーポレーションの取締役会のメンバーから除外し，三田とウィンがアレクセオ・コーポレーションに対して支配権を行使，監視，権力を行使することを不可能ならしめることを要請する。

### 請求事由２　詐欺的約束／詐欺的誘因

### （被告　JCI グループ，三田，ウィン）

77. 普通株主は，本訴状パラグラフ 1 から 76 に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

78. JCI グループ，三田，ウィンは，故意に，無責任に，過失でかつ／または罪の意識なく，普通株主が POS を締結する前，および締結する時に，上記パラグラフ 25 から 70 に記載されているような（ただし，それだけに限らない）特定の重要な事実に関して，普通株主に不実表示を行った。それには以下も含まれる。（a）JCI グループが，アメリカで，特に短期間で，セキュリティ，ソリューション，ネットワークコミュニケーションビジネスを支援し，成長させ，拡大させるという意思について不実表示を行ったこと，（b）ベルサウス，ウェステル，ネットピアは，アレクセオ・コーポレーションの技術と製品を統合する約束をし，それを求められていた，という不実表示を行ったこと，

(c) ベルサウス，ウェステル，ネットピアからもたらされるであろう需要，売上，収益は相当なものになると確約したこと、 (d) ベルサウスが，DSL モデムとゲートウェイのビジネス商品の製造供給元に，アレクセオ・コーポレーションの技術と製品を搭載するように求めたと，いう不実表示を行ったこと、 (e) 統合かつ／または搭載工程のために，あらゆる手段を講じているという不実表示を行ったこと、 (f) アレクセオ・コーポレーションが，統合かつ／または搭載工程の要求を満たし，要求以上のことをすることを可能にするための開発資金を提供するという不実表示を行ったこと、 (g) 統合かつ／または搭載工程の要求を満たすための追加のソフトウェア開発者を雇用し，財政支援するという不実表示を行ったこと、 (h) POS の株式買取スケジュールに記載されている総収入と営業純利益目標を達成し，それを超えるために誠意を尽くし，最善を尽すという不実表示を行ったこと。

79. 普通株主が，自分たちに不利になるような不実表示を信用したことは，無理のないところである。とりわけ，以下の行動によって，不利益が生じることになる (a) POS を締結すること、 (b) POS の株式買取スケジュールで示された総収入と営業純利益目標を認めること、 (c) 三田とウィンがアレクセオ・コーポレーションの取締役員に任命されることを認めること，(d)JCI グループの技術と製品を開発し，資金を提供するために，時間，金，人的財産を投じること、 (e) さもなければ，JCI グループと事業提携を求めることを選択すること。

H0009005.1

80．JCI グループ，三田，ウィンが普通株主に不実表示を行った時，彼らは，約束したことを実行する意図はなく，普通株主をだますつもりであった。

81．上記の重大な不実表示の結果，普通株主は，相当の財政的な打撃を被り，これからも被り続けるであろう。以上の理由から，普通株主は，普通株主を支持して，かつ JCI グループ，三田，ウィンに不利に働くように，事実認定を行うものが定める裁判を，裁判所が登録することを謹んで要請する。そして，補償的・懲罰的損害賠償，利子，費用，経費，妥当な弁護士費用，その他事実認定を行うものが適切とみなすその他のあらゆるものを請求する。

## 請求事由 3　詐欺的な不実表示
### （被告　JCI グループ，三田，ウィン）

82．普通株主は，本訴状パラグラフ 1 から 81 に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

83．JCI グループ，三田，ウィンは，故意に，無責任に，過失でかつ／または罪の意識なく，2005 年 4 月から現在にいたるまでの事業提携が結ばれている間に，普通株主に対して，上記パラグラフ 25 から 70 に記載されているような（ただし，それだけに限らない）特定の重要な事実に関して不実表示を行った。それには以下も含まれる。（a）JCI グループが，アメリカで，セキュリティ，ソリューション，ネットワークコミュニ

ケーションビジネスを支援し，成長させ，拡大させること、（b）ベルサウス，ウェス
テル，ネットピアは，アレクセオ・コーポレーションの技術と製品を統合する約束をし，
それを求められていたこと、（c）ベルサウス，ウェステル，ネットピアからもたらさ
れるであろう需要，売上，収益は相当なものになること、（d）ベルサウスが，DSL モ
デムとゲートウェイのビジネス商品の製造供給元に，アレクセオ・コーポレーションの
技術と製品を搭載するように求めたということ、（e）統合かつ／または搭載工程のた
めに，あらゆる手段を講じているということ、（f）アレクセオ・コーポレーションが，
統合かつ／または搭載工程の要求を満たし，要求以上のことをすることを可能にするた
めに，同社に開発資金援助をすること、（g）統合工程の要求を満たすための追加のソ
フトウェア開発者を雇用し，財政支援すること（h）POS の株式買取スケジュールに定
められている総収入と営業純利益目標を達成し，それを超えるための誠意を尽くし，最
善の努力を尽くすこと、（i）追加的な財政支援や人材がない状態で，JCI グループの製
品に，アレクセオ・コーポレーションの技術と製品を統合しかつ／または搭載すること
は，直ちには求められていなかったこと、（j）アレクセオ・コーポレーションと普通
株主に，売上と収益をもたらす短期的な目標を持つこと。（k）アレクセオ・コーポレ
ーションの企業機会，売上，収益を流用せず，または自らの利益とアレクセオ・ジャパ
ンの利益のために，アレクセオ・コーポレーションの資産と資金を費消しないこと、

（l）JCI グループの事業の方向性の変更に沿うように，POS と株式買取スケジュールを
見直しをすること、（m）POS の株式買取スケジュールの見直し，アレクセオ・コーポ
レーションの資金援助，アレクセオ・コーポレーションと普通株主にとってその他の重

H0009005.1

要な議題について，議論し，かつ／または議決を行うこと、 (n) アレクセオ・コーポ

レーションは JCI グループにとって，戦略上重要であるとしたこと。

84. 普通株主が，自分たちに不利になるような不実表示を信用したことは，無理のない

ところである。とりわけ，以下の行動によって，不利益が生じることになる (a) POS

を締結すること， (b) POS の株式買取スケジュールで示された総収入と営業純利益目

標を認めること， (c) 三田とウィンがアレクセオ・コーポレーションの取締役員に任

命されることを認めること，(d)JCI グループの技術と製品を開発し，資金を提供するた

めに，時間，金，人的財産を投じること， (e) さもなければ，JCI グループと事業提

携を求めることを選択すること。

85. 上記の重大な不実表示の結果，普通株主は，相当の財政的な打撃を被り，これから

も被り続けるであろう。以上の理由から，普通株主は，普通株主を支持して，かつ JCI

グループ，三田，ウィンに不利に働くように，事実認定を行うものが定める裁判を，裁

判所が登録することを謹んで要請する。そして，補償的・懲罰的損害賠償，利子，費用，

経費，妥当な弁護士費用，その他事実認定を行うものが適切とみなすその他のあらゆる

ものを請求する。

### <u>請求事由 4　詐欺的隠ぺい</u>

### （被告 JCI グループ，三田，ウィン）

86. 普通株主は，本訴状パラグラフ1から85に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

87. JCIグループ，三田，ウィンは，2005年4月から現在に至るまでの事業提携が結ばれている間に，普通株主に対して，普通株主に関する特定の重要な情報を開示する義務を負っていた。その重要な情報には，上記パラグラフ25から70に記された行動が含まれるが，ただし，それだけに限らない。隠された事実としては，以下があげられる。

(a) 短期間の間に，アメリカで，JCIのセキュリティ，ソリューション，ネットワークコミュニケーションビジネスを支援し，成長させ，拡大する意思がなかったこと，

(b) ベルサウス，ウェステル，ネットピアは，アレクセオ・コーポレーションの技術と製品を統合し搭載する約束をしたことはなく，要求もされていなかったこと。 (c) ベルサウス，ウェステル，ネットピアからもたらされるであろう需要，売上，収益は相当なものであること， (d) ベルサウスが，DSLモデムとゲートウェイのビジネス商品の製造供給元に，アレクセオ・コーポレーションの技術と製品を搭載するよう要求しなかったこと， (e) 統合かつ／または搭載工程のために，あらゆる手段を講じなかったこと， (f) アレクセオ・コーポレーションが，統合かつ／または搭載工程の要求を満たし，要求以上のことをすることを可能にするための資金を提供しなかったこと，

(g) 統合工程の要求を満たすための追加のソフトウェア開発者を雇用し，財政支援すること， (h) POSの株式買取スケジュールに記載されている総収入と営業純利益目標を達成し，それを超えるための誠意を尽くし，最善の努力を尽くさなかったこと，

(i) アレクセオ・コーポレーションと普通株主の不利に働くように，JCIグループの製

品に，アレクセオ・コーポレーションの技術と製品を統合しかつ／または搭載すること
を要求したこと、 (j) アレクセオ・コーポレーションと普通株主のために，売上と収
益をもたらす短期的な目標がもたなかったこと、 (k) アレクセオ・コーポレーション
の企業機会，売上，収益を流用する意思があり，自らの利益とアレクセオ・ジャパンの
利益のために，アレクセオ・コーポレーションの資産と資金を費消したこと、 (l) JCI
グループの事業の方向性の違いに沿うように，POS と株式買取スケジュールが見直し
されなかったこと (m) POS と株式買取スケジュールの見直し，アレクセオ・コーポレ
ーションの資金援助，アレクセオ・コーポレーションと普通株主にとってその他の重要
な議題について，議論せず、かつ／または議決しなかったこと、 (n) アレクセオ・コ
ーポレーションは JCI グループにとって，もはや戦略上重要でないとしたこと。

88．JCI グループ，三田，ウィンは，これらの重大な事実を認識しており，故意に，無
責任に，過失でかつ／または罪の意識なく，普通株主にこれらの重大な事実を隠し，ま
たは開示することを怠った。

89．JCI グループ，三田，ウィンが，前述の重大な事実を隠ぺいしあるいは開示しなか
ったために，普通株主は，対応策をとることができず，かつ／またはとることを妨げら
れた。とりわけ，このような隠ぺいによって，普通株主は，以下のことを行うこととな
った (a) POS を締結すること， (b) POS の株式買取スケジュールで示された総収入
と営業純利益目標を認めること， (c) 三田とウィンがアレクセオ・コーポレーション
の取締役員に任命されることを認めること，(d)JCI グループの技術と製品を開発し，資

31

金を提供するために，時間，金，人的財産を投じること，　(e) さもなければ，JCI グループと事業提携を求めることを選択すること。

90. JCI グループ，三田，ウィンが，上記の重大な事実を開示しなかった結果，普通株主は，相当の金銭的損失を被っている。以上の理由から，普通株主は，普通株主を支持して，かつ JCI グループ，三田，ウィンに不利に働くように，事実認定を行うものが定める裁判を，裁判所が登録することを謹んで要請する。そして，補償的・懲罰的損害賠償，利子，費用，経費，妥当な弁護士費用，その他事実認定を行うものが適切とみなすその他のあらゆるものを請求する。

## 請求事由 5　　信任義務違反

### （被告　JCI グループ，三田，ウィン）

91. 普通株主は，本訴状パラグラフ 1 から 90 に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

92. JCI は，アレクセオ・コーポレーションの多数株主として，三田とウィンは，アレクセオ・コーポレーションの取締役会のメンバーとして，普通株主に対して信認義務を負っていた。

93. とりわけ，JCI，三田，ウィンは，不法行為あるいは違法行為をしないこと求める信認義務を負っており，誠実義務，忠実義務，注意義務を含む（ただしそれだけに限らない）準拠法に従って，株主，会社の取締役に課せられたその他の信認義務，責任を負っていた。

94. JCI，三田，ウィンは，信認義務を破り，とりわけ上記パラグラフ 25 から 68 に記載されている行為によって，不正行為かつ／または不法行為を犯した。その中には，以下が含まれる。（a）JCI グループの，アメリカにおける，セキュリティ，ソリューション，ネットワークコミュニケーションビジネスについて不実表示を行い，それらを支援し，成長させ，拡大させなかったこと，（b）ベルサウス，ウェステル，ネットピアは，アレクセオ・コーポレーションの技術と製品を統合する約束をし，それを求められていた，と不実表示を行ったこと，（c）ベルサウス，ウェステル，ネットピアからもたらされるであろう需要，売上，収益は相当なものになると確約したこと，（d）ベルサウスが，DSL モデムとゲートウェイのビジネス商品の製造供給元に，アレクセオ・コーポレーションの技術と製品を搭載するように求めたと，不実表示を行ったこと，（e）統合かつ／または搭載工程のために，あらゆる手段を講じていると不実表示を行ったこと，（f）アレクセオ・コーポレーションが，統合かつ／または搭載工程の要求を満たし，要求以上のことをすることを可能にするための開発資金援助をするという不実表示を行い，かつそれを怠ったこと，（g）統合かつ/または搭載工程の要求を満たすための追加のソフトウェア開発者を雇用し，支援するという不実表示を行ったこと，（h）アレクセオ・コーポレーションと普通株主が，POS を締結するよう誘導するため

H0009005.1

の重要な事実に関して不実表示を行い，かつ／または隠したこと、 (i) 普通株主が，

株式買取スケジュールを受け入れるよう誘導するための重要な事実に関して不実表示を

行い，かつ／または隠したこと、 (j) アレクセオ・コーポレーションと普通株主が不

利益を被る形で，アレクセオ・コーポレーションに対して，JCI グループとアレクセ

オ・ジャパンの製品に，アレクセオ・コーポレーションの技術と製品を統合しかつ／ま

たは統合するよう要求した、 (k) アレクセオ・コーポレーションと普通株主の売上と

収益をもたらすような短期的な予測をせずに，長期の売上と収益の予測を設定したこと、

 (l) アレクセオ・コーポレーションの会社の機会，資産，売上，収益を流用し，JCI グ

ループとアレクセオ・ジャパンの利益のために，アレクセオ・コーポレーションと普通

株主の会社の資産と資金を費消したこと、 (m) JCI グループとアレクセオ・コーポレ

ーションの全体的な事業の方向性に関して不実表示を行い，変更したこと、 (n) アレ

クセオ・コーポレーションと普通株主が，POS と株式買取スケジュールで定められた

総収入と営業利益を達成することを妨げたこと、 (o) POS 株式買取スケジュールの見

直し，アレクセオ・コーポレーションの資金援助，アレクセオ・コーポレーションと普

通株主にとって重要なその他の事案を，議論せず，かつ／または、議決せずかつ／また

は拒否したこと、 (p) アレクセオ・コーポレーションが事業を継続するために，同社

に 600,000 ドル以上の融資を受けることを強要したこと、 (q) アレクセオ・コーポレ

ーションは JCI グループにとって，もはや戦略上重要でないことを示したこと。


95．JCI,三田，ウィンの作為かつ／または不作為によって，普通株主は，相当の財政的

な打撃を被り，これからも被り続けるであろう。

96．JCI，三田，ウィンの財政的または信認責任を含む信認義務違反は，度を超したものであり，三田とウィンは，アレクセオ・コーポレーションの取締役を含むアレクセオ・コーポレーションのあらゆる地位にとどまることを許されるべきではない。以上の理由から，普通株主は，普通株主を支持して，かつJCIグループ，三田，ウィンに不利に働くように，事実認定を行うものが定める裁判を，裁判所が登録することを謹んで要請する。そして，補償的・懲罰的損害賠償，利子，費用，経費，妥当な弁護士費用，その他事実認定を行うものが適切とみなすその他のあらゆるものを請求する。加えて，普通株主は，三田とウィンをアレクセオ・コーポレーションの取締役会のメンバーから除外し，三田とウィンがアレクセオ・コーポレーションに支配権を行使し，監視し，権力を行使することを不可能ならしめることを要請します。

### 請求事由6　契約不履行

#### （被告　JCI）

97．普通株主は，本訴状パラグラフ1から96に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

98．POSに従い，JCIは，普通株主に，POSと株式買取スケジュールの条件に沿った金額を払うことを合意した。

99. JCI は POS を破り，とりわけ POS に記されている Earn-Out Schedule の期日の間に，総収入と営業純利益をもたらすための誠意を尽くさず，最善を尽くさなかった。

100. 普通株主は，POS のもとでの義務を完全に果たし，JCI の違反の結果，相当の財政的損害を被っている。以上の理由から，普通株主は，普通株主を支持して，かつ JCI に不利に働くように，事実認定を行うものが定める裁判を，裁判所が登録することを謹んで要請する。そして，補償的・懲罰的損害賠償，利子，費用，経費，妥当な弁護士費用，その他事実認定を行うものが適切とみなすその他のあらゆるものを請求する。

## 派生的請求事由

### 請求事由 7    詐欺的約束／詐欺的誘因

### （被告　JCI グループ，三田，ウィン，アレクセオ・コーポレーション）

101. 普通株主は，本訴状パラグラフ 1 から 100 に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

102. JCI グループ，三田，ウィンは，故意に，無責任に，過失でかつ／または罪の意識なく，普通株主が POS を締結する前かつ締結した時に，上記パラグラフ 25 から 70 に記載されているような（ただし，それだけに限らない）特定の重要な事実について，普通株主に不実表示を行った。それには以下も含まれる。（a）JCI グループが，アメ

リカで，セキュリティ，ソリューション，ネットワークコミュニケーションビジネスを支援し，成長させ，拡大させるという意思に関して不実表示を行ったこと、（b）ベルサウス，ウェステル，ネットピアは，アレクセオ・コーポレーションの技術と製品を統合する約束をし，それを求められていた，と不実表示を行ったこと、（c）ベルサウス，ウェステル，ネットピアからもたらされるであろう需要，売上，収益は相当なものになると確約したこと、（d）ベルサウスが，DSLモデムとゲートウェイのビジネス商品の製造供給元に，アレクセオ・コーポレーションの技術と製品を搭載するように求めたと，不実表示を行ったこと、（e）統合かつ／または搭載工程のために，あらゆる手段を講じていると不実表示を行ったこと、（f）アレクセオ・コーポレーションが，統合かつ／または搭載工程の要求を満たし，要求以上のことをすることを可能にするための開発資金援助をすると，不実表示を行い，かつそれを怠ったこと、（g）統合工程の要求を満たすための追加のソフトウェア開発者を雇用し，財政的支援するという不実表示を行ったこと。（h）POSの株式買取スケジュールで記されている総収入と営業純利益目標を達成し，かつそれを超えるために誠意を尽くし，最善を尽くしていると不実表示を行ったこと。

103．普通株主が，自分たちに不利になるような不実表示を信用したことは，無理のないところである。とりわけ，以下の行動によって，不利益が生じることになる（a）POSを締結すること，（b）POSの株式買取スケジュールで示された総収入と営業純利益目標を認めること，（c）三田とウィンがアレクセオ・コーポレーションの取締役員に任命されることを認めること，(d)JCIグループの技術と製品を開発し，資金を提供す

37

H0009005.1

るために，時間，金，人的財産を投じること，（e）さもなければ，JCIグループと事業提携を求めることを選択すること。


104．JCIグループ，三田，ウィンが普通株主に不実表示を行ったとき，彼らは，約束したことを実行する意図はなく，普通株主をだますつもりであった。


105．以上の重大な不実表示の結果，普通株主は，相当の財政的損害を被り，被り続けるであろう。以上の理由から，普通株主は，普通株主を支持して，かつJCIグループ，三田，ウィンに不利に働くように，事実認定を行うものが定める裁判を，裁判所が登録することを謹んで要請する。そして，補償的・懲罰的損害賠償，利子，費用，経費，妥当な弁護士費用，その他事実認定を行うものが適切とみなすその他のあらゆるものを請求する。


## 請求事由 8　詐欺的な不実表示

### （被告　JCIグループ，三田，ウィン，アレクセオ・コーポレーション）

106．普通株主は，本訴状パラグラフ 1 から 105 に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

H0009005.1

107. JCI グループ，三田，ウィンは，故意に，無責任に，過失でかつ／または罪の意識なく，2005 年 4 月から現在に至る事業提携をしている間，上記パラグラフ 25 から 70 に記載されているような（ただし，それだけに限らない）特定の重要な事実について，普通株主に不実表示を行った。それには以下も含まれる。(a) アメリカで，JCI のセキュリティ，ソリューション，ネットワークコミュニケーションビジネスを支援し，成長させ，拡大させること、(b) ベルサウス，ウェステル，ネットピアは，アレクセオ・コーポレーションの技術と製品を統合し搭載するという約束をし，要求されていたこと、(c) ベルサウス，ウェステル，ネットピアからもたらされるであろう需要，売上，収益は相当なものであること、(d) ベルサウスが，DSL モデムとゲートウェイのビジネス商品の製造供給元に，アレクセオ・コーポレーションの技術と製品を搭載するよう要求したこと、(e) 統合かつ／または搭載工程のために，あらゆる手段を講じたこと、(f) アレクセオ・コーポレーションが，統合かつ／または搭載工程の要求を満たし，要求以上のことをすることを可能にするための資金を提供すること、(g) 統合工程の要求を満たすための追加のソフトウェア開発者を雇用し，財政支援すること、

(h) POS の株式買取スケジュールに記載されている総収入と営業純利益目標を達成し，それを超えるための誠意を尽くし，最善の努力を尽くしたこと、(i) 追加的な財政支援や人材がない状態で，JCI グループの製品に，アレクセオ・コーポレーションの技術と製品を統合しかつ／または搭載することは，直ちには求められていなかったこと、

(k) アレクセオ・コーポレーションの企業機会，売上，収益を流用することなく，自らの利益とアレクセオ・ジャパンの利益のために，アレクセオ・コーポレーションの資産と資金を費消しないこと、(l) JCI グループの事業の方向性の違いに沿うように，

39

POSと株式買取スケジュールの見直しをすること。（m）POSと株式買取スケジュールの見直し，アレクセオ・コーポレーションの資金援助，アレクセオ・コーポレーションと普通株主にとってその他の重要な議題について，議論しかつ/または議決すること、（n）アレクセオ・コーポレーションはJCIグループにとって，戦略上重要であるとしたこと。

108．普通株主が，自分たちに不利になるような不実表示を信用したことは，無理のないところである。とりわけ，以下の行動によって，不利益が生じることになる（a）POSを締結すること，（b）POSの株式買取スケジュールで示された総収入と営業純利益目標を認めること，（c）三田とウィンがアレクセオ・コーポレーションの取締役員に任命されることを認めること，(d)JCIグループの技術と製品を開発し，資金を提供するために，時間，金，人的財産を投じること，（e）さもなければ，JCIグループと事業提携を求めることを選択すること。

109．以上の重大な不実表示の結果，普通株主は，相当の財政的損害を被り，被り続けるであろう。以上の理由から，普通株主は，普通株主を支持して，かつJCIグループ，三田，ウィンに不利に働くように，事実認定を行うものが定める裁判を，裁判所が登録することを謹んで要請する。そして，補償的・懲罰的損害賠償，利子，費用，経費，妥当な弁護士費用，その他事実認定を行うものが適切とみなすその他のあらゆるものを請求する。

H0009005.1

**請求事由9　詐欺的隠ぺい**

**（被告　JCI グループ，三田，ウィン，アレクセオ・コーポレーション）**

110. 普通株主は，本訴状パラグラフ1から109に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

111. JCI グループ，三田，ウィンは，2005年4月から現在に至るまでの事業提携をしている間に，普通株主に関する特定の重大な情報を開示する義務があった。上記の重大な情報には，上記パラグラフ25から70に記載されているような行為も含まれる（ただし，それだけに限らない）。隠ぺいされた事実には，以下のものが含まれる。（a）JCI グループが，短期間の間に，アメリカで，セキュリティ，ソリューション，ネットワークコミュニケーションビジネスを支援し，成長させ，拡大させるという意思に関して不実表示を行い，それを怠ったこと，（b）ベルサウス，ウェステル，ネットピアは，アレクセオ・コーポレーションの技術と製品を統合する約束をせず，それを求められてもいなかったこと，（c）ベルサウス，ウェステル，ネットピアからもたらされるであろう需要，売上，収益は相当なものになること，（d）ベルサウスが，DSLモデムとゲートウェイのビジネス商品の製造供給元に，アレクセオ・コーポレーションの技術と製品を搭載するように求めなかったこと，（e）統合かつ／または搭載工程のために，あらゆる手段を講じなかったこと，（f）アレクセオ・コーポレーションが，統合かつ／または搭載工程の要求を満たし，要求以上のことをすることを可能にするための開発資金

援助をしなかったこと，（g）統合工程の要求を満たすための追加のソフトウェア開発者を雇用せず，財政的支援はしなかったこと，（h）POS の株式買取スケジュールで記されている総収入と営業純利益目標を達成し，かつそれを超えるための誠意を尽くしておらず，最善を尽くしていなかったこと，（i）アレクセオ・コーポレーションと普通株主が不利益を被る形で，アレクセオ・コーポレーションに対して，JCI グループとアレクセオ・ジャパンの製品に，アレクセオ・コーポレーションの技術と製品を統合しかつ/または統合するよう要求したこと，（j）アレクセオ・コーポレーションと普通株主に，売上と収益をもたらすような短期的な目標を持たなかったこと，（k）アレクセオ・コーポレーションの会社の機会，資産，売上，収益を流用し，JCI グループとアレクセオ・ジャパンの利益のために，アレクセオ・コーポレーションと普通株主の会社の資産と資金を費消したこと，（l）POS と株式買取スケジュールが，JCI グループが事業の方向性を変えたことに沿うように見直しされなかったこと，（m）POS と株式買取スケジュールの見直し，アレクセオ・コーポレーションの資金援助，アレクセオ・コーポレーションと普通株主にとって重要なその他の事案を，議論せずかつ／または議決しなかったこと，（n）アレクセオ・コーポレーションは JCI グループにとって，もはや戦略上重要でないとしたこと。

112. JCI グループ，三田，ウィンは，これらの事実を認識しており、故意に，無責任に，過失でかつ／または罪の意識なく，普通株主に，これらを隠ぺいし，あるいは開示することを怠った。

42

113．JCI グループ，三田，ウィンが，前述の重大な事実を隠ぺいしあるいは開示しな
かったために，普通株主は，対応策をとることができず，また，対応策をとることを妨
げられた。そのほかのこととしては，隠ぺいによって普通株主は，以下のことを行うこ
ととなった。（a）POS を締結すること，（b）POS の株式買取スケジュールで示され
た総収入と営業純利益目標を認めること，（c）三田とウィンがアレクセオ・コーポレ
ーションの取締役員に任命されることを認めること，(d)JCI グループの技術と製品を開
発し，資金を提供するために，時間，金，人的財産を投じること，（e）さもなければ，
JCI グループと事業提携を求めることを選択すること。


114．JCI グループ，三田，ウィンが上記に記載された重大な事実を開示しなかった結
果，普通株主は，相当の財政的損害を被った。以上の理由から，普通株主は，普通株主
を支持し，かつ JCI グループ，三田，ウィン，アレクセオ・コーポレーションに不利に
働くように，事実認定を行うものが定める裁判を，裁判所が登録することを謹んで要請
する。そして，補償的・懲罰的損害賠償，利子，費用，経費，妥当な弁護士費用，その
他事実認定を行うものが適切とみなすその他のあらゆるものを請求する。


## 請求事由 10　信任義務違反

### （被告　JCI，三田，ウィン，アレクセオ・コーポレーション）

H0009005.1

115. 普通株主は，本訴状パラグラフ1から114に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

116. JCIは，アレクセオ・コーポレーションの多数株主として，三田とウィンは，アレクセオ・コーポレーションの取締役会のメンバーとして，普通株主に対して信認義務を負っていた。

117. とりわけ，JCI，三田，ウィンは，不法行為あるいは違法行為をしないこと求める信認義務を負っており，誠実義務，忠実義務，注意義務を含む（ただしそれだけに限らない）準拠法に従って，株主，会社の取締役に課せられたその他の信認義務，責任を負っていた。

118. JCI，三田，ウィンは，信認義務を破り，とりわけ上記パラグラフ25から68に記載されている行為によって，不正行為かつ／または不法行為を犯した。その中には，以下が含まれる。（a）JCIグループが，アメリカで，セキュリティ，ソリューション，ネットワークコミュニケーションビジネスを支援し，成長させ，拡大させることに関する重大な事実について不実表示を行い，それを怠ったこと、（b）ベルサウス，ウェステル，ネットピアは，アレクセオ・コーポレーションの技術と製品を統合する約束をし，それを求められていた，という不実表示を行ったこと、（c）ベルサウス，ウェステル，ネットピアからもたらされるであろう需要，売上，収益は相当なものになると確約した

こと、（d）ベルサウスが，DSL モデムとゲートウェイのビジネス商品の製造供給元に，アレクセオ・コーポレーションの技術と製品を搭載するように求めたという不実表示を行ったこと、（e）統合かつ／または搭載工程のために，あらゆる手段を講じているという不実表示を行ったこと。（f）アレクセオ・コーポレーションが，統合かつ／または搭載工程の要求を満たし，要求以上のことをすることを可能にするための開発資金援助をするという不実表示を行い，かつそれを怠ったこと、（g）統合かつ/または搭載工程の要求を満たすための追加のソフトウェア開発者を雇用し，支援するという不実表示を行ったこと、（h）アレクセオ・コーポレーションと普通株主が，POS を締結するよう誘導するための重要な事実に関して不実表示を行い，かつ／または隠したこと、

（i）普通株主が，株式買取スケジュールを受け入れるよう誘導するための重要な事実に関して不実表示を行い，かつ／または隠したこと、（j）アレクセオ・コーポレーションと普通株主が不利益を被る形で，アレクセオ・コーポレーションに対して，JCI グループの製品に，アレクセオ・コーポレーションの技術と製品を統合しかつ/または統合するよう要求したこと、（k）アレクセオ・コーポレーションと普通株主に，売上と収益をもたらすような短期的な予測をせずに，長期の売上と収益の予測を設定したこと、（l）アレクセオ・コーポレーションの会社の機会，資産，売上，収益を流用し，JCI グループとアレクセオ・ジャパンの利益のために，アレクセオ・コーポレーションと普通株主の会社の資産と資金を費消したこと、（m）JCI グループとアレクセオ・コーポレーションの全体的な事業の方向性に関して不実表示を行い，変更したこと、（n）アレクセオ・コーポレーションと普通株主が，POS と株式買取スケジュールで定められた総収入と営業利益を達成することを妨げたこと、（o）POS と株式買取スケジュールの

45

見直し，アレクセオ・コーポレーションの資金援助，アレクセオ・コーポレーションと普通株主にとって重要なその他の事案を，議論せずかつ/または議決せずかつ／または拒否したこと，（p）アレクセオ・コーポレーションが事業を継続するために，同社に600,000ドル以上の融資を受けることを強要したこと，（q）アレクセオ・コーポレーションはJCIグループにとって，もはや戦略上重要でないことを示したこと。

119．JCIグループ，三田，ウィンの作為かつ/または不作為の結果，普通株主は，相当の財政的損害を被り，今後も被ることになろう。

120．JCI,三田，ウィンの財政的または信認責任を含む信認義務違反は，度を超したものであり，三田とウィンは，アレクセオ・コーポレーションの取締役を含むアレクセオ・コーポレーションのあらゆる地位にとどまることを許るべきではない。以上の理由から，普通株主は，普通株主を支持して，かつJCIグループ，三田，ウィンに不利に働くように，事実認定を行うもが定める裁判を，裁判所が登録することを謹んで要請する。そして，補償的・懲罰的損害賠償，利子，費用，経費，妥当な弁護士費用，その他事実認定を行うものが適切とみなすその他のあらゆるものを請求する。加えて，普通株主は，三田とウィンをアレクセオ・コーポレーションの取締役会のメンバーから除外し，三田とウィンがアレクセオ・コーポレーションに対して支配権を行使，監視，権力を行使することを不可能ならしめることを要請する。

### 請求事由11　契約不履行

（被告　JCI，アレクセオ・コーポレーション）

121．普通株主は，本訴状パラグラフ1から120に記されている主張が，訴状全体の中のこの個所にあるものと仮定し，それらを採用しならびに参照することによって援用する。

122．POSに従い，JCIは，普通株主に，POSと株式買取スケジュールの条件に沿った金額を払うことを合意した。

123．JCIはPOSを破り，とりわけPOSに記されている株式買取スケジュールの期日の間に，総収入と営業純利益をもたらすための誠意を尽くさず，最善を尽くさなかった。

124．普通株主は，POSのもとで，義務を完全に果たし，JCIの不履行の結果，相当の財政的損害を被っている。以上の理由から，普通株主は，普通株主を支持して，かつJCIグループ，三田，ウィンに不利に働くように，事実認定を行うもが定める裁判を，裁判所が登録することを謹んで要請する。そして，補償的・懲罰的損害賠償，利子，費用，経費，妥当な弁護士費用，その他事実認定を行うものが適切とみなすその他のあらゆるものを請求する。

H0009005.1

## 陪審要求

普通株主は，JCI に対する契約違反に対する個別の請求，および JCI とアレクセオ・コーポレーションに対する契約違反に対する派生的請求を除いた，本訴状で述べられているあらゆる主張，かつ次の修正文書の中で述べられる可能性のある主張に関して，特別陪審を要求する。

2007 年 12 月 6 日謹んで提出した。

ダグラス　B　ハーゲットの署名

G　バートレー　ロフティン，Ⅲ（LOF009）

ダグラス　B　ハーゲット（HAR278）

**メイナード，クーパー＆ゲイル，P.C.**

655 ギャラティンストリート，S．W

ハンツヴィル，アラバマ州 35081

電話　(256) 512-0171

FAX　(256) 512-0119

48

W　パーシー　バドハム，Ⅲ(BAD002)

ウィル　A　スミス（SMI284）

**メイナード，クーパー＆ゲイル，P.C.**

2400　アムサウス／ハーベートプラザ

1901　北6アベニュー

バーミンガム，アラバマ 35203

電話　(205) 254-1000

FAX　(205) 254-1999

送達は，以下の被告に対して行われる。


**ジャパン・コミュニケーションズ・インクという名で事業を行っている日本通信株式会社**

三田フランク聖二気付

〒140-0013　日本国東京都品川区南大井 6-25-3


**三田フランク聖二**

〒108-0074　日本国東京都港区高輪 4-5-12


**コンピューター・アンド・コミュニケーションズ・テクノロジーズ・インク**

コーポレーション・トラスト・カンパニー気付—登録代理人

コーポレーショントラストセンター

1209　オレンジストリート

ウィルミントン　デラウェア州　19808

## 証　明

　ＲＮＲベンチャーズ・エルエルシーの経営メンバーを務めるチャールズ・Ｆ・ロフティは、まず適正に宣誓した上、自ら前掲訴状を読みその内容を知っていること、これが情報及び確信に基づく問題及び事象を除いて自らの知る限り真実であること、かつ、そうした問題及び事象については自ら真実であると信じていることを証言し供述した。

２００７年１２月５日

＜自署＞

２００７年１２月５日に小職の面前で宣誓供述された。

＜公証人署名＞
公証人
資格期限：２０１１年４月 25 日

＜公証人捺印＞

51

証　明

アンガス・アデアー・ウォルフギャング・インクの社長を務めるデビッド・A・イザットは、まず適正に宣誓した上、自ら前掲訴状を読みその内容を知っていること、これが情報及び確信に基づく問題及び事象を除いて自らの知る限り真実であること、かつ、そうした問題及び事象については自ら真実であると信じていることを証言し供述した。

２００７年１１月２９日

＜自署＞

２００７年１１月２９日に小職の面前で宣誓供述された。

＜公証人署名＞
公証人
資格期限：■年■月■日

＜公証人捺印＞

<u>証　明</u>

　ドナルド・J・デビッドソンは、まず適正に宣誓した上、自ら前掲訴状を読みその内容を知っていること、これが情報及び確信に基づく問題及び事象を除いて自らの知る限り真実であること、かつ、そうした問題及び事象については自ら真実であると信じていることを証言し供述した。

２００７年１１月２９日

＜自署＞

２００７年１１月２９日に小職の面前で宣誓供述された。

＜公証人署名＞
公証人
資格期限：２０１１年５月１６日

＜公証人捺印＞

H0009005.1

## 証　明

　J・チャンドラー・ホールは、まず適正に宣誓した上、自ら前掲訴状を読みその内容を知っていること、これが情報及び確信に基づく問題及び事象を除いて自らの知る限り真実であること、かつ、そうした問題及び事象については自ら真実であると信じていることを証言し供述した。

２００７年１１月２９日

＜自署＞

２００７年１１月２９日に小職の面前で宣誓供述された。

＜公証人署名＞
公証人
資格期限：■年■月■日

＜公証人捺印＞

H0009005.1

Exhibit "D"

JCI Return Receipt in English and Japanese

## Return Receipt of Registered/Certified Mail (Customer Copy)

| Sender Name and Address: Kobayashi , Attorney<br>Tokyo Aoyama Aoki Koma Law Office<br>2-13-10 Nagatacho, Prudential Tower , Chiyoda-Ku, Tokyo  100-0014 | | | | |
|---|---|---|---|---|
| Name of Recipient | Receipt No. | Postage | Amount of Compensation Requested | Type |
| Nihon Tsushin Kabushiki Kaisha, Mita | 505-07-05318-1 | 600 yen | | |
| | | | | |
| | | | (Stamp) Certified | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Post office (stamp)

Date: 19-12-18  (December 18, 2007)

Note: It is important to retain this receipt which is necessary when requesting compensation for loss and in other instances.  For compensation through simple registered mail, the amount of damages should be the actual amount but less than 50,000 yen.

Type column (input following  code): Kan (simple), Kiro (Registered Mail), Soku (Urgent), Hai (Certified Mail), Nai (Certification of Contents, Toku (Special Delivery) , Dai (Payable on Receipt), Ji (Certification of Time of Receipt), shite (Specified delivery date)

Call toll free 0120-232886 for information on delivery. Internet: http://www.post.japanpost.jp

書留・配達記録郵便物受領証（お客様控）

| （差出人の住所氏名）　〒　東京都千代田区永田町 | | | | | |
| 東京青山書木伯 | | | | | 様 |
| 法律事務所　　弁護士　小林貴人 | | | | | |
| 受取人の氏名 | 引受番号 | 郵便料 | 申出損害要償額 | 摘　　要 | |
| 1　日本電気株式会社 | 505-00 05318-1 | 6 | | | |
| 2　　　　　　　様 | | | | | |
| 3　　　　　　　様 | | | | | |
| 4　　　　　　　様 | | | | | |
| 5　　　　　　　様 | | | | | |
| 6　　　　　　　様 | | | | | |
| 7　　　　　　　様 | | | | | |
| 8　　　　　　　様 | | | | | |
| 9　　　　　　　様 | | | | | |
| 10　　　　　　様 | | | | | |

ご注意　この受領証は、損害賠償の請求をするときその他
の場合に必要ですから大切に保存してください。
簡易書留の損害賠償額は、原則として5万円を限
度とする実損額です。

摘要欄：カン（簡易）、キロ（記速記局）、ソク（速達）、ハイ（配達証明）
の記号　ナイ（内容証明）、トタ（特別送達）、ダイ（代金引換）
　　　　ジ（引受時刻証明）、レテ（配達日指定）

配達状況がわかります。フリーダイヤル 0120-232886
インターネット http://www.post.japanpost.jp

Sanda Return Receipt in English and Japanese

## Return Receipt of Registered/Certified Mail (Customer Copy)

Sender Name and Address:  Kobayashi , Attorney
Tokyo Aoyama  Aoki Koma Law Office
2-13-10  Nagatacho, Prudential Tower ,  Chiyoda-Ku,  Tokyo    100-0014

| Name of Recipient | Receipt No. | Postage | Amount of Compensation Requested | Type |
|---|---|---|---|---|
| Mita | 505-07-05319-1 | 600 yen | | |
| | | | | |
| | | | | |
| | | | (Stamp) Certified | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Post office (stamp)

Date: 19-12-18  (December 18, 2007)

Note:  It is important to retain this receipt which is necessary when requesting compensation for loss and in other instances.  For compensation through simple registered mail, the amount of damages should be the actual amount but less than 50,000 yen.

Type column (input following  code):  Kan (simple), Kiro (Registered Mail), Soku (Urgent), Hai (Certified Mail), Nai (Certification of Contents, Toku (Special Delivery) , Dai (Payable on Receipt), Ji (Certification of Time of Receipt), shite (Specified delivery date)

Call toll free 0120-232886 for information on delivery. Internet: http://www.post.japanpost.jp

書留・配達記録郵便物受領証（お客様控）

| （差出人の住所氏名）〒100-0014　東京都千代田区永田町2-13-10　プルデンシャルタワー　東京青山青木狛法律事務所　弁護士　小林秀之 | | | | | 様 |
|---|---|---|---|---|---|
| 受取人の氏名 | 引受番号 | 郵便料 | 申出損害要償額 | 摘 | 要 |
| 1　　　　　様 | ○○○○ | 6○○ | | | |
| 2　　　　　様 | | | | | |
| 3　　　　　様 | | | | | |
| 4　　　　　様 | | | | | |
| 5　　　　　様 | | | | | |
| 6　　　　　様 | | | | | |
| 7　　　　　様 | | | | | |
| 8　　　　　様 | | | | | |
| 9　　　　　様 | | | | | |
| 10　　　　　様 | | | | | |

ご注意　この受領証は、損害賠償の請求をするとその他
の場合に必要ですから大切に保存してください。
簡易書留の損害賠償額は、原則として5万円を限
度とする実損額です。

摘要欄：カン（簡易）、キロ（配達記録）、ソタ（速達）、ハイ（配達証明）
の記号　ナイ（内容証明）、トタ（特別送達）、ダイ（代金引換）
ジ（引受時刻証明）、シテ（配達日指定）

配達状況がわかります。フリーダイヤル 0120-232886
インターネット http://www.post.japanpost.jp

19.12.13
13~18　　　郵便局

# Exhibit "E"

Notice of Service of JCI in English and Japanese

# CONSULATE GENERAL OF JAPAN

ONE ALLIANCE CENTER
3500 LENOX ROAD, SUITE 1600
ATLANTA, GEORGIA 30326

404/240-4300

Ref. C/10/08                                                    April 25 , 2008

Douglas B. Hargett, Esq.
Maynard, Cooper & Gale, P.C.
655 Gallatin St., S.W.
Huntsville, AL 35801

Subject:   Certificate of Delivery for your legal documents
           Re: Nihon Tsushin Kabushiki Kaisha ( Japan Communications, Inc. )

Dear Mr. Hargett:

In accordance with instructions from the Ministry of Foreign Affairs in Japan,
we are herewith forwarding the above-mentioned documents to you by
Registered Mail, number RB 737 178 575 US.

Thank you for your attention to this matter.

Sincerely,

Shinichi Fujiwara
Consul

Encl.

| Notification of Service by Mail<br>(for residence or domicile) | Date<br>sent | February 22, 2008 |
|---|---|---|

| Case No. | 2008 (E) 21 | |

| Documents<br>served | Title of Documents | | 1.  Summary<br>2.  Summons<br>3.  First amended complaint<br>4.  Translation for No.2 and No. 3 |
|---|---|---|---|
| | Sender | Address | Zip Code: 100-8920<br>1-1-4 Kasumigaseki. Chiyoda-ku, Tokyo |
| | | Name | Tokyo District Court, Civil Affairs Sec. 16 |
| | Name of<br>person/entity to be<br>served | | Nihon Tsushin Kabushiki Kaisha (Japan Communications, Inc.) |

| Signature or stamp of person<br>receiving | (stamp) Mori |
|---|---|
| Address of service | Zip code:  140-0013<br>6-25-3 Minami Ooi, Shinagawa-ku, Tokyo     (handwritten) |
| Date and time of service | February 25, 2008   3pm |

| Method of<br>service | 1 | Served to person  named as recipient of service |
|---|---|---|
| | ②(circled) | Since person named to receive service was unavailable, delivered to the following person who was deemed to be capable of receiving it. |
| | | A :  Worker/ (Employee)(circled)    B:  Person at same household/location<br>                            (Name:  Mori, Yu (hand written)) |
| | 3 | Following person refused to accept without sufficient reason so service documents left at that location. |
| | | A: Person named to be served.   B: Worker/Employee    C: Person  at same household/location.<br>                            (Name:                                           ) |
| | 4 | If served at place of business, given to the following person deemed to be capable of receiving it. |
| | | A: Worker/Employee    B:  Person at same household/location.<br>                            (Name:                                           ) |

Service was completed as stated above.     Date: February 25, 2008
(Office)                                         Person responsible  for service
Ⓐ Postal Operations  (Inc.) Shinagawa   (Branch)(circled)

B: Post Office  (Inc.)                 Office     NAME :  SATO

| I certify that documents named above were correctly served as were all items relating to the<br>service noted herein.                    Date: February 25, 2008<br>                                         Certified postal stamp<br><br>(Office)<br>Ⓐ Postal Branch  (Inc.)            (Branch)(circled)<br><br>B: Post Office  (Inc.)  Shinagawa  Office       NAME:  TOMIYAMA<br>Official stamp | Completed<br>by Sender<br>(stamp) Tokyo<br>District Court,<br>Civil Affairs. Sec.<br>16 Date:<br>2/26/08 |
|---|---|

Certified Translation

(Directions for form)

1.   If the person receiving cannot provide an official stamp or signature, please write this in the line for "Signature or official stamp of receiving person."

2.   Please include full address including house number in "Address of service." However, if delivered to the front desk of a place of business, write "front desk" in this line.

3.   When expressing the date in the "Date and time of service," make sure units less than ten are in the far right box. Also express time in military time.

4.   When selecting the "Method of service", do the following:

    (1) Circle appropriate number for 1-4 .

    (2) If the appropriate response is 2, 3,  or 4, circle the next appropriate response and write name of person in the blank.  If the person accepting is also person named in service, do not write the name here.

5.   Circle the postal office or branch delivering service, write location and name.

I hereby certify that, to the best of our knowledge and ability, this is a true and accurate translation of the original document translated from Japanese to English by FLS, Inc., a professional translation bureau located at 3609-A5 Memorial Pkwy, SW, Huntsville, Alabama.

Notary, Co. of Madison, State of Alabama          Judith H. Smith, Director

My commission expires:  04/14/12                  Date:  05/09/08

Attestation part 1  (Translation follows appropriate  section)

1) that the document has been served *
1) que la demande a été exécutée
    -- the (date) -- le (date) _____ 平成 20 年 2 月 25 日_____
    -- at (place, street, number) - à (localité, rue, numéro)

Translation of characters:  February 25, 2008

東京都 (千代田区) 品川区 南大井 6 - 25 - 3    日本通信株式会社

Translation of characters:

    Nihon Tsushin Kabushiki Kaisha (Japan Communications, Inc.)

    6-25-3 Minami Oi, Shinagawa-ku, Tokyo

    Nihon Tsushin Kabushiki Kaisha (Inc.)

The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à:

    - (identity and description of person)
    - (identité et qualité de la personne)
    _____ 森 ゆう _____

Translation of characters:    Mori, Yu

    - relationship to the addressee family, business or other
    - liens de parenté de subordination ou autres avec le destinataire de l'acte:
    _____ 日本通信株式会社 従業者 _____

Translation of characters: Employee of Nihon Tsushin Kabushiki Kaisha (Japan Communications, Inc.)

Certified Translation

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

郵便送達報告書

Done at 東京都 , the 200 Y. 2. 27
*Fait à* , *le*

Signature and/or stamp
*Signature et/ou cachet*
東京地方裁判所民事第 16 部
裁判所書記官 高 橋 由 貴

Translation of characters:

Done at  Tokyo  on  February 27, 2008

Notification of service by mail

Signature and/or stamp:  Tokyo District Court, Civil Affairs Dept. 16

Official Court Recorder:  Takahashi, Yuki  (stamp)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Attestation 2

Jihon Tsushin Kabushiki Kaisha d/b/a Japan Communications, Inc.,

Attention: Frank Seiji Sanda, 6-25-3 Minami-ohi, Shinagawa-ku, 140-0013 Tokyo, JAPAN

Translation of characters:        Omori

I hereby certify that, to the best of our knowledge and ability, this is a true and accurate translation of the original document sections translated from Japanese to English by FLS, Inc., a professional translation bureau located at 3609-A5 Memorial Pkwy, SW, Huntsville, Alabama.

Notary, Co. of Madison, State of Alabama

My commission expires:  04/14/12

Judith H. Smith, Director

Date:  05/09/08



U.S. Department of Justice
United States Marshals Service

# REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou*
*extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant*<br><br>Douglas B. Hargett, Licensed Attorney<br>Maynard, Cooper, & Gale, P.C.<br>655 Gallatin Street, S.W.<br>Huntsville, Alabama (USA) 35801 | Address of receiving authority<br>*Adresse de l'autorité destinataire*<br><br>The Minister of Foreign Affairs<br>2-2-1 Kasumigaseki, Chyoda-ku<br>100-8919 Tokyo, JAPAN |
|---|---|

The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity
with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)
*Le requérant soussignée a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous*
*énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au*
*destinataire, à savoir:*
*(identité et adresse)*

Nihon Tsushin Kabushiki Kaisha d/b/a Japan Communications, Inc.,
Attention: Frank Seiji Sanda, 6-25-3 Minami-ohi, Shinagawa-ku, 140-0013 Tokyo, JAPAN

[X] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
*a) selon les formes légales (article 5 alinéa premier, lettre a).*

[ ] (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
*b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

[ ] (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
*c) le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes
with a certificate as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec*
*l'attestation figurant au verso.*

List of documents
*Enumération des pièces*

First Amended Complaint
Alias Summons - Civil

Done at Huntsville, Alabama, the 5th. day of Dece...
*Fait à* _____, *le* _____ 2007

Signature and/or stamp
*Signature et/ou cachet*

*Douglas B. Hargett*

*Delete if inappropriate
Rayer les mentions inutiles.

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)

1759
7トラン
①

# CERTIFICATE
*ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
1) *que la demande a été exécutée*
     -- the (date) - *le (date)* _____ 平成 20 年 2 月 25 日
     -- at (place, street, number) - *à (localité, rue, numéro)*
       東京都(千代田区) 品川区 南大井 6 - 25 - 3  日本通信株式会社

     -- in one of the following methods authorized by article 5:
     -- *dans une des formes suivantes prévues à l'article 5:*

       ☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
         a) *selon les formes légales (article 5, alinéa premier, lettre a)*

       ☐ (b) in accordance with the following particular method:
         b) *selon la forme particulière suivante:*

       ☐ (c) by delivery to the addressee, who accepted it voluntarily.*
         c) *par remise simple.*

     The documents referred to in the request have been delivered to:
     *Les documents mentionnés dans la demande ont été remis à:*

       - (identity and description of person)
       - *(Identité et qualité de la personne)*

       森 ゆり

       - relationship to the addressee family, business or other
       - *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

       日本通信株式会社 従業者

     2) that the document has not been served, by reason of the following facts*:
     2) *que la demande n'a pas été exécutée, en raison des faits suivants:*

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*.
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pièces renvoyées*

_____
_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

郵便送達報告書

                             Done at   東京都  , the 2008. 2. 27
                             *Fait à*                    , *le*

                             Signature and/or stamp
                             *Signature et/ou cachet*

                             東京地方裁判所執行官第 16 部
                             裁判所書記官   高 橋 由 貫

(840111) A - 2

| 郵 便 送 達 報 告 書<br>(住 所 ， 居 所 等 用) | 発送<br>年月日 | 平成 20 年 2 月 22 日 |
|---|---|---|

| 事件<br>番号 | 平成 20 年 (ワ) 第 21 号 | | |
|---|---|---|---|
| 送<br><br>達<br><br>書<br><br>類 | 書類の名称 | 1. 文書の要領 (SUMMARY)<br>2. 召喚状<br>3. 第1修正訴状<br>4. 2及び3の訳文 | |
| | 差<br>出<br>人 | 所在地 | 郵便番号 100-8920<br>東京都千代田区霞が関1丁目1番4号 |
| | | 名 称 | 東京地方裁判所民事第**16**部 |
| | 受送達者<br>本人氏名 | | 日本通信 株式会社 |

| 受領者の押<br>印又は署名 | |
|---|---|
| 送達の場所 | 郵便番号 140-0013<br>東京都品川区南大井 6-25-3 |
| 送達年月日時 | 平成 20 年 2 月 25 15 時 |

| 送<br><br>達<br><br>方<br><br>法 | 1 | 受送達者本人に渡した。 |
|---|---|---|
| | 2 | 受送達者本人に出会わなかったので、書類の受領について相当のわきまえ<br>があると認められる次の者に渡した。<br>ア 使用人・従業者 イ 同居者<br>(氏名: 森ゆう        ) |
| | 3 | 次の者が正当な理由なく受取りを拒んだので、その場に差し置いた。<br>ア 受送達者本人 イ 使用人・従業者 ウ 同居者<br>(氏名:          ) |
| | 4 | 営業所に出向いた書類の受領について相当のわきまえがあると認められる次の者に渡した。<br>ア 使用人・従業者 イ 同居者<br>(氏名:          ) |

上記のとおり送達しました。   平成 20年 2月 25日
                配達担当者
(所属)
ア 郵便事業(株) 品川         佐藤 祥哉  ㊞
イ 郵便局(株)     郵便局

上記送達に係る郵便物が適正に送達されたこと及びその送達に関す
る事項が適正に記載されていることを確認しました。
                平成 20 年 2 月 25 日
                郵便認証司
(所属)
ア 郵便事業(株) 品川         冨山幸   ㊞
イ 郵便局(株)     郵便局

注<br>意

1 受領者が押印又は署名をすることができないときは、「受領者の押印又は署名」欄にその旨を記入すること。
2 差出人の所在地、市町村名から住居番号等まで詳細明確に記入すること。ただし、営業所の窓口において受付したときは、「窓口」との旨を記入すること。
3 「送達年月日時」欄の年月日時のいずれかの数字が1桁のときは、枠内右初めから記入すること。時刻は24時制で記入すること。
4 「送達方法」欄は、次により記入すること。
  (1) 「1」、「2」、「3」及び「4」の欄については、該当する数字ひとつを「○」で囲む。
  (2) 「2」、「3」及び「4」を「○」で囲んだ場合は、さらに該当するものを「○」で囲み、その氏名を記入する。ただし、受送達者本人であるときは、その氏名を記入しない。
5 配達担当者及び郵便認証司の「所属」欄は該当するものを「○」で囲み、その名称を記入すること。

(東京地方裁判所印 20.2.26 受付 民事第16部)

# Exhibit "F"

Notice of Service on Sanda in English and Japanese

## CONSULATE GENERAL OF JAPAN
ONE ALLIANCE CENTER
3500 LENOX ROAD, SUITE 1600
ATLANTA, GEORGIA 30326

404/240-4300

Ref. C/11/08                                                April 30,   2008

Douglas B. Hargett, Esq.

Maynard, Cooper & Gale, P.C.

655 Gallatin St., S.W.

Huntsville, AL 35801

Subject:   Certificate of Delivery for your legal documents
           Re:   Mr. Frank Seiji Sanda

Dear Mr. Hargett:

In accordance with instructions from the Ministry of Foreign Affairs in Japan,
we are herewith forwarding the above-mentioned documents to you by
Registered Mail, number RB 737 178 589 US.

Thank you for your attention to this matter.


                                   Sincerely,




                                   Shinichi Fujiwara
                                   Consul



Encl.

Civil Affairs Section 17, Court Clerk,

Ogawa

(8401111)A-

| Notification of Service by Mail (for residence or domicile) | | Date sent | February 28, 2008 |
|---|---|---|---|

| Case No. | | 2008 (D) 22 | |
|---|---|---|---|

| Documents served | Title of Documents | | 1. Summary 2. Summons 3. First amended complaint 4. Translation for No.2 and No. 3 |
| | Sender | Address | Zip Code: 100-8920 1-1-4 Kasumigaseki, Chiyoda-ku, Tokyo |
| | | Name | Tokyo District Court, Civil Affairs Sec. 17 |
| | Name of person/entity to be served | | **FRANK SEIJI SANDA** |

| Signature or stamp of person receiving | Jacinte Sanda |
|---|---|
| Address of service | Zip code: 108-0074 4-5-12 Takanawa, Minato-ku, Tokyo    (handwritten) |
| Date and time of service | February 29, 2008  3pm |

| Method of service | 1 | Served to person  named as recipient of service |
|---|---|---|
| | 2 | Since person named to receive service was unavailable, delivered to the following person who was deemed to be capable of receiving it. A. Worker/Employee  B. Person at same household/location (Name:  Jushinda Sanda) |
| | 3 | Following person refused to accept without sufficient reason so service documents left at that location. A: Person named to be served.  B: Worker/Employee   C: Person  at same household/domicile. (Name:                    ) |
| | 4 | If served at place of business, given to the following person deemed to be capable of receiving it. A: Worker/Employee    B: Person at same household/location. (Name:                    ) |

Service was completed as stated above.    Date: February 29, 2008
(Office)                                Person responsible  for service
A: Postal Operations  (Inc.) Takanawa      Branch

B: Post Office  (Inc.)                Office    Name:  Hoga Yusuke
[stamp]

| I certify that documents named above were correctly served as were all items relating to the service noted herein.                    Date: | Completed by Sender |
|---|---|

| February 29, 2008<br><br>(Office)<br>Ⓐ Postal Branch (Inc.) Takanawa Branch<br><br>B: Post Office (Inc.)                Office | Certified postal stamp<br><br><br>Ito Masahiro<br>[Official stamp] | (stamp) Tokyo District Court, Civil Affairs. Sec. 17  Date: 3/1/08 (appears below box) |
|---|---|---|

(Directions for form)

1.  If the person receiving cannot provide an official stamp or signature, please write this in the line for "Signature or official stamp of receiving person.

2.  Please include  full address including house  number in "Address of service."  However, if delivered to the front desk of a place of business, write "front desk" in this line.

3.  When expressing the date in the "Date and time of service," make sure units less than ten are in the far right box.  Also express time in military time.

4.  When selecting the "Method of service", do the following:

    (1) Circle appropriate number for 1-4 .        handwritten number: 106-39-77124-0

    (2) If the appropriate response is 2, 3,  or 4, circle the next appropriate response and write name of person in the blank.  If the person accepting is also person named in service, do not write the name here.

5.  Circle the postal office or branch delivering service, write location and name.

# Attestation (Translation follows appropriate section)

1) that the document has been served *
1) que la demande a été exécutée
-- the (date) -- le (date)     平成 20年 2月 29日
-- at (place, street, number) - à (localité, rue, numéro)
東京都 港区高輪 4−5−12

in one of the following methods authorized by article 5:

### Translation of characters: Date: February 29, 2008

### At 4-5-12 Takanawa, Minato-ku, Tokyo

The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à:

- (identity and description of person)
- (identité et qualité de la personne)  ジュシンダ゛ サンダ゛

- relationship to the addressee family, business or other
- liens de parenté de subordination ou autres avec le destinataire de l'acte:
同居者

## Translation of characters:

### Identity: Jushinda Sanda

### Relationship to addressee: Same domicile

In appropriate cases, documents establishing the service:
Le cas échéant, les documents justificatifs de l'exécution:
郵便送達報告書

Done at 東京都 , the 2008. 3. 4
Fait à , le

Signature and/or stamp
Signature et/ou cachet
東京地方裁判所 民事第17部 裁判所書記官 小川武喜

## Translation of characters:

## Report of Service by Mail

Done at: Tokyo on the 4th day of March, 2008

Signature/Stamp: Tokyo District Court,



U.S. Department of Justice
United States Marshals Service

## REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| *Identité et adresse du requérant* | *Adresse de l'autorité destinataire* |
| Douglas B. Hargett, Licensed Attorney<br>Maynard, Cooper, & Gale, P.C.<br>655 Gallatin Street, S.W.<br>Huntsville, Alabama (USA) 35801 | The Minister of Foreign Affairs<br>2-2-1 Kasumigaseki, Chyoda-ku<br>Tokyo 100-8919, JAPAN |

**The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,**
**(identity and address)**
*Le requérant soussignée a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir:*
*(identité et adresse)*

Frank Seiji Sanda, 4-5-12 Takanawa, Minato-ku, Tokyo 108-0074, JAPAN

[X] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
*a) selon les formes légales (article 5 alinéa premier, lettre a).*

[ ] (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
*b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

[ ] (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
*c) le cas échéant, par remise simple (article 5, alinéa 2).*

**The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes with a certificate as provided on the reverse side.**
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec l'attestation figurant au verso.*

List of documents
*Enumération des pièces*

First Amended Complaint
Alias Summons - Civil

Done at **Huntsville, Alabama** the 5th. day of December 2007
*Fait à* _____, *le*

Signature and/or stamp
*Signature et/ou cachet*

*[signature: Douglas B Hargett]*

*Delete if inappropriate
Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)

## CERTIFICATE
### ATTESTATION

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
1) *que la demande a été exécutée*
-- the (date) -- *le (date)*    平成 20年 2月 29日
-- at (place, street, number) - *à (localité, rue, numéro)*
   東京都 港区高輪 4-5-12

-- in one of the following methods authorized by article 5:
-- *dans une des formes suivantes prévues à l'article 5:*

   ☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
     a) *selon les formes légales (article 5, alinéa premier, lettre a)*

   ☐ (b) in accordance with the following particular method:
     b) *selon la forme particulière suivante:*

   ☐ (c) by delivery to the addressee, who accepted it voluntarily.*
     c) *par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*
- (identity and description of person)
- *(identité et qualité de la personne)*   ｼﾞｭﾐﾝﾀﾞ ｻﾝﾀﾞ

- relationship to the addressee family, business or other:
- *liens de parenté de subordination ou autres avec le destinataire de l'acte:*   同居者

2) that the document has not been served, by reason of the following facts*:
2) *que la demande n'a pas été exécutée, en raison des faits suivants:*

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pièces renvoyées:*

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*
郵便送達報告書

Done at 東京都     the 2008. 3. 4
*Fait à*       *le*

Signature and/or stamp
*Signature et/ou cachet*
東京地方裁判所 民事第14部 裁判所書記官 小川武寿

(840111) A－2

| 郵 便 送 達 報 告 書 (住 所、居 所 等 用) | | 発送年月日 | 平成 20年 2月 28日 |
|---|---|---|---|
| 事件番号 | 平成 20 年 ( エ ) 第　　22 号 | | |

| | | | |
|---|---|---|---|
| 送達書類 | 書類の名称 | 1　文書の要領（SUMMARY），2　召喚状，3　第1修正訴状，4　2及び3の訳文 | |
| | 差出人 | 所在地 | 郵便番号 100－8920<br>東京都千代田区霞が関1丁目1番4号 |
| | | 名　称 | 東 京 地 方 裁 判 所 民 事 第　17部　ろA |
| | 受送達者本人氏名 | | FRANK SEIJI SANDA |

| 受領者の押印又は署名 | Jacinta Sanda. |
|---|---|
| 送達の場所 | 郵便番号 107-0074<br>東京都港区高輪十五-12 |
| 送達年月日時 | 平成 20 02 29 日 15 時 |

| 送達方法 | 1 | 受送達者本人に渡した。 | |
|---|---|---|---|
| | 2 | 受送達者本人に出会わなかったので、書類の受領について相当のわきまえがあると認められる次の者に渡した。<br>ア　使用人・従業者　（イ）　同居者<br>（氏名：ジュランダ サンダ　　　　　　） | |
| | 3 | 次の者が正当な理由なく受取りを拒んだので、その場に差し置いた。<br>ア　受送達者本人　イ　使用人・従業者　ウ　同居者<br>（氏名：　　　　　　　　　　　　） | |
| | 4 | 営業所に出向いた書類の受領について相当のわきまえがあると認められる次の者に渡した。<br>ア　使用人・従業者　イ　同居者<br>（氏名：　　　　　　　　　　　　） | |

上記のとおり送達しました。　　　　平成 20年 2月 29日
（所属）　　　　　　　　　　　　　　　配達担当者
ア　郵便事業（株）　　　　　　支店
イ　郵便局（株）　高輪　　　　郵便局　　　芳賀 優介　印

上記送達に係る郵便物が適正に送達されたこと及びその送達に関する事項が適正に記載されていることを確認しました。　差出人記入欄
　　　　　　　　　　　　　　平成 20年 2月 29日
（所属）　　　　　　　　　　　　郵便認証司
ア　郵便事業（株）　　　　　　支店
イ　郵便局（株）　高輪　　　　郵便局　　伊藤 正平　印

(注)
1　受領者が押印又は署名をすることができないときは、「受領者の押印又は署名」欄にその旨を記入すること。
2　「送達の場所」欄は、市町村名から住居番号まで省略せず詳細明確に記入すること。ただし、営業所の所在地について交付したときは、「窓口」欄に所在地を記入すること。
3　「送達年月日時」欄の年月日時のいずれかの数字が1桁のときは、枠内に右詰めで記入し、時刻は24時間制で記入すること。
4　「送達方法」欄は、次により記入すること。
　(1)「1」、「2」、「3」及び「4」の欄については、該当するものひとつを「〇」で囲み、その氏名を記入すること。
　(2)「2」、「3」又は「4」を「〇」で囲んだ場合は、それに該当するものを「〇」で囲み、その氏名を記入する。ただし、受送達者本人であるときは、その氏名を記入しない。
5　配達担当者及び郵便認証司の「所属」欄は該当するものを「〇」で囲み、その名称を記入すること。

100 39-7712-0